UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No.

GABRIEL LUC HADDON,
an individual,                                                                 CASE NO. 8:23-cv-00709

      Plaintiff,

vs.

FS INVESTMENTS OF
AMERICA INC., d/b/a
POWERHOUSE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

      Defendants
_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, GABRIEL LUC HADDON, an individual, sues Defendant, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and alleges:

*Jurisdiction and Venue*

1. Venue is proper in Hillsborough County as FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE is a legal entity incorporated under the laws of Florida whose principal business location was or is in Hillsborough County, Florida, and as the vehicle sale upon which these claims are based occurred in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

### *SYNOPSIS OF PROCEEDING*

2. The instant action involves claims under the Federal Odometer Act, 49 U.S.C. §32701 ("**Odometer Act**"), which prohibits the disconnection, resetting or alteration of odometers with the intent to change the number of miles indicated thereon. The law requires that a written disclosure of the mileage registered on the odometer be provided by the seller to the purchaser on the title to the vehicle when the ownership of the vehicle is transferred. If the odometer mileage is incorrect, the law requires a statement to that effect to be furnished on the title to the buyer.

3. Odometer tampering is a significant criminal and consumer fraud issue in the United States. According to the National Highway Traffic Safety Administration ("**NHTSA**"), over 450,000 vehicles sold each year have false odometer readings, causing over One Billion Dollars ($1,000,000,000.00) of loss to American car buyers.

### *ALLEGATIONS AS TO PARTIES*

4. At all times material hereto, Plaintiff, GABRIEL LUC HADDON ("**Mr. Haddon**"), was *sui juris* and a resident of Hillsborough County, Florida.

5. Mr. Haddon is a "transferee" as said term is defined under 49 C.F.R. §580.3.

6. At all times material hereto, Defendant, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, ("**POWERHOUSE**" or "**Dealership**") was a Florida corporation, doing business at 10333 Woodberry Road, Tampa, FL 33619.

7. At all times material hereto, POWERHOUSE was a "dealer" as said term is defined under 49 U.S.C. §32702(2).

8. At all times material hereto, the Dealership was in the business of selling and financing used motor vehicles to the public-at-large in Hillsborough County, Florida.

9. WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES (hereinafter "**Holder**" or "**Lender**") is a Foreign entity authorized to do business in Florida as a lender and a "sales finance company" as defined in Fla. Stat. § 520.02(19) and is a "holder" of a "retail installment contract" as defined in Fla. Stat. § 520.02(8).

## *FACTUAL ALLEGATIONS*
### *1. Purchase of Vehicle*

10. On or about May 25th, 2020, Mr. Haddon visited the place of business of the Dealership for the purpose of selecting a used motor vehicle to be used for personal, family and household purposes.

11. After brief negotiations, Mr. Haddon selected a used 2012 Ford F150, VIN: 1FTFW1ET2CFA12718 ("**Subject Vehicle**").

12. At the time Mr. Haddon selected the Subject Vehicle, Defendant both in writing through its contractual documents and orally through its agents and employees, affirmatively represented to Mr. Haddon that the odometer reading for the Subject Vehicle was at or about 131,636 miles ("**Mileage Representation**").

13. In the belief that he was purchasing reliable transportation at a reasonable value, Mr. Haddon executed and delivered to Defendant a document

entitled Buyer's Order ("**Order**").

14. A true and correct copy of the Order is attached hereto as Exhibit "A."

15. Pursuant to the RISC, Mr. Haddon agreed to pay the sum of Twenty-three Thousand Four Hundred and Fifteen Dollars with 82/100ths ($23,415.82), as and for the purchase price for the Subject Vehicle.

16. To facilitate the purchase of the Subject Vehicle, the Dealership prepared and had Mr. Haddon execute a "Retail Installment Sales Contract" ("**RISC**").

