## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No.: 8:23-cv-00709-WFJ-SPF

GABRIEL LUC HADDON,
an individual,

    Plaintiff,

vs.

FS INVESTMENTS OF
AMERICA INC., d/b/a
POWERHOUSE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

    Defendants.
_____/

## **PLAINTIFF'S MOTION TO OVERRULE AND COMPEL BETTER RESPONSES TO THE PLAINTIFF'S DISCOVERY REQUESTS**

## I.   BACKGROUND

The instant action was brought by Mr. Haddon against FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE ("Dealership") for inter alia violation of federal and state consumer protection statutes arising out of the purchase of a 2012 F150 SuperCrew Cab ("Pickup") from the Dealership for $21,998.00 ("Purchase Price").

As more particularly described in the Complaint, at the time of the purchase of the Vehicle, the Dealership represented, both by way of advertisements and purchase documents, that the mileage for the Pickup was 131,636 (Complaint - ¶12; ¶¶18-20). Contrary to the representations of the Dealership, the mileage for the Pickup was greatly in excess of that represented by the Dealership. Indeed, shortly after purchasing the Vehicle, Mr. Haddon discovered that the face of the title for the Pickup reflected that the mileage was 201150 as of March 6, 2019. (Complaint - ¶32). As a result of the business practices of the Dealership, Mr. Haddon has filed a Complaint herein seeking damages against the Dealership under the Federal Odometer Act, 49 U.S.C. §32701, *et sequi* (Count I), and for state law claims for relief (Counts II -IV). With respect to the claim under the Odometer Act, Mr. Haddon has alleged that the Dealership violated the Act by making a false statement to a transferee in violation of 49 U.S.C. § 32705(a) and 49 C.F.R. § 580.4 with intent to defraud. (Complaint - ¶52). In addition, Mr. Haddon has alleged the Dealership violated the Act when it failed to provide Mr. Haddon with the actual title certificate to

transfer title for examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5. (Complaint - ¶53).

## II. PROCEDURAL HISTORY

1. On June 06, 2023, Plaintiff served written discovery upon the Dealership consisting of Requests for Production; Requests for Admission; and, Interrogatory Requests. *See* Exhibit "A."

2. Having failed to timely receive the Dealership's responses, Plaintiff conferred via email regarding the status of the same on July 10, 2023 and once more on July 12, 2023.

3. On July 12, 2023, Dealership requested an extension of time up to and through July 22, 2023. Plaintiff granted the extension.

4. Once more, Dealership failed to timely respond necessitating a second conferral attempt via email on July 24, 2023.

5. Ultimately, on July 27, 2023, Dealership served its Responses and Objections to Plaintiff's First Request for Production; Answers and Objections to Plaintiff's First Set of Interrogatories; Responses and Objections to Plaintiff's First Request for Admissions. *See* Composite Exhibit "B."

6. On March 13, 2024, Dealership served supplemental production.

7. Plaintiff took the deposition of the Dealership's corporate representative on April 23, 2024.

8. During the deposition, Dealership's corporate representative and owner, Franklyn Strusberg, provided testimony that revealed many of the prior

written discovery responses were inaccurate and that responsive records were withheld from production.

9. On May 03, 2024, Plaintiff attempted to confer with the Dealership to obtain amended responses to the written discovery and provided the Dealership up to and through May 08, 2024 to provide amended responses and withheld records. *See* Composite Exhibit "C."

10. Having received no response, on May 08, 2024 Plaintiff once more attempted to confer with the Dealership. In response, counsel for Dealership advised that it would respond by May 13, 2024. Dealership failed to respond, necessitating the instant Motion given the impending dispositive motion deadline.[1]

### III.   MEMORANDUM OF LAW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." *Polycarpe v. Seterus, Inc.*, 616CV1606ORL37TBS, 2017 WL 2257571, at *1 (M.D. Fla. May 23, 2017). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Id.* (citations omitted).

