**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

Case No.: 8:23-cv-00709-WFJ-SPF

GABRIEL LUC HADDON,
an individual,

    Plaintiff,

vs.

FS INVESTMENTS OF
AMERICA INC., d/b/a
POWERHOUSE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

    Defendants.
_____/

**PLAINTIFF'S NOTICE OF TAKING THE VIDEO-TAPED DEPOSITION OF
FS INVESTMENTS OF AMERICA INC.'S CORPORATE REPRESENTATIVE**

To:  **FS INVESTMENTS OF AMERICA INC.,
d/b/a POWERHOUSE AUTOMOTIVE**
C/o Keith D. Silverstein, Esq.
Jose Ariel Peralta
355 Alhambra Circle
Suite 1200
Coral Gables, FL 33134
VIA EMAIL: ksilverstein@atllp.com ; jperalta@atllp.com

    **PLEASE TAKE NOTICE** that Pursuant to Rule 30(b)(6), Federal Rules of Civil

Procedure, the stenographic video deposition of above-mentioned Defendant's Corporate

Representative will be taken before a qualified notary public via Zoom on a date and time to be

determined between the parties.

**Time and Date:**  April 23, 2024 starting at 10:00 am EST

**Place:** Via Zoom

At said time and place, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE is required to produce the documents listed in Schedule "B" attached hereto.

This deposition is being taken for purposes of discovery and/or for use a trial.

## INSTRUCTIONS AND DEFINITIONS

1. The following definitions are applicable to the requests in Schedule A and B.

2. As employed herein, "you" or "your" means the party to whom these requests are addressed, including the party's agents, successors, assigns and all persons, employees, independent contractors, officers, directors, and/or any other entities acting on such party's behalf.

3. As employed herein, the "Dealership" means the motor vehicle dealership named as a defendant in this action: FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, including the dealership's agents, successors, assigns and all persons, employees, independent contractors, officers, directors, and/or any other entities acting on such party's behalf.

4. As employed herein, "Purchaser" shall refer to Plaintiff, GABRIEL LUC HADDON and all other persons, agents, employees, independent contractors, officers, directors, or entities acting on Plaintiff's behalf.

5. As employed herein, the "Vehicle" shall refer to the vehicle which is the subject of the Complaint.

6. The words "document" or "documents" mean any written, electronic, typed, printed, recorded, or graphic material, however produced, reproduced, or stored. These definitions include, but are not limited to, all notes, memoranda, reports, records, correspondence, communications, contracts, agreements, writings, graphs, charts, checks, letters, messages, minutes from meetings, diaries, bills, statements, calendars, files, computer files, forms, solicitation materials, advertisements, orders, invoices, purchase orders, requisition orders, photographs, video tape, audio tape, phono records, magnetic tape, micro film, micro fiche, computer disks, computer banks, data entries, e-mail, social media pages and postings, webpages, text messages, electronic media files, data sheets, blue prints, drawings, diagrams, sketches, notebooks, and all copies, drafts and versions thereof and other data compilations from which information can be obtained, translated, if necessary, through detection devices into a reasonably perceptible form that are in your possession, custody or control.

Any copy of any document containing thereon any alterations, notes, or comments not included on any original shall not be deemed an identical copy but shall be deemed a separate document within the foregoing definition. Any documents kept or stored on computer media are to be produced in hard copy and on a CD or DVD, separately identifying the name of the document and the software you used to store and retrieve the document.

7. The words "all documents" mean every document, as defined above, known to you and every such document which may be located or discoverable by reasonably diligent efforts, including each draft or version of such document whether maintained physically or electronically.

8. The word "correspondence" means any letter, telegram, telex, notice, message, email, memorandum or other written communication or transcription or the notes of any communication.

9. The word "communication" means any written or oral transmission of information, fact, or opinion, including any utterance, notation, or statement of any nature whatsoever, whether the transmission occurs face to face, via telephone, facsimile, e-mail, modem, mail, personal delivery, document, or otherwise, and including, but not limited to, documents and correspondence as defined herein.

10. The word "statement" includes any declaration(s), whether formally or informally made, whether or not sworn, and whether written, oral, or pictorial, which has been recorded regardless of storage media.

Any drafts of such statements are to be produced as separate statements along with the final version. Any statements kept or stored on computer media are to be produced in hard copy and on a CD or DVD, labeled with the software you used to store and retrieve the statement. All statements produced are to be separately identified by the name of the person or entity making the statement, if known, the date of the statement, and the software you used to store and retrieve the statement.

