UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:23-cv-00709-WFJ

GABRIEL LUC HADDON,

      Plaintiff,

vs.

FS INVESTMENTS OF AMERICA, INC., d/b/a
POWERHOUSE AUTOMOTIVE, a Florida
Corporation, and WESTLAKE SERVICES, LLC.
d/b/a WESTLAKE FINANCIAL SERVICES,
a Foreign Corporation,

      Defendants.

_____/

FS INVESTMENTS OF AMERICA, INC.,

      Third-Party Plaintiff,

vs.

MCCOMBS WEST FORD, LLC., d/b/a
MCCOMBS FORD WEST, a Foreign
Corporation,

      Third-Party Defendant.

_____/

## THIRD-PARTY DEFENDANT MCCOMBS WEST
## FORD, LLC'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Third-Party Defendant, McCombs West Ford, LLC

("McCombs") by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56

and hereby requests that the Court enter an order granting it summary judgment as to Counts I and II brought against it by Third-Party Plaintiff, FS Investments of America, Inc. ("FS Investments" or its d/b/a "Powerhouse") and in support of same states the following.

## I.   Introduction

FS Investments has been sued by Plaintiff, Gabriel Haddon ("Haddon"), *inter alia*, under the Federal Odometer Act based on his purchase of a used 2012 Ford F-150 ("the Ford") which he claims had greater mileage on it then had been disclosed to him when he purchased it from FS Investments.  During the litigation, FS Investments brought a third-party action against McCombs claiming that it had purchased the Ford from McCombs who had misrepresented the mileage to FS Investments.  However, as demonstrated below, McCombs had sold the Ford to non-party, Auto Deal Corp. ("Auto Deal"), *from whom* FS Investments purchased the Ford.  In other words, there was no transaction or representations made regarding the Ford between McCombs and FS Investments.

McCombs is entitled to summary judgment as to the claims brought against it by FS Investments because both claims (negligent misrepresentation and common law indemnity) require that there had been some business dealings and misrepresentations made between them which is demonstrably not the case.  Moreover, on a fundamental level, because FS Investments had not purchased the Ford from McCombs, FS Investments lacks standing even to sue McCombs.

2

## II.    Standard of Review

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the party seeking summary judgment must establish that no genuine issue of material fact remains for trial, even when seeing the evidence in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir. 1987).

For a non-moving party to avoid summary judgement it cannot rest upon mere allegations or denials, but instead must point to specific facts showing the existence of a genuine dispute for trial. *See* Anderson, at 248 ("By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact"). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*, at 252.

While summary judgment is not appropriate in every type of case, in cases where the "determination of liability depends upon a written instrument of the parties

3

thereto and the legal effect to be drawn therefrom, the question at issue is one of law only and ordinarily is determinable by summary judgment. *Kochan v. American Fire and Casualty Company*, Fla.App.1967, 200 So.2d 213, 220, *cert. denied,* 204 So. 2d 329 (Fla. 1967).

### III.   Transactions and Representations

FS Investments claims against McCombs are so clearly not supported by the facts required that the Court need not look much further than the deposition testimony given by FS Investments own corporate representative.

#### a.  The Transactions

In order for FS Investments' claim of common law indemnity to be viable, it must establish that a "special relationship" existed between it and McCombs. However, as set forth below, the undisputed facts based on the testimony of FS Investments own corporate representative reveal that there was *no relationship* between McCombs and FS Investments.

It is not in dispute that in 2020 McCombs accepted the Ford as a "trade-in" in connection with a vehicle sale unrelated to this action.  It is not in dispute that McCombs thereafter auctioned off the Ford *via* the auction company Manheim, Auto Deal being the winning bidder, and thus the purchaser.  However, FS Investments has attempted to be "considered" the purchaser of the Ford from McCombs because when Auto Deal made the purchase, FS Investments' owner, Franklyn Strusberg ("Strusberg"), acted as a representative of Auto Deal.  During his deposition as corporate representative of FS Investments, Strusberg explained:

4

```
15        Q.   Did you have authority to bind Auto Deal
16   Corp. to purchase the vehicle from McCombs Ford?
17        A.   Yes.  I was a buyer for Auto Deal Corp.
```

*Strusberg Depo.* 31:15-17. *See* **Exhibit A.**

To make it clear that Auto Deal was the purchaser of the Ford from McCombs,
Strusberg further testified:

```
13        Q.   And when did the dealership, meaning Auto
14   Deal, purchase the vehicle from McCombs Ford?
15        A.   April 11th.  It says there April 11th.
```

*Strusberg Depo.* 35:13-15. *See* **Exhibit A.** *McCombs Affidavit See* **Exhibit B.**

As Strusberg goes on to explain, not only was Auto Deal the purchaser of the
Ford, Auto Deal paid for it as well:

```
7         Q.   And did Powerhouse tender this money or did
8    Auto Deal Corp. tender the money?
9         A.   No.  Auto Deal paid Manheim.
10        Q.   And where did Auto Deal get the funds for the
11   payment?
12        A.   From his bank account.
```

*Strusberg Depo.* 41:7-12. *See* **Exhibit A.** *McCombs Affidavit See* **Exhibit B.**

Therefore, although Strusberg may well have acted on behalf of Auto Deal, it is
not in dispute that *Auto Deal was the purchaser of the Ford from McCombs rather than FS
Investments.* Although Strusberg's testimony is clear that McCombs sold the Ford to
Auto Deal, in further testimony Strusberg elaborates that McCombs sold the Ford to
Auto Deal and that Auto Deal thereafter sold the Ford to FS Investments:

```
14        Q.    Did Auto Deal Corp. ever transfer that title
15   to you?
16        A.    They have to.
17        Q.    So, Auto Deal transfers the title, the
18   physical title to you, and then you transfer that
19   physical title to whoever you sell the vehicle to?
20              MR. PERALTA:  Objection; assumes facts not in
21        evidence.
22   BY MR. TORRES:
23        Q.    Is that correct?
24        A.    Correct.
```

*Strusberg Depo.* 110:14-24.  *See* **Exhibit A.**

Obviously, because FS Investments admits that it purchased the Ford from Auto Deal, it is likewise admitting that it did *not* purchase the Ford from McCombs.

