UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **GABRIEL LUC HADDON**, an individual, | Case No. 8:23-cv-00709 |
| Plaintiff, | |
| vs. | |
| **FS INVESTMENTS OF AMERICA, INC.**, d/b/a POWERHOUSE AUTOMOTIVE, a Florida corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a foreign corporation, | |
| Defendants. _____/ | |
| FS INVESTMENTS OF AMERICA, INC., a Florida corporation, | |
| Third-Party Plaintiff, | |
| vs. | |
| MCCOMBS WEST FORD, LLC, d/b/a MCCOMBS FORD WEST, a foreign corporation, | |
| Third-Party Defendant. _____/ | |

**DEFENDANT FS INVESTMENTS OF AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF GABRIEL LUC HADDON**

Defendant, FS Investments of America, Inc. ("Defendant"), by and through the undersigned counsel, and Pursuant to Fed. R. Civ. P. 56, and Local Rule 3.01, hereby

moves for an order of summary judgment against plaintiff, Gabriel Luc Haddon ("Plaintiff"), stating the following:

## I. INTRODUCTION

By alleging that Defendant, a used car dealership, provided incorrect mileage for the Vehicle with intent to defraud at the time of sale, Plaintiff seeks out-of-pocket expenses and compensation for the diminished value of the vehicle that is the subject of this action. However, at his deposition, Plaintiff testified that he has not incurred any costs related to the vehicle; instead, all expenses were incurred by his mother, non-party Maria Haddon. Plaintiff also testified that the vehicle belongs to his mother. Moreover, prior to filing this action, Plaintiff's counsel accepted a settlement payment directly from Defendant with the understanding that it was tendered as satisfaction of Plaintiff's claim for actual damages. Therefore, as detailed further below, Plaintiff (i) lacks standing to pursue the claims in the complaint, (ii) has settled his claim for actual damages against Defendant, and (iii) has not suffered any out-of-pocket expenses related to the vehicle. Accordingly, this Court should dismiss the Complaint with prejudice and/or find that Plaintiff has no valid claim for actual damages.

## II. UNDISPUTED FACTS

1. Defendant owns and operates a used car dealership under the trade name "Powerhouse Automotive." On or about May 25, 2020, Plaintiff visited Defendant's dealership looking to purchase a used motor vehicle. (Strusberg Decl. ¶ 4; *see* Haddon's

Page **2** of **14**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  **T.** 786.822.3700 **F.** 305.675.3605  **ArmstrongTeasdale.com**

Dep. 20:25–21:12).[1]  Plaintiff inspected and test drove a used 2012 Ford F-150 with VIN 1FTFW1ET2CFA12718, and after being satisfied with its performance, chose this vehicle (the "Vehicle"). (Strusberg Decl. ¶ 4; *see* Haddon's Dep. 24:7–24:21, 25:7–9, 26:9–14).

2.      Later that day, Plaintiff and his mother, non-party Maria Haddon, signed, *inter alia*, a Buyer's Order and Retail Installment Contract and Security Agreement ("RISC") (collectively, the "Purchase Documents") to purchase the Vehicle. (Strusberg Decl. ¶ 5; Haddon's Dep. 32:23–24). Defendant then assigned the RISC to Westlake. (Strusberg Decl. ¶ 5).

3.      Pursuant to the RISC, Plaintiff and his mother agreed to finance $20,080.17 at an annual interest rate of 16.09% (the "Amount Financed"), resulting in 48 monthly payments of $573.32 each. (Strusberg Decl. ¶ 6).

4.      Although Plaintiff and his mother both signed the Purchase Documents, Plaintiff testified that his mother gifted the Vehicle to him, as she had done for her other children. (*See* Haddon Dep. 38:22–39:5). She alone made all the payments to Westlake for the entire Financed Amount as well as the $5,000.00 down payment. (Haddon Dep. 38:16–21). Plaintiff is not obligated to reimburse his mother these payments. (Haddon Dep. 39:10–13).