17. A true and correct copy of the RISC is attached hereto and incorporated herein by reference as Exhibit "B".

18. Prior to consummation of the transaction, Dealership represented both orally and in writing that the Vehicle's mileage was 131,636 miles.

19. Specifically, pursuant to the Order, the disclosed mileage was 131,636. *See* Exhibit A.



20. Moreover, the Dealership also disclosed that the mileage was 131,636 on the RISC. *See* Exhibit B.

| Description of Property | | | | | |
|---|---|---|---|---|---|
| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
| 2012 | Ford | F150 SuperCrew Cab | Pickup | 1FTFW1ET2CFA12718 | 131636 |
| | | | Other: | | |

21. Following consummation of the transaction for the Subject Vehicle,

Dealership assigned the RISC to Lender, upon unknown terms and for unknown consideration.

### 2. Discovery of Mileage Rollback

22. Upon conclusion of the transaction to purchase the Subject Vehicle, Mr. Haddon left the Dealership with the Subject Vehicle in the belief that he acquired reliable transportation for his personal and household purposes.

23. However, after purchasing the Subject Vehicle, Mr. Haddon became concerned with the subject vehicle's mileage as it became apparent that the vehicle did not reflect the mechanical condition of a vehicle with approximately 131,636 miles.

24. Unbeknownst to Plaintiff, he purchased the Vehicle with an undisclosed odometer rollback.

25. Pursuant to the Vehicle's CarFax report, Ford Motor Company, manufactured the Vehicle and shipped to the initial dealer on or about November 17th, 2011.

26. The Vehicle was serviced on January 4th, 2012 at Sam Pack's Five Star Ford of Carrolton with 10 miles on the odometer and later sold and titled on January 4th, 2013 with 850 miles on the odometer.

27. The Vehicle's CARFAX further demonstrates that the Vehicle was serviced on the following dates with the following increasing mileage readings:

    a. 3/14/2014 at Pecan Lube Center with 57,236 miles

    b. 11/22/2016 at Truck City Ford with 154,210 miles

    c. 1/29/2018 at Ken Stoepel Ford Lincoln with 154,495 miles

28. Thereafter, the CarFax report demonstrates that the mileage suddenly dropped and began to climb once more on the following dates:

    a. 2/11/2019 at Red McCombs Ford West with 113,234 miles

    b. 9/23/2019 at Red McCombs Ford with 124,528 miles

    c. 10/17/2019 at Red McCombs Ford with 124,583 miles

29. The Vehicle was then reported at an auto auction on April 6th, 2020 with *131,636* miles.

30. Thereafter, POWERHOUSE acquired the Vehicle on 05/15/2020.

31. A true and correct copy of the CarFax report for the Subject Vehicle is attached as Exhibit "C".

32. On the face of the Texas Certificate of Title upon which POWERHOUSE took transfer of the Vehicle's title ("**Certificate of Title**"), the last disclosed "actual" mileage was disclosed as 201150 as of March 6th, 2019. *See* Exhibit "D."



33. The Vehicle was then sold to Mr. Haddon on 5/25/2020 with an inaccurate odometer reading.

34. Pursuant to the Title Application, the Dealership was required to provide an odometer declaration in the following form ("**Odometer Declaration**"):

| ODOMETER DECLARATION |
|---|
| WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines or imprisonment. |
| I/WE STATE THAT THIS ☐ 5 OR ☐ 6 DIGIT ODOMETER NOW READS _____ XX (NO TENTHS) MILES, DATE READ __/__/__ AND I/WE HEREBY CERTIFY THAT TO THE BEST OF MY/OUR KNOWLEDGE THE ODOMETER READING: |
| ☐ 1. REFLECTS ACTUAL MILEAGE.   ☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS.   ☐ 3. IS NOT THE ACTUAL MILEAGE. |

35. When completing the Odometer Declaration for the Title Application, the Dealership inserted into the Odometer Declaration that the mileage reading was "131,636". *See* Exhibit "E".