---

[1] Plaintiff intends to move for an extension of time contemporaneously, or shortly after, filing the instant motion. Out of an abundance of caution and mindful of the diligence required of litigants, this Motion is nevertheless being filed.

Under Rule 37, a party "may move for an order compelling an answer, designation, production, or inspection…. if a party fails to answer an interrogatory submitted under Rule 33; or a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(ii)-(iii). Whether to grant the motion to compel is at the discretion of the trial court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

When moving to compel, the moving party must show the discovery sought is relevant. *e-Ventures Worldwide, LLC v. Toll Bros., Inc.*, 2:22-CV-552-JLB-KCD, 2023 WL 4419736, at *1 (M.D. Fla. July 10, 2023). "The responding party must then demonstrate how the discovery is improper, unreasonable, or burdensome." *Id.* "When opposing the motion to compel, a party must show specifically how the requested discovery is objectionable." *e-Ventures Worldwide, LLC v. Toll Bros., Inc.*, 2:22-CV-552-JLB-KCD, 2023 WL 4419736, at *1 (M.D. Fla. July 10, 2023) *quoting Nolan v. Integrated Real Est. Processing, LP,* No. 3:08-CV-642-J-34HTS, 2009 WL 635799, at *1 (M.D. Fla. Mar. 11, 2009).

The failure to file objections within the time constraint of Rule 34 results in the waiver of such objections. *See* Fed. R. Civ. P. 34 (b)(2); *see also* M.D. Fla. Civil Discovery Handbook (2021) at Section 3.A.6 ("Absent compelling circumstances, failure to assert an objection to a request for production with the time allowed for responding constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel"). In fact, the failure to raise an

objection constitutes waiver even where an objection to the requested discovery would otherwise be proper. *Reliance Ins. Co. v. Core Carriers, Inc.*, No. 3:06-cv-585-J-20MCR, 2008 U.S. Dist. LEXIS 53337, 2008 WL 2414041, at *2 (M.D. Fla. 2008) (stating that "[waiver of objections through untimely filing] operates even in situations where a party had a proper objection to a discovery request"). Therefore, if a specific objection is not filed within thirty days, the party has waived any further objections. *Bailey Industries, Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 668 (N.D. Fla. 2010).

## IV.   ANALYSIS

### a. Requests for Production

#### i.   Communications Concerning the Vehicle

| |
|---|
| **Request for Production A:** All documents received from or sent to the POWERHOUSE in connection with the Vehicle at any time. |
| **RESPONSE**: See the non-privileged, responsive documents that Defendant produced along with these responses. Discovery and investigations are ongoing, and therefore Defendant reserves the right to amend or supplement its response or production. |
| **Request for Production G:** All emails and text messages of any sort that mention, pertain to or discuss in any way: (1). the Vehicle; (2). the instant lawsuit; or (3). Mr. Haddon or the attorneys for Mr. Haddon. |
| **RESPONSE**: See the non-privileged, responsive documents that Defendant produced along with these responses. Discovery and investigations are ongoing, and therefore Defendant reserves the right to amend or supplement its response or production. |

By and through Plaintiff's Requests for Production A & G, Plaintiff sought the production of communications relative to the Pickup. Defendant interposed no objections to these requests and thus waived any objections it may have had.

During the deposition of the Dealership's corporate representative, Dealership testified that it received correspondences from its surety bond and that it would produce the same. Exhibit D – Deposition Transcript of Franklyn Strusberg, 99:20-25; 100: 1-25: 101: 1-5. To date, Defendant has failed to provide any such responsive records. These records are relevant and material to challenge the Defendant's First Affirmative Defense of "Accord and Satisfaction" and the Defendant's Eighth Affirmative Defense of "Release" wherein Defendant alleges that it tendered proceeds in satisfaction of the claims asserted and was released from the claims asserted. These communications will shed light as to the nature and purpose of the funds that were previously tendered by the Defendant in settlement of claims not raised in this action.