11. Without limitation of the term "control" as used herein, a document or other information requested is deemed to be in your control if you have the right to secure the document or information from any person or public or private entity having actual physical possession of the document or knowledge of the information requested. If any document requested or information sought was, but is no longer, in your possession or subject to your control as defined herein, state what disposition was made of the document or information, the location of any document or information, the person or entity possessing or having knowledge of the information and the date or dates, or approximate date or dates, on which disposition was made.

12. The words "relating to," "relate to," and "related to" mean concerning, referencing, mentioning, alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, illustrating, recording, memorializing, constituting, evidencing, refuting, supporting, and all other concepts of like import.

13. The word "person" means any natural person or entity, including but not limited to, any individual, firm, association, company, corporation, cooperative, sole proprietorship, partnership, joint venture, trust, any other legal, business, or governmental entity, or any combination of the above.

14. The word "date" means the exact day, month and year of an event if ascertainable or, if not, your best approximation thereof (including relationship to other events).

15. The terms "and/or," "and," and "or" shall each be construed disjunctively and conjunctively as necessary to elicit the greatest amount of information and to encompass the greatest number of documents that would otherwise be construed to fall within the scope of the document requests set forth below.

16. The terms "any" and "all" shall each be construed severally and collectively as necessary to elicit the greatest amount of information and to encompass the greatest number of documents that would otherwise be construed to fall within the scope of the document requests set forth below. Additionally, the word "all" includes the word "any" and "any" includes the word all".

"Each' includes the word "every" and "every" includes the word "each".

17. The singular shall be deemed to include the plural (and vice versa).

## RELEVANT TIME PERIOD

The relevant time period for each request in Schedule A and B shall be the period of time from January 1, 2020 to the present.

## SCHEDULE A

## MATTERS OF EXAMINATION

Pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE is required to designate one or more officers, directors, managing agents or other persons consenting to testify, who are designated to do so, concerning the following issues:

1. The Dealership's employee training procedures and continuing education.

2. The standards to which Defendant's employees must adhere to when selling motor vehicles to customers.

3. The standards to which Defendant's employees must adhere to when advertising motor vehicles to customers.

4. The Dealership's past and current advertising policies and procedures.

5. The Dealership's policies regarding record and deal file storage, including electronic storage.

6. The Dealership's dispute history, including past lawsuits, arbitrations, state agency and department complaints and quasi-judicial complaints with entities such as the Better Business Bureau.

7. Employee histories of all employees or agents involved in the purchase and sale transaction for the Vehicle.

8. The Dealership's past and current inventory acquisition policies and procedures, including auction purchases and trade-in vehicles.

9. The Dealership's pre-sale practices (i.e., what the Dealership generally does with or to vehicles after acquisition, but before resale).

10. The Dealership's general sales process.

11. The Dealership's form documents used in the sale and/or financing of a motor vehicle.

12. The Dealership's post-sale policies and procedures (i.e., what the Dealership generally does after a vehicle is sold and delivered to the buyer).

13. The Dealership's acquisition of the Vehicle.

14. The pre-sale procedures relating to the Vehicle, including any inspections of the Vehicle and any repairs or modifications made to the Vehicle.

15. The advertisement of the Vehicle.

16. Any sales attempts and the eventual sale of the Vehicle.

17. Complaints received about or relating to the Vehicle.

18. The financing of the Vehicle purchase.

19. The calculation of all numbers and dollar amounts listed on all purchase or finance documents for the purchase or financing of the Vehicle by the Purchaser.

20. Communications with any person or entity relating to the Vehicle or the sale of the Vehicle.

21. Post sale issues relating to the Vehicle or Vehicle purchase or financing.

22. The allegations in the Complaint.

23. The factual basis of any denial of any allegation in the Complaint.

24. The preparation undertaken for the deposition.

25. The sale of the Vehicle to the Purchaser.

26. The process by which the Dealership prepared any documents to transfer title to the Vehicle to the Purchaser.

27. The documents Dealership prepared to transfer title to the Vehicle to the Purchaser.

28. The facts, witnesses, and documents surrounding the purchase transaction between Purchaser and Defendant.

29. The representations made to the Purchaser by the Dealership regarding the Vehicle.

30. The factual basis of the Defendant's First Affirmative Defense that the Plaintiff was aware of any discrepancy in the odometer reading of the Subject Vehicle on or soon after May 25, 2020, and therefore, Count I is barred by the statute of limitation under 49 U.S.C.A. § 32710(b).