Finally, as to the certificate of title of the Ford passing from McCombs to Auto Deal (not FS Investments):

```
2         Q.    Now, that Certificate of Title on it will
3    only reflect the transaction between McCombs and Auto
4    Deal Corp., correct?
5         A.    Correct.
```

*Strusberg Depo.* 113:2-5.  *See* **Exhibit A.**  *McCombs Affidavit See* **Exhibit B.**

As the foregoing testimony by FS Investments establishes, McCombs sold the Ford to Auto Deal, Auto Deal sold the Ford to FS Investments, and that FS Investments intended to sell the Ford (and did -- to Haddon).  What the foregoing testimony further establishes is that there was *no* relationship between McCombs and FS Investments, much less any "*special relationship*."

6

### b. Representations

In order for FS Investments' claim of negligent misrepresentation to be viable, it must establish that McCombs intentionally made a material misrepresentation to it on which it relied. However, as set forth below, the undisputed facts based on the testimony of FS Investments' corporate representative reveals that McCombs made *no representations* to FS Investments regarding the Ford (after all there was no transaction them to begin with):

```
11        Q.    So, when you purchased this vehicle, what
12   representations did McCombs Ford tell you about the
13   vehicle?
14        A.    No, I never get to speak with the seller.  I
15   buy the car -- the car through Manheim, and I bought it
16   based on the information that I saw.
```

*Strusberg Depo.* 36:11-16. *See* **Exhibit A.** *McCombs Affidavit See* **Exhibit B.**

As to reliance, the same is true:

```
17        Q.    So, over here, it states that you relied upon
18   the information provided by McCombs.
19             What information was provided by McCombs?
20        A.    The Bill of Sale.
21        Q.    That was the only information you received
22   from McCombs?
23        A.    Correct.
```

*Strusberg Depo.* 98:17-23. *See* **Exhibit A.** *McCombs Affidavit See* **Exhibit B.**

7

Therefore, FS Investments testimony is clear that FS Investments itself admits that no material misrepresentations were made to it by McCombs on which it relied.

## IV.   Common Law Indemnity

To state a claim for common law indemnity, a party must allege that he is (1) without fault, (2) that another party is at fault, and (3) that a *special relationship* between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party. *Tsafatinos v. Family Dollar Stores of Florida, Inc.,* 116 So. 3d 576, 581 (Fla. 2d DCA 2013). Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be indemnity between joint tortfeasors. *Houdaille Industries, Inc. v. Edwards,* 374 So.2d 490, 493 (Fla.1979). If both parties are at fault, no matter how slight the fault of the party seeking indemnity, recovery for common law indemnity is precluded. *Id.,* at 494. 990 F.Supp.2d 1254

Florida law is clear that in the absence of a contract, duty to pay, or *other* special relationship between the parties, an indemnity claim should be dismissed. *See Kesslack,* 2009 WL 3161808, at  (citing *Brickell Biscayne Corp. v. WPL Assoc., Inc.,* 671 So.2d 247, 248–49) (Fla. 3d. DCA 1996)).

Here, FS Investments does not, and cannot, allege that there was ever a contractual relationship, or *any* relationship, between it and McCombs. As such, McCombs is entitled to summary judgment as to FS Investments' claim for common law indemnity.

## V.      Negligent Misrepresentations

Under Florida law, a claim for negligent misrepresentation requires the plaintiff to show (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Howard v. Murray*, 184 So. 3d 1155, 1168 (Fla. 1st DCA 2015),

Here, McCombs placed the Ford up for auction through Manheim, and Auto Deal, not FS Investments, purchased it.   Moreover, FS Investments admits that McCombs made no material misrepresentations to FS Investments (which is academic in any event because McCombs did not sell the Ford to FS Investments anyway). Therefore, because the undisputed facts fail to support the elements necessary for FS Investments to prove negligent misrepresentation against McCombs, McCombs is entitled to summary judgment.

## VI.     Conclusion

FS Investments claim of common law indemnity against McCombs is not viable because FS Investments' own testimony establishes that there was no relationship between the parties, much less a "special relationship."   Likewise, FS Investments claim for negligent misrepresentation is not viable because FS Investments' own testimony establishes that it relied on no material misrepresentations by McCombs.

9

As such, the Court should enter an order granting McCombs summary judgment as to FS Investments third-party claims against it.

**WHEREFORE**, Third-Party Defendant, McCombs West Ford, LLC respectfully requests that the Court enter an order granting it summary judgment as to all counts contained within Third-Party Plaintiff, FS Investments of America, Inc.'s Third-Party Complaint.

**NICKLAUS & ASSOCIATES, P.A.**
*Attorneys for McCombs Ford*
4651 Ponce de Leon Blvd., Suite 200
Coral Gables, Florida 33146
Telephone: 305-460-9888
Facsimile: 305-460-9889

By: _____
**BRUCE B. BALDWIN, ESQ.**
Florida Bar No.: 493023
bruceb@nicklauslaw.com
**EDWARD R. NICKLAUS, ESQ.**
Florida Bar No.: 138399
edwardn@nicklauslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically on all counsel of record *via* the Court's CM/ECF system this 4th day of September, 2024.

_____
**BRUCE B. BALDWIN**