5.      After Plaintiff and his mother obtained possession of the Vehicle, members of Plaintiff's household, which include his wife, mother, father, and two

---

[1] A copy of Plaintiff's deposition transcript is annexed hereto as **Exhibit A**, and of Defendant's declaration as **Exhibit B**.

brothers, "occasionally" drove this vehicle "to haul stuff that wouldn't normally fit into a car or a sedan." (Haddon's Dep. 9:19–10:5).

6. Plaintiff testified that he later repaired the turbo-charger and muffler, and purchased new tires (the "Replaced Parts"). (Haddon's Dep. 40:3–17). Plaintiff stated that the tires did not provide adequate traction on the snowy roads of Idaho; the Vehicle was purchased in Florida, but Plaintiff was attending college in Idaho. (Haddon's Dep. 50:7–51:2, 63:17–64:14).

7. Plaintiff testified that the Vehicle's tires had more tread initially, but his use of the Vehicle resulted in the reduced tread necessitating the replacement. (Haddon's Dep. 64:16–65:9).

8. Other than these repairs, the Vehicle was in good condition. (*See* Haddon's Dep. 51:3–20, 63:5–20). Plaintiff agreed that a motor vehicle with over 100,000 as the Vehicle will likely require repair, replacement parts, and usual maintenance costs. (Haddon's Dep. 60:12–18).

9. Plaintiff testified that all repairs to the Vehicle were done in Idaho. (Haddon's Dep. 54:14–16). However, Plaintiff never paid for any repair or maintenance regarding the Vehicle. (Haddon's Dep. 40:18–19). His mother assumed these costs as Plaintiff "didn't have money at the time." (Haddon's Dep. 40:24–25). Plaintiff is not obligated to reimburse his mother any repair or maintenance costs. (Haddon's Dep. 40:20–23).

10. Moreover, Plaintiff's mother paid for the Vehicle's insurance, which Plaintiff is also not obligated to reimburse. (Haddon's Dep. 56:23–57:4).

11. Plaintiff and his mother do not share a bank account, and the only expense incurred by Plaintiff related to the Vehicle is the cost of gasoline for its use. (Haddon's Dep. 67:12–20).

12. Plaintiff eventually decided to try and sell the Vehicle because "the miles per gallon [were] too low for [his] job at the time." (Haddon's Dep. 12:4 –8). In other words, Plaintiff wanted to sell the Vehicle because gas was too expensive and he wanted to reduce the cost of commuting to work. (Haddon's Dep. 12:9–11).

13. Plaintiff testified that a potential buyer requested he obtain a CARFAX report of the Vehicle. (Haddon's Dep. 11:21–22). At that time, Plaintiff became aware of a potential mileage discrepancy with respect to the Vehicle. (Haddon's Dep. 12:12–20).

14. Although the Vehicle has not been sold, Plaintiff is no longer using the Vehicle. (*See* Haddon's Dep. 15:15–17, 16:15–17, 55:12–15).[2] The Vehicle is located at Plaintiff's mother's house. (Haddon's Dep. 55:22–56:4). Before Plaintiff is allowed to use the Vehicle, he must first ask permission from his mother — as she owns the Vehicle:

> Q. So[,] at the end of this lawsuit if you were to stay with the F-150, what do you plan to do with this vehicle?
>
> A. I haven't really talked with my mom about that so…
>
> Q. What do you have to talk to your mom about that?

---

[2] Plaintiff testified that on February 28, 2023, he purchased a 2023 Subaru Crosstrek because he likes how it looks, provides a better gas mileage ratio, and it is safe for his newborn. (Haddon's Dep. 10:6–11, 18:11–18, 19:4–22, 53:9–15).

Page **5** of **14**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  **T.** 786.822.3700 **F.** 305.675.3605  **ArmstrongTeasdale.com**

> A. I mean, technically, it's her – it's her truck.
>
> Q. Is that because she paid for it?
>
> A. Yes, sir.