| ODOMETER DECLARATION |
|---|
| WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines or imprisonment. |
| I/WE STATE THAT THIS ☐ 5 OR ☒ 6 DIGIT ODOMETER NOW READS 1 3 1 , 6 3 6 XX (NO TENTHS) MILES, DATE READ 05/25/2020 AND I/WE HEREBY CERTIFY THAT TO THE BEST OF MY/OUR KNOWLEDGE THE ODOMETER READING: |
| ☒ 1. REFLECTS ACTUAL MILEAGE.   ☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS.   ☐ 3. IS NOT THE ACTUAL MILEAGE. |

36. Despite having both actual and constructive notice that the Vehicle's mileage was in excess of 131,636, Defendant certified under penalty of perjury that disclosed mileage "reflects actual mileage."

37. In order to feign compliance with the Act and its requirements, the Dealership affixed Mr. Haddon's signature to the Certificate of Title where it entered the Vehicle's mileage as 131636. However, the Dealership intentionally failed to select the checkbox that the odometer reading was inaccurate in order to provide itself with plausible deniability if its scheme was uncovered. *See* Exhibit D.

38. Upon good information and belief, the sale of vehicles with tampered odometers is a regular business practice of the Defendant.

39. All conditions precedent to instituting this action have occurred or have otherwise been waived.

40. Mr. Haddon has retained the undersigned attorneys and has obligated himself to pay a reasonable fee for legal services.

41. Mr. Haddon has been damaged by virtue of the above-described conduct. Had Mr. Haddon known the true mileage of the Vehicle, he would have paid significantly less for it or not purchased the Vehicle at all.

### *Finance Company Liability*

42. Pursuant to 16 C.F.R. §433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "**FTC Holder Rule**," Lender is subject to all claims and defenses of the Plaintiff, as consumer, which are available against the credit-seller, to-wit, the Dealership.

43. In compliance with the FTC Holder Rule, the RISC bears the following conspicuous language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

44. Florida Statue § 516.31(2), known more commonly as the "Florida Holder Rule," provides in pertinent part the following:

> (2) Restriction on Certain Negotiable Instruments and Installment Contracts - A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which originated from the purchase concerning consumer goods or services is subject to all claims or defenses of the consumer debtor against the seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when that claim or defense is asserted against the person.

45. Accordingly, pursuant to Florida Holder Rule, Lender, as a holder or assignee of any negotiable instrument subject to the requirements of Florida Statutes Chapter 516, is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services, to-wit, the Dealership.

46. Specifically, Plaintiff seeks restitution of all installment payments made in furtherance of the RISC, rescission of the transaction in full and damages up to and including the present balance of indebtedness under the RISC.

47. Plaintiff avers that his claim is so large that it exceeds the remainder of any debt owed to Lender under the RISC.

## COUNT I
## VIOLATION OF THE FEDERAL ODOMETER ACT

48. This is an action for violation of the Federal Odometer Act, also known as the "Federal Motor Vehicle Information and Cost Savings Act," 49 U.S.C. §32710, *et seq.*, and the regulations promulgated thereunder.

49. Mr. Haddon realleges and reaffirms the allegations contained in Paragraphs 1 through 47 above as if set forth herein in full.

50. At all times material hereto, POWERHOUSE was a "dealer" as said term is defined under 49 U.S.C. §32702(2).

51. Pursuant to 49 U.S.C. §32705, a motor vehicle, the ownership of which is transferred, may not be licensed for use in the state unless the transferee, in submitting an application to the state upon which the license will be issued, includes with the application the transferor's title and, if that title contains a blank space, must disclose the mileage at the time of a future transfer, a statement, signed and dated by the transferor under the Odometer Act.

52. POWERHOUSE has violated the Act in that POWERHOUSE made a false statement to a transferee in violation of 49 U.S.C. § 32705(a) and 49 C.F.R. § 580.4 with intent to defraud.