It is anticipated that the Defendant will respond by advising it no longer possesses such records and is unable to produce them. However, as used in Fed. R. Civ. P. 34(a), "'Control' ... does not require that a party have legal ownership or actual physical possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the 'right, authority, or practical ability to obtain the materials sought on demand.'" *Pictet Overseas, Inc. v. Helvetia Tr.*, No. 13-81088-CIV, 2014 U.S. Dist. LEXIS 147602, (S.D. Fla. Sept. 8, 2014) (*quoting Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, No. 2:09-cv-599-FtM-99SPC, 2010 U.S. Dist. LEXIS 127877, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010)). The records can be easily obtained by requesting copies be provided by the dealership's surety bond.

For these reasons, Defendant ought to be compelled to provide these withheld records.

### ii.   Communications concerning vehicle acquisition

| |
|---|
| **Request for Production C:** All communications to and from POWERHOUSE concerning the purchase of the Vehicle by POWERHOUSE, including but not limited to any post-acquisition disputes waged by POWERHOUSE with Manheim. |
| **RESPONSE**: See the non-privileged, responsive documents that Defendant produced along with these responses. Discovery and investigations are ongoing, and therefore Defendant reserves the right to amend or supplement its response or production. |
| **Request for Production G:** All emails and text messages of any sort that mention, pertain to or discuss in any way: (1). the Vehicle; (2). the instant lawsuit; or (3). Mr. Haddon or the attorneys for Mr. Haddon. |
| **RESPONSE**: See the non-privileged, responsive documents that Defendant produced along with these responses. Discovery and investigations are ongoing, and therefore Defendant reserves the right to amend or supplement its response or production. |

By and through Plaintiff's Requests for Production A & G, Plaintiff sought the production of communications relative to the acquisition of the Pickup. Defendant interposed no objections to these requests and thus waived any objections it may have had. During the deposition of the Dealership's corporate representative, Dealership testified that it engaged in communication with Auto Deal Corp, the penultimate transferor of the Pickup. in the form of text messages and/or WhatsApp messages.[2] Exhibit D – Deposition Transcript of Franklyn

---

[2] Defendant testified that it used Auto Deal Corp's account to purchase vehicles from auction and in exchange, Auto Deal Corp would be entitled to a 25% commission. Exhibit D – Deposition Transcript of Franklyn Strusberg, 104: 19-24, 41:13-16

Strusberg, 107:16-25; 108:1-6. To date, Defendant has failed to provide any such responsive records. These records are relevant as they may lead to the discovery of admissible evidence that would support that the Dealership intentionally misrepresented the Pickup's mileage or was otherwise on notice of the mileage discrepancy by and through communications with Auto Deal Corp.

Defendant, therefore, ought to be ordered to produce these withheld records.

### iii. Advertisements

> **Request for Production B(13):** "[A]ll printed advertisements, sales brochures, or other promotional materials which refer to the Vehicle at any time, including but not limited to the complete Manheim Condition Report"
>
> **RESPONSE**: Defendant is not in possession of any documents that are responsive to this Request. However, Defendant continues to search for documents that are responsive to this Request, and once completed, and if non-privileged responsive documents exist, Defendant will produce the same to Plaintiff.

By and through Plaintiff's Requests for Production B(13), Plaintiff sought the production of any advertisements of the Pickup. Defendant interposed no objections to this request and thus waived any objections it may have had. During the deposition of the Dealership's corporate representative, Dealership testified that it was able to locate the advertisement of the Pickup. Exhibit D – Deposition Transcript of Franklyn Strusberg, 47:9-25; 48:1-2. To date, Defendant has failed to provide any such responsive records. The Act provides that a person who transfers ownership of a vehicle may not "give a false statement to the transferee in making

the disclosure required by [NHTSA's odometer disclosure] regulation." 49 U.S.C. § 32705(a)(2). These records are relevant and discoverable as a violation of the Odometer Act can relate to or arise from misrepresentations of the mileage in oral statements, advertising, and written claims found in documents other than the disclosure form are covered, as long as these statements are related to the making of the disclosures. *See Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979). *See also Hughes v. Box*, 814 F.2d 498 (8th Cir. 1987); *Rife v. Randolf Ezrre Wholesale Auto Sales L.L.C.*, 2022 WL 355088 (D. Ariz. Feb. 7, 2022); *Phillips v. David Hay Enterprises Inc.*, 2022 WL 2820800 (D. Ariz. Jan. 10, 2022); *Frederick v. Garcia*, 2021 WL 5370709 (D. Ariz. Nov. 18, 2021); *Cartagena-Cordero v. Five Star Cars, L.L.C.*, 2020 WL 5912601 (D. Conn. Oct. 6, 2020), amended on other grounds, 494 F. Supp. 3d 204 (D. Conn. 2020).

Defendant thus should be ordered to proffer its advertisements of the Pickup.

### iv. Financial impact

> **Request for Production P:** Any receipt or other document showing monies received by POWERHOUSE as a result of the transfer or sale of the Vehicle.
>
> **RESPONSE**: See the non-privileged, responsive documents that Defendant produced along with these responses. Discovery and investigations are ongoing, and therefore Defendant reserves the right to amend or supplement its response or production.

By and through Plaintiff's Requests for Production P, Plaintiff sought the production of any documents demonstrating the financial impact upon the Dealership arising from the sale of the Pickup. Defendant interposed no objections

to this request and thus waived any objections it may have had. During the deposition of the Dealership's corporate representative, Dealership testified that it was in possession of a deal recap sheet provided by Westlake and agreed to produce the same. Exhibit D – Deposition Transcript of Franklyn Strusberg, 61: 4-11. This document was not previously proffered by the Dealership. And, to date, Defendant has failed to provide any such responsive records. These records are relevant and discoverable as this information may help shape a fact-finder's determination of the Dealership's motive for misrepresenting the mileage in order to purloin profit from the sale of a vehicle with a tampered odometer. This information could also reveal any stipulations or conditions imposed by Westlake Financial Services, Inc. regarding the mileage discrepancy relative to the extension of credit for the Pickup. Upon good information and belief, these conditions would have been imposed prior to the Plaintiff executing the financing contracts and agreements related to the same. Upon further information and belief, these terms would be reflected in the deal recap sheet's explanation of the remuneration provided for the assignment of the loan. If any such stipulations were imposed by Westlake, it would support a finding of intent to defraud.

Defendant thus should be ordered to proffer the deal recap sheet for the financing of the Pickup.

### b. Requests for Admission

### i.   Request for Admission No. 4

> **Request for Admission 4:** The person who recorded the information on the Transfer Title inspected the Vehicle prior to completing the Transfer Title.
> **RESPONSE**: Objection. Defendant is unable to admit or deny as Defendant is unable to determine the scope, use, and/or intent of the word "inspected."

By and through his Fourth Request for Admission, Plaintiff asked the Defendant to admit or deny whether the individual completing the mileage disclosure statement within the Transfer Title for the Pickup actually inspected the Pickup prior to providing the disclosures. Defendant raised an objection premised upon a hyper-technical reading of the term "inspected." This information is relevant and discoverable as it can support an inference that the Dealership violated the Act with intent to defraud when it closed its eyes to the truth. *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978). *See also Bolton v. Tyler Lincoln Mercury, Inc.*, 587 F.2d 796 (5th Cir. 1979). The discovery rules were intended to promote the search for truth that is the heart of our judicial system." *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1546 (11th Cir. 1993). Counsel and parties alike should at all times conduct themselves in a responsible and professional manner and participate in discovery "with a spirit of cooperation[.]"*Hunter's Ridge Golf Co. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 680 (M.D. Fla. 2006). By utilizing a hyper-technical reading of the word "inspected," Defendant has fallen far short of these sound principles guiding litigants in discovery. Moreover, as made plain by the corporate representative's testimony, not only was the Defendant able to determine the scope, use, and/or intent of the word "inspected," the Defendant testified that it did in fact complete an inspection of the vehicle by taking it on a test drive. Exhibit D – Deposition Transcript of Franklyn Strusberg, 39:4-17.

Defendant should be ordered to amend its Response to Request for Admission No. Four to admitted.

### ii.     Request for Admission No. 5

> **Request for Admission 5:** The person who recorded the information on the Transfer Title certified that the odometer reading disclosed therein was accurate.
> **RESPONSE**: Denied as phrased. The person who recorded the information on the Transfer Title had no knowledge that the odometer reading disclosed therein was inaccurate.

By and through his Fifth Request for Admission, Plaintiff asked the Defendant to admit or deny whether the individual completing recording the information within the Transfer Title for the Pickup disclosed the mileage was accurate. This information is relevant as it goes to the core of the Plaintiff's claim- that the mileage disclosure the Defendant provided stating that the mileage was accurate was in fact false. Nowhere in this request did the Plaintiff ask the Defendant to admit or deny whether whomever recorded the information possessed knowledge that the information was inaccurate. Rather, the request asks the Defendant to admit or deny that the Transfer Title disclosed that the mileage was accurate. Defendant has completely failed to respond to this Request for Admission by virtue of its mischaracterization of the Plaintiff's request. Moreover, the Defendant's corporate representative testified that the disclosure that the mileage was inaccurate was not selected leaving but only one other logical choice- that the mileage disclosed was accurate. Exhibit D – Deposition Transcript of Franklyn Strusberg, 62:6-13.

Defendant should be ordered to amend its Response to Request for Admission No. Five to reflect that the request is admitted.

### iii.     Request for Admission No. 8

> **Request for Admission 8:** The information recorded in the Transfer Title pertaining to the transfer of title to the GABRIEL LUC HADDON was provided contemporaneously with the transfer of the Vehicle to the GABRIEL LUC HADDON.
> **RESPONSE**: Admitted

By and through its Eighth Request for Admission, Plaintiff asked the Dealership to admit or deny that the information recorded in the transfer title was provided to the Plaintiff at the same time the Pickup was transferred to the Plaintiff. This information is relevant and discoverable as it could lead a fact finder to find that the Dealership acted with a reckless disregard for what the law requires sufficient to infer intent to defraud. *See Yazzie v. Amigo Chevrolet, Inc.*, 189 F.Supp.2d 1245 (D. New Mexico 2001). Particularly, under 49 U.S.C. § 32705(a)(1), every transferor of a motor vehicle must make an accurate written odometer disclosure to the transferee. A dealer may not choose to make this disclosure anywhere, because it must be placed on the title to the vehicle being transferred. 49 U.S.C. § 32705(b)(1). Thus, Congress not only required accurate odometer disclosures, it also required that the transfer of ownership be accompanied by the title bearing the odometer disclosure. *See* Supplementary Information to 1988 Final Rule, 53 Fed. Reg. 29464 (August 5, 1988). Although the Defendant's corporate representative testified that it was not in possession of the Transfer Title at the time of the sale of the Pickup to the Plaintiff. Exhibit D – Deposition

Transcript of Franklyn Strusberg, 142:20-25, 143:1-3, 146:8-11. In fact, the Defendant testified that it only received the title to the Pickup after it was sold to the Plaintiff. Exhibit D – Deposition Transcript of Franklyn Strusberg, 146:25, 147:1-3. Moreover, the Defendant also testified that it signed the Transfer Title on behalf of the Plaintiff through the use of a power of attorney. Exhibit D – Deposition Transcript of Franklyn Strusberg, 80:12-25, 80:1-8. Therefore, it was impossible for the Defendant to provide the Plaintiff with the information that was recorded in the Transfer Title contemporaneously with the transfer of the Pickup to the Plaintiff.

Accordingly, Defendant should be ordered to amend its response to Plaintiff's Eighth Request for Admission to reflect the request is denied.

### c. Interrogatories

#### i. Interrogatories 7-8

> **Interrogatory 7:** Identification of Actors as to Vehicle. Identify each person (including the Transferee Party) who performed any activity with respect to the repair, servicing, marketing, sale, transfer, assignment, or disposition of the Vehicle (regardless of whether the person is an employee or agent of POWERHOUSE). As to any such person, identify: (a) The activity performed. (b) Whether the person knew the actual mileage of the Vehicle; (c) Whether the person knew the odometer of the Vehicle had been altered; and (d) All communications (both written and oral) between POWERHOUSE and the person concerning the instant action.
>
> **RESPONSE**: "Defendant purchased the Vehicle from Auto Deal Corp. Mr. Reyes (see answer to Interrogatory 2) marketed the Vehicle on behalf of Defendant by posting it on the websites identified in Interrogatory 8, performed a routine inspection of the Vehicle as described in Interrogatory 8, and processed Plaintiff's purchase and financing of the Vehicle. […]" [Truncated for relevancy]

> **Interrogatory 8:** Completion of Transfer Title. Describe the step-by-step process by which POWERHOUSE marketed, sold, transferred, assigned, or disposed of the Vehicle. With respect to the Transfer Title, identify the person who signed the Transfer Title on behalf of POWERHOUSE, the date of signing, the information placed on the Transfer Title by that person, and whether the person inspected the Vehicle before signing.
>
> **RESPONSE**: "Defendant performed a routine inspection of the Vehicle (e.g., check the Vehicle's oil level, tire condition, and drivability) before signing the Transfer Title. Mr. Strusberg (see answer to Interrogatory 2) was aware of this inspection at the time of the transfer of title."
> [Truncated for relevancy]

By and through his Seventh and Eighth Interrogatory Requests, Plaintiff sought discoverable information relative to, *inter alia*, any inspection completed to the Pickup. This information is relevant and discoverable as it can shape a fact-finder's determination that the Dealership violated the Act with intent to defraud when it closed its eyes to the truth. *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978). *See also Bolton v. Tyler Lincoln Mercury, Inc.*, 587 F.2d 796 (5th Cir. 1979). Particularly, the absence of a meaningful inspection of the vehicle could show that the Dealership engaged in willful blindness to a number of red-flags that would have otherwise alerted it of a mileage discrepancy. Despite the Defendant's response that the "Defendant performed a routine inspection of the Vehicle (e.g., check the Vehicle's oil level, tire condition" the testimony elicited during the deposition of its corporate representative painted a different picture. Specifically, the corporate representative consistently testified that the Defendant's inspection was limited to a test drive. Exhibit D – Deposition Transcript of Franklyn Strusberg, 23:21-24, 24:6-8, 39:15-17.

Thus, the Defendant's response to Interrogatory No. Seven (which incorporates its response to Interrogatory No. Eight) along with its response to Interrogatory No. Eight is inaccurate and ought to be amended.

## V.  CONCLUSION

Plaintiff requests the Court's intervention because Defendant has withheld crucial information from discovery, information necessary for Plaintiff to prosecute this case.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, respectfully request the Court overrule Defendant's improper objection and enter an order under Rule 37 compelling Defendant to produce responsive documents and answers to interrogatories cited herein.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 3.01(g) the undersigned attempted to confer with opposing counsel in a good faith effort to resolve the issues raised by this Motion but a meaningful response was not received.

Respectfully submitted this 14th day of May, 2024, by:

>  */s/ Joshua Feygin*
> Joshua Feygin, Esq.
> FLORIDA BAR NO: 124685
> Email:  Josh@JFeyginesq.com
> **SUE YOUR DEALER – A LAW FIRM**
> 1930 Harrison Street, Suite 208 F
> Hollywood, FL 33020
> Telephone: (954) 228-5674
> Facsimile: (954) 697-0357

## **CERTIFICATE OF SERVICE**

      I certify that on May 14, 2024, a copy of the foregoing was filed via the Court's Electronic Filing system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Joshua Feygin*
Joshua Feygin, Esq.
FLORIDA BAR NO: 124685