31. The factual basis of the Defendant's Second Affirmative Defense that Plaintiff's causes of action are barred by the doctrine of laches.

32. The factual basis of the Defendant's Third Affirmative Defense that Plaintiff's claim for breach of the Odometer Act is barred as Plaintiff has not suffered, and cannot honestly allege, any actual damages.

33. The factual basis of the Defendant's Fourth Affirmative Defense that Counts II and III allege that Defendant sold Plaintiff a vehicle stating a false milage. The sale and mileage, as Plaintiff alleges, are recorded in a Buyer's Order and Retail Installment Contract and Security Agreement (the "Contract Documents"). Therefore, the fraud and fraudulent inducement claims of Counts II and III concern a conduct that constitute a breach of the Contract Documents. Hence, Counts II and III are barred under the Independent Tort Doctrine.

34. The factual basis of the Defendant's Fifth Affirmative Defense that Counts II and III are barred because Plaintiff did not suffer, and cannot honestly allege, any damages based on fraud or fraud in the inducement that are independent of any breach of the contract documents for its purchase of the Subject Vehicle, and/or its action for breach of express warranty.

35. The factual basis of the Defendant's Sixth Affirmative Defense that Plaintiff's causes of action are barred by his own conduct and/or lack of diligence that amount to a waiver of any rights that he has, or may have, in relation to the causes of action alleged in the Complaint.

36. The factual basis of the Defendant's Seventh Affirmative Defense that Plaintiff's claims are barred by a prior settlement and release.

37. The factual basis of the Defendant's Eighth Affirmative Defense that Counts I–III are barred, in whole or in part, because at all material times Defendant acted in good faith and followed commercially reasonable standards. Defendant never acted in bad faith toward Plaintiff or Plaintiff's purchase of the Subject Vehicle.

38. The factual basis of the Defendant's Ninth Affirmative Defense that Plaintiff's claim for damages under the Odometer Act is barred because Defendant never acted with the intent to defraud Plaintiff in its sale of the Subject Vehicle to Plaintiff.

39. The factual basis of the Defendant's Tenth Affirmative Defense that Plaintiff is estopped from asserting the actions in the Complaint as his own conduct, and/or the conduct of third parties outside of Defendant's control, resulted in Plaintiff's purported damages.

40. The factual basis of the Defendant's Eleventh Affirmative Defense that Plaintiff has failed to state a claim for damages against Defendant, as any alleged action by Defendant was not the cause of any injury or damages, if any, of Plaintiff. Specifically, any injuries and damages alleged by Plaintiff is the result of actions or causes outside of Defendant's conduct alleged by Plaintiff. Plaintiff's recovery is therefore barred, in whole or in part, to the extent that any of his injuries or damages were not caused by the alleged conduct of Defendant.

41. The factual basis of the Defendant's Twelfth Affirmative Defense that Plaintiff was negligent when prior to signing and/or acknowledging the contract documents regarding the sale

and financing of the Subject Vehicle, Plaintiff freely forgo the opportunity to verify whether Defendants' claims were true. Therefore, Plaintiff's damages, if any, should be reduced proportionally to his negligence.

42. The factual basis of the Defendant's Thirteenth Affirmative Defense that Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, estoppel, laches, acquiescence, and other doctrines of equitable relief.

43. The factual basis of the Defendant's Fourteenth Affirmative Defense that Defendant contends that Plaintiff's claims against Defendant are subject to arbitration pursuant to the applicable Retail Installment Sales Contract.

44. The factual basis of the Defendant's Fifteenth Affirmative Defense that Defendant contends that to the extent that Plaintiff have suffered any damages as a result of the conduct alleged in the Complaint, Plaintiff failed to mitigate those damages barring Plaintiff's claims in whole or in part.

45. The factual basis of the Defendant's Sixteenth Affirmative Defense that Plaintiff's damages are barred in whole or in part by the doctrine of set off.

46. The factual basis of the Defendant's Seventeenth Affirmative Defense that Plaintiff has failed to state a cause of action for relief in the Complaint.

47. The factual basis of the Defendant's Eighteenth Affirmative Defense that Plaintiff's cause of action for breach of express warranty is barred by his alteration of the Vehicle while in his possession.

## SCHEDULE B

## DUCES TECUM

PLEASE TAKE FURTHER NOTICE that the designated representative(s) of Defendant FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE must bring the following documents with them to the deposition to the extent any responsive records have not already been produced:

1. All documents, communications and correspondence relating in any way to the Vehicle in Your possession.

2. All documents relating to the Dealership's purchase, acquisition or possession of the Vehicle, including but not limited to, inventory agreements, consignment agreements, sales documents, purchase documents, advertisements, trade-in documents, repossession documents, and auction documents.

3. All documents establishing the Vehicle's ownership and registration history, including but not limited to, titles, registrations and manufacturer's statement of origin.

4. All communications and correspondence relating to the Dealership's purchase, acquisition or possession of the Vehicle.

5. All documents relating to the quality or condition of the Vehicle at any time prior to the Dealership's purchase, acquisition or possession of the Vehicle, including but not limited to, inspection records, repair records, maintenance records, estimates, auction disclosures, auction files, trade-in documents or disclosures, CARFAX Vehicle History Reports and AutoCheck Vehicle History Reports, and documents relating to the Vehicle's value.

6. All intake forms, inspection records, estimates, CARFAX Vehicle History Reports and AutoCheck Vehicle History Reports relating to the Vehicle at any time during the Dealership's

possession, custody or control of the Vehicle.

7. All repair records, maintenance records, and estimates relating to the Vehicle at any time during the Dealership's possession, custody or control of the Vehicle.

8. All documents reflecting modifications, add-ons or alterations relating to the Vehicle at any time during the Dealership's possession, custody or control of the Vehicle.

9. All documents relating to the quality or condition of the Vehicle at any time during the Dealership's possession, custody or control of the Vehicle.

10. All documents relating to the Vehicle's value, including but not limited to documents used or relied upon by the Dealership in determining the Vehicle's value, purchase price or sales price.

11. All documents, communications or recordings relating to the advertising of the Vehicle by the Dealership, including but not limited to, television advertisement, radio advertisement, print advertisement, online advertisement, and the Vehicle's window sticker, buyer's guide and any other document that was affixed to the Vehicle.

12. All documents relating to the identity of persons whom the Dealership attempted to sell the Vehicle.

13. All communications or correspondence by the Dealership with third parties relating to the Dealership's attempt to sell the Vehicle, including but not limited to, representations relating to the Vehicle and any documents relating to any attempted or cancelled sale.

14. All documents (including drafts, revisions and unexecuted copies) relating to the terms of the sale of the Vehicle by the Dealership to Purchaser, including but not limited to, contracts for sale, agreements to sell, retail buyers orders, purchase agreements, we-owe agreements, arbitration agreements, and spot delivery agreements.

15. All documents given or provided to Purchaser prior to Purchaser agreeing to purchase the Vehicle.

16. All documents given or provided to Purchaser in connection with the sale of the Vehicle.

17. All documents, including drafts, prepared as part of the sale of the Vehicle to the Purchaser, including but not limited to, odometer disclosures, vehicle registration documents, tag documents, payment receipts, invoices, and deposit agreements.

18. All documents contained in the deal file or deal jacket for the transaction for the Vehicle.

19. All documents relating to the transfer of title of the Vehicle to Purchaser or any lienholder.

20. All documents, including drafts, relating to the financing of the Vehicle purchase, including but not limited to, retail installment sales contracts, financing applications, credit applications, credit authorizations, and credit reports.

21. All communications or correspondence between the Dealership and any financing company relating to Purchaser's financing of the Vehicle or any attempt to obtain financing, including, but not limited to all financing approvals, declinations and conditional approvals.

22. All documents relating to Purchaser's financing of the Vehicle or any attempt to obtain financing, including but not limited to, term sheets, approval letters, rejection letters, counter-offers, negotiations, financing requirements, rates, rate spreads, buy rates, sell rates, finance fees, finance charges and financing programs.

23. All documents relating to payments or financial incentives received or earned by the Dealership from third parties relating to the Purchaser's purchase and financing of the Vehicle,

including but not limited to payments, rebates, rewards and commissions.

24. All documents relating to any agreement or program between a financing company involved in the financing of the Vehicle and the Dealership, including but not limited to, bonus programs, incentive programs, rebate programs, rewards programs, and commissions.

25. All documents relating to any agreements between the Dealership and any finance company the Dealership contacted with regard to the Vehicle.

26. All documents relating to warranties covering the Vehicle, including but not limited to, manufacturer warranties, extended warranties, certified pre-owned warranties, and dealership warranties.

27. All warranty documents provided to Purchaser.

28. All warranty terms and conditions provided to the Purchaser.

29. All documents relating to products purchased from third parties relating to the Vehicle, including but not limited to, service contracts, GAP products, ETCH products, dent repair, tire coverage and any insurance products.

30. All documents relating to the Vehicle's mileage, odometer, and odometer reading.

31. All documents provided by the Dealership to the Purchaser following the date of the sale of the Vehicle.

32. All documents relating to any repairs, diagnostics, estimates, or inspections relating to the Vehicle following the date of the sale of the Vehicle.

33. All documents relating to payments made by the Dealership to third parties related to Purchaser's purchase and financing of the Vehicle, including but not limited to, payments related to extended warranties, GAP products, service agreements, documentary stamp fees, financing, trade-in payoffs, taxes, government fees, title, registration, database access fees and

tags.

34. All communications and correspondence between the Dealership and any third party related to Purchaser's purchase and financing of the Vehicle, including but not limited to, payments related to extended warranties, GAP products, service agreements, documentary stamp fees, financing, trade-in payoffs, taxes, government fees, title, registration, database access fees and tags.

35. All documents relating to the Dealership's inspection procedures and practices for vehicles it acquires for resale, including but not limited to, instructions, checklists, guidelines and training manuals.

36. All documents relating to the Dealership's policies and procedures relating to the sale and financing of vehicles.

37. All documents relating to the financial impact on the Dealership based on the sale of the Vehicle, including the net profit/loss to the Dealership, and any wash-out or deal-recap sheet.

38. Copies of the certifications or licenses of all Dealership employees who drove, repaired or inspected the Vehicle.

39. Copies of the employment files for each Dealership employee, agent, representative or owner who handled any part of the sale or financing of the Vehicle or who communicated with the Purchaser, except to the extent that disclosure of such employment information is prohibited by law, such information shall be redacted.

41. Copies of all complaints filed against or received by the Dealership by Purchaser relating to his purchase, lease or financing of a vehicle from the Dealership, including but not limited to complaints with the Florida Department of Consumer Affairs, Better Business Bureau,

Florida Department of Agriculture & Consumer Services or any other forum for the last five years.

42. All communications and correspondence sent to or received from the Florida Department of Consumer Affairs, Better Business Bureau, Florida Department of Agriculture & Consumer Services or any other forum related to Purchaser or the Vehicle.

43. Copies of all complaints filed against by the Dealership in Federal or State Court during the last four calendar years.

44. All documents relating to any licenses held by Dealership through the State of Florida at the time it sold the Vehicle to Purchaser.

45. All documents relating to the Dealership bond posted with the State of Florida under chapter 320 of the Florida Statutes and in effect at all times relevant to this matter.

46. Copies of all insurance policies covering the Dealership.

47. Copies of any and all communications and correspondence to or from the Purchaser.

48. Copies of any and all communications and correspondence between you and any person or entity relating to the Vehicle or its sale and financing.

49. Copies of any and all communications and correspondence by any person or entity relating to the Vehicle or its sale and financing.

50. All communications or correspondence between the Dealership and the Purchaser.

51. Any and all statements, including, but not limited to, recorded telephone interviews, tapes, video, written statements, whether signed or unsigned, of all witnesses to the sale and financing of the Vehicle and/or any witnesses having knowledge regarding any and all facts and issues in the instant litigation.

52. Any and all photographs, videos, diagrams or sketches of the Vehicle.

53. Any and all documents, correspondence or communications with any entity or individual relating to the repair, inspection, maintenance or sale of the Vehicle within the last five years.

54. All documents, papers or evidence to be introduced at trial.

55. All expert reports from any experts who will testify at trial.

56. Any and all documents supporting the factual basis for any denial of any allegation of the Complaint.

57. Any and all documents supporting the factual basis for any affirmative defenses asserted by you.

Respectfully submitted this 27th day of February, 2024, by:

/s/ Joshua Feygin
Joshua Feygin, Esq.
FLORIDA BAR NO: 124685
Email: Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison Street, Suite 208 F
Hollywood, FL 33020
Telephone: (954) 228-5674
Facsimile: (954) 697-0357

### CERTIFICATE OF SERVICE

I certify that on this day of 27th day of February, 2024, a copy of the foregoing was served upon all parties of record.

/s/ Joshua Feygin
Joshua Feygin, Esq