(Haddon's Dep. 55:22–56:4, 56:12–22).

15. Although his mother paid for all expenses related to the Vehicle, Plaintiff testified that because of the mileage discrepancy in the CARFAX report, he seeks damages from Defendant for the cost to purchase the Vehicle as well as repair and insurance costs. (Haddon's Dep. 67:1–7; Strusberg's Decl. Ex. 4).

16. On or about December 21, 2022, FS Investments received a written settlement demand from Plaintiff's counsel titled "*Fla. Stat. 501.98 Demand*" ("Settlement Letter"). (Strusberg's Decl. ¶ 7). In the Settlement Letter, Plaintiff states that he is "willing to amicably resolve this matter and demands payment" of $8,799.20 "representing [his] good faith estimate of actual damages." (*Id.* ¶ 8).

17. On March 9, 2023, in an e-mail to counsel for Defendant's bond company, Plaintiff's counsel explained the calculation of Plaintiff's good faith estimate of actual damages as follows:

> As reflected in the documentation provided to Hudson in February, the purchase price of the vehicle was $21,998. My expert has informally opined that a diminution of value model would be inline *[sic]* with a 40% reduction in value of the vehicle. 40% of $21,988 comes out to $8,799.20 which is the Plaintiff's good faith estimate of damages in this claim as reflected in the statutory demand delivered to and ignored by the insured.[3]

---

[3] (A copy of the e-mail from Plaintiff's counsel is annexed hereto as **Exhibit C**).

18. On or about March 17, 2024, in an effort to work a manageable compromise, avoid the expense of litigation, FS Investments delivered a check to Plaintiff in the amount of $8,799.20 to settle Plaintiff's alleged actual damages as set forth in the Settlement Letter. (Strusberg's Decl. ¶ 13; *see* Haddon's Dep. 67:21–23, 70:11–14). Plaintiff's counsel negotiated the check and has received the settlement payment. (Strusberg's Decl. ¶ 16).

19. However, on March 30, 2023, Plaintiff filed its Complaint against Defendant, seeking economic and actual damages for Defendant's alleged violation of 49 U.S.C. § 32705(a) (the "Odometer Act") (Count I), alleged fraud (Count II), fraudulent inducement (Count III), and breach of express warranty (Count IV). (Strusberg's Decl. Ex. 4).

20. Defendant, confused because he thought he had settled Plaintiff's claim for actual damages in connection with the Vehicle, contacted Plaintiff's counsel, who responded by stating:

> [B]y tendering the $9,000 *[sic]* for Mr. Haddon's claim for actual damages, the dealership arguably resolved the bond's liability in the matter since the bond company is only liable for actual damages and not statutory damages. However, the unconditional tender does not resolve Mr. Haddon's statutory damages and entitlement to attorney's fees which was all but ignored by the dealership."

(Strusberg's Decl. Ex. 15).

### III.  LEGAL STANDARDS

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Wilsonart, LLC v.* Lopez, 308 So. 3d 961, 963 (Fla. 2020) citing *Scott v. Harris*, 550 U.S. 372, 378 (2007). Therefore, the movant can prevail by showing an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

#### B. Standing Requirement

Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). For there to be a case or controversy, the plaintiff must have "a personal stake in the case—in other words, standing." *Id*. Plaintiffs must establish standing by demonstrating "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–40 (2016), as revised (May 24, 2016). If the plaintiff does not claim to have suffered "an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Page **8** of **14**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  **ArmstrongTeasdale.com**

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc.*, 578 U.S. 339. For an injury to be "concrete," it must be a harm that actually exist rather than being abstract. *See id*. at 340. To determine whether a harm is real, courts "should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 594 U.S. 424. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*.[4]

However, a plaintiff does not automatically satisfy the injury-in-fact requirement simply because a statute grants a statutory right and permits its enforcement by suit. *Spokeo*, 578 U. S., at 341; *Braitberg v. Charter Communications*, Inc., 836 F.3d 925, 930 (8th Cir. 2016). "[A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC*, 594 U.S. 426–27. Only the latter plaintiff may sue in federal court. *Id*.[5]

---

[4] But this "is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion LLC*, 594 U.S. 424–25. Traditional tangible harms readily qualify as concrete injuries in fact, such as physical and monetary harms. *Id*. Intangible harms can also be concrete, including injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts[,] such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id*. Harms may also include harms specified by the Constitution itself, such as abridgment of free speech. *Id*.

[5] "[W]e cannot treat an injury as concrete for Article III purposes based only on Congress's say-so. Like the Sixth Circuit, we reject the anything-hurts-so-long-as-Congress-says-it-hurts theory[.]" *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 (11th Cir. 2020).

### C. <u>Accord and Satisfaction</u>

An accord and satisfaction results when (i) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (ii) there is actual performance in accordance with the new agreement. *Martinez v. S. Bayshore Tower*, L.L.L.P., 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008). "Compliance with the new agreement discharges the prior obligations." *Id*. Moreover, "[i]f a party accepts an offer for a superseding agreement, which clearly intends an accord and immediate satisfaction, he or she is bound to each of the attached conditions of the new agreement and abandons the rights previously held." *Cirrus Design Corp. v. Sasso*, 95 So. 3d 308, 312 (Fla. 4th DCA 2012); *Constr. Consulting, Inc. v. Dist. Bd. of Trustees of Broward Coll.*, 347 So. 3d 14, 22 (Fla. 4th DCA 2022) ("[I]f an offer clearly serves as an accord and satisfaction, and the other party accepts the offer, then he or she is bound to the conditions attached.").

"Strong public policy supports the use of accord and satisfaction. Accord and satisfaction is a convenient and valuable tool for resolving disputes informally without litigation." *Martinez*, 979 So. 2d 1024. Courts should not condone "a creditor's ignorance of a debtor's sole purpose in extending his money; that is, in satisfaction of an existing dispute between the parties." *Burke Co. v. Hilton Dev. Co.*, 802 F. Supp. 434, 439 (N.D. Fla. 1992). When a person negotiates the tendered check with knowledge of the payor's intent, the person is bound to the agreement and cannot later sue for the remaining balance due under the former dispute. *See id*.; *Martinez*, 979 So. 2d 1024.

"The person cannot have his cake and eat it too." *Martinez*, 979 So. 2d 1024; *see also Engelke v. Athle-Tech Computer Sys., Inc.*, 982 So. 2d 3, 9 (Fla. 2d DCA 2008) ("[A] double recovery based on the same element of damages is prohibited."); *In re Prudential of Florida Leasing, Inc.*, 478 F.3d 1291, 1297 (11th Cir. 2007) ("Like the law of most states, Florida law prevents a party from recovering twice for the same damages.").

## IV.    ARGUMENTS

### A. Plaintiff Lack Standing to Pursue this Case

Plaintiff has not suffered any *de facto* injury as required by Article III. Plaintiff testified that his mother — not him — paid for the down payment, Amount Financed, insurance, and any repairs related to Vehicle. He has no obligation to reimburse his mother. The only expense incurred by Plaintiff was to purchase gasoline necessary to operate the Vehicle.

Therefore, the basis for Plaintiff's standing can only be that he signed the Purchased Documents and is on the title to the Vehicle. But this insufficient. Plaintiff seeks economic and actual damages in the Complaint by claiming that Defendant provided the incorrect mileage of the Vehicle at the time of sale with intent to defraud. Accordingly, the closest relationship between Plaintiff's claim and a harm traditionally recognized as a basis for a lawsuit is fraud. However, "[a]ctual damages and the measure thereof are essential as a matter of law in establishing a claim of fraud." *Nat'l Equip. Rental, Ltd. v. Little Italy Rest. & Delicatessen, Inc.*, 362 So.2d 338, 339 (Fla. 4th DCA 1978). Yet, despite Plaintiff's demand for economic and actual damages, he has not suffered any damages. *See TransUnion LLC*, 594 U.S. 431 ("[S]tanding is not

dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek.").

Moreover, although Plaintiff signed the Purchase Documents, the Vehicle was gifted to him by his mother. Moreover, after Plaintiff acquired a replacement vehicle, Plaintiff acknowledges that the Vehicle belongs solely to his mother, as she was the one who made every payment (including the down payment). Accordingly, Plaintiff has no personal stake in the dispute, which is fatal to his standing in the case. *See TransUnion LLC*, 594 U.S. 413, 431 (2021) ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation."). As Plaintiff does not have any stake in the dispute, and paid nothing in relation to the Vehicle, any award by the Court would be a windfall to Plaintiff and would redress no actual harm.

### B. Defendant Settled or Satisfied Plaintiff's Claim for Actual Damages

To the extent that this Court finds that Plaintiff has standing (which Defendant does not concede), it should find that Plaintiff has already settled his claim with Defendant for any actual damages. Plaintiff's counsel negotiated a settlement for $8,799.20, with knowledge that Defendant agreed to pay the amount demanded in satisfaction of Plaintiff's claim for actual damages. (*See* Ex. C; Strusberg's Decl. Ex. 2, 3, 5). The Court should not permit Plaintiff to pursue a claim for the same damages that the settlement was intended to release. Not only would allowing this be unjust and result in a double recovery for Plaintiff, it is prohibited under Florida law. *See Martinez*, 979 So. 2d 1024; *Engelke*, 982 So. 2d 9.

### C. Plaintiff's Damages Do Not Include Any Out-of-Pocket Expenses Related to the Vehicle

Even if this Court determines that Plaintiff has standing and that Defendant has not already settled any potential claim for actual damages, the Court should find that Plaintiff's claim for damages excludes any out-of-pocket expenses related to the Vehicle. As previously stated, Plaintiff testified that his mother — not him — paid for the down payment, Amount Financed, insurance, and any repairs related to Vehicle. He has no obligation to reimburse his mother. The only expense incurred by Plaintiff is the purchase of gasoline to drive the Vehicle.

## V. CONCLUSION

WHEREFORE, defendant, FS Investments of America, Inc., respectfully requests that the Court enter an order finding that:

i.  Plaintiff lacks standing to pursue the claims and relief in the Complaint, thereby dismissing this case with prejudice;

ii. Defendant settled Plaintiff's claim for actual damages when Plaintiff's counsel cashed Plaintiff's check in the amount of $8,799.20 with knowledge of Defendant's intent to settle Plaintiff's claim for actual damages; and/or

iii. Plaintiff's claim for damages may not include any out-of-pocket expenses in relation to the Vehicle.

Defendant further requests that the order reserve this Court's finding of Defendant's entitlement to attorney's fees and costs, as appropriate, and grant any relief that the Court deems just and proper.

Dated <u>October 7, 2024</u>.

        Respectfully submitted,

        **ARMSTRONG TEASDALE LLP**
        *Counsel for FS Investments of America, Inc.*
        355 Alhambra Circle, Suite 1200
        Coral Gables, Florida 33134
        Telephone: (786) 822-3700
        Telecopier: (305) 675-3605

By: <u>*/s/ Jose A. Peralta, Esq.*</u>
     Keith D. Silverstein, Esq.
     Fla. Bar No. 086820
     ksilverstein@atllp.com
     Jose A. Peralta, Esq.
     Fla. Bar No. 1028554
     jperalta@atllp.com
     **FOR SERVICE:**
     miamiefiling@atllp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served to every counsel of record via transmission of notices of electronic filing generated by CM/ECF on <u>October 7, 2024</u>.

        <u>*/s/ Jose A. Peralta*</u>
        Jose A. Peralta, Esq.