53. POWERHOUSE has violated the Act in that POWERHOUSE failed to provide Mr. Haddon with the actual title certificate to transfer title for examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

54. POWERHOUSE violated the Act with the intent to defraud.

55. As a direct and proximate result of the above-described actions, Mr. Haddon has been harmed.

56. As a result of the violation of the Act, POWERHOUSE is liable to Mr.

Haddon in an amount equal to three times actual damages or $10,000.00, whichever is greater, plus attorney's fees and costs pursuant to 49 U.S.C. §32710.

57. Mr. Haddon has retained the undersigned attorney and is obligated to pay said attorney a reasonable fee for his services.

58. Mr. Haddon reserves the right to amend the complaint upon discovery and subsequent proffer revealing the identity of individuals who conspired with the Dealership to violate the Odometer Act.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, for statutory and actual damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

## COUNT II
## ACTION FOR FRAUD

59. Mr. Haddon realleges and reaffirms the allegations contained in Paragraph 1 through 47 above as if set forth hereat in full.

60. As more fully described above, POWERHOUSE misrepresented material facts concerning the sale of the Subject Vehicle to Mr. Haddon at the time of the sale of the Vehicle, to wit: the Mileage Representation.

61. POWERHOUSE knew that the representations set forth above were

false or made such representations recklessly, and Defendant had no reasonable grounds for believing those representations to be true.

62. POWERHOUSE knew that the above representations and omissions concerning the purchase of the Subject Vehicle were material and important.

63. POWERHOUSE intended to deceive Mr. Haddon, who relied upon the misrepresentations and omission to his detriment.

64. Mr. Haddon was damaged as a result of the misrepresentations and non-disclosures by POWERHOUSE.

65. As a direct and proximate result of the misrepresentations and non-disclosures by POWERHOUSE, the actual and economic damages of Mr. Haddon include but are not limited the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment for damages against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, together with interest and costs.

### COUNT III
### ACTION FOR FRAUDULENT INDUCEMENT

66. Mr. Haddon realleges and reaffirms the allegations contained in

Paragraph 1 through 47 above as if set forth hereat in full.

67. As more particularly described above, POWERHOUSE induced Mr. Haddon into signing the RISC and consummating the transaction for the sale of the Subject Vehicle by knowingly making misrepresentations of material fact and omitting material facts with the intent that Mr. Haddon rely on them to his detriment.

68. POWERHOUSE's misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Mr. Haddon rely on them, or be deceived by them to his detriment.

69. Mr. Haddon justifiably relied upon the misrepresentations to his detriment and further, had Mr. Haddon been advised of the truth, Mr. Haddon would not have entered into the RISC or otherwise consummated the transaction for the Subject Vehicle.

70. As a result of the fraud and deceit by POWERHOUSE, the actual and economic damages of Mr. Haddon include but are not limited to the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment for damages against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, with interest and

costs.

## COUNT IV
## ACTION FOR BREACH OF EXPRESS WARRANTY

71. Mr. Haddon realleges and reaffirms the allegations contained in Paragraph 1 through 47 above as if set forth hereat in full.

72. From the various statements by POWERHOUSE, including the Mileage Representation, POWERHOUSE made an express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("**UCC**") by both affirmation of fact or promise and by description of goods ("**Express Mileage Warranty**").

73. As evidenced by the title records and other evidence, POWERHOUSE has breached the Express Mileage Warranty.

74. As a direct and proximate result of the breach of the Express Mileage Warranty, Mr. Haddon has been damaged. The damages of Mr. Haddon include but are not necessarily limited to the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer.

75. Mr. Haddon has performed all conditions precedent to the filing of the instant action.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment for damages against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES,

a Foreign corporation, and each of them, jointly and severally, together with interest and costs.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff, GABRIEL LUC HADDON, demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ Joshua E. Feygin
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email:  Josh@JFeyginesq.com
JOSHUA FEYGIN, PLLC
1930 Harrison St, Suite 208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiff*