## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**GABRIEL LUC HADDON**, an
individual,

          Plaintiff,

vs.

**FS INVESTMENTS OF AMERICA,
INC.**, d/b/a POWERHOUSE
AUTOMOTIVE, a Florida corporation,
and WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL
SERVICES, a foreign corporation,

          Defendants.

_____/

FS INVESTMENTS OF AMERICA,
INC., a Florida corporation,

          Third-Party Plaintiff,

vs.

MCCOMBS WEST FORD, LLC,
d/b/a MCCOMBS FORD WEST, a
foreign corporation,

          Third-Party Defendant.

_____/

Case No. 8:23-cv-00709

## <u>DECLARATION OF FRANKLYN STRUSBERG IN SUPPORT OF DEFENDANT FS INVESTMENTS OF AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT</u>

      FRANKLYN STRUSBERG, under penalty of perjury, hereby declares the following:

1.      I am a director of FS Investments of America, Inc., the defendant/third-party plaintiff in the above styled action ("FS Investments"), and I am authorized to provide this declaration on behalf of FS Investments.

2.      I made this declaration based on my review and personal knowledge of FS Investments' files and business records with regard to plaintiff, Gabriel Luc Haddon ("Plaintiff"), and the 2012 Ford F150 with VIN 1FTFW1ET2CFA12718 (the "Vehicle").

3.      The files and business records of FS Investments are complete and correct, have been kept under my supervision and control, and were made at or near the time of the events recorded in the records by or from information transmitted by a person with knowledge.  These records are kept in the ordinary course of a regularly conducted business activity, and it is FS Investments' regular practice to keep such records.

4.      On or about May 25, 2020, plaintiff, Gabriel Luc Haddon ("Plaintiff"), visited Defendant's place of business in search for a used motor vehicle.  Plaintiff inspected and test drove a used 2012 Ford F-150 with VIN 1FTFW1ET2CFA12718, and after being satisfied with its performance, chose this vehicle (the "Vehicle").

5.      Later that day, Plaintiff and his mother, non-party Maria Haddon, signed, *inter alia*, a Buyer's Order and Retail Installment Contract and Security Agreement ("RISC") (collectively, the "Purchase Documents") to purchase the Vehicle.  (A copy of the Purchase Documents is annexed hereto as **Exhibit 1**).  FS Investments then assigned the RISC to Westlake.  (Ex. 1).

ARMSTRONG TEASDALE, LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 T. 305.371.8809 F. 305.675.3605  ArmstrongTeasdale.com

6.      Pursuant to the RISC, Plaintiff and his mother agreed to finance $20,080.17, at an annual interest rate of 16.09% (the "Amount Financed"), resulting in 48 monthly payments of $573.32 each.

7.      On or about December 21, 2022, FS Investments received a letter from Plaintiff's counsel titled *Fla. Stat. 501.98 Demand* ("Settlement Letter"),which states in part:

> "Plaintiff determined that the Vehicle's odometer had been rolled back prior to the Dealer's acquisition of the same. Specifically, on the face of the transfer title signed by the Dealer for the transfer of ownership of the Vehicle, the disclosed mileage as of March 06, 2019[,] was 201,150. . . As such, Dealer had express knowledge of the Vehicle's mileage discrepancy and nevertheless affirmatively misrepresented the mileage to be 131,636."

(A copy of the Settlement Letter is annexed hereto as **Exhibit 2**).

8.      In this letter, Plaintiff states that he is "willing to amicably resolve this matter and demands payment" of $8,799.20 "representing [his] good faith estimate of actual damages." *Id*.

9.      FS Investments denies having any prior knowledge that the Vehicle's odometer had been altered before transferring the Vehicle to Plaintiff and his mother.

10.     FS Investments first obtained a copy of the title to the Vehicle after the Vehicle was sold to Plaintiff and his mother and after Plaintiff already had possession of the Vehicle. When FS Investments recorded the Vehicle's mileage on the Purchase Documents, it relied on the mileage that appeared on the dashboard of the Vehicle.

ARMSTRONG TEASDALE, LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 305.371.8809 **F.** 305.675.3605 ArmstrongTeasdale.com

11.     In addition to FS Investments, Plaintiff's counsel sent the Settlement Letter to FS Investments' bond company, Hudson Surety ("Hudson"), demanding payment for his alleged actual damages.

12.     Hudson initiated its investigation of Plaintiff's claim, requesting documents and statements from the parties.

13.     However, on or about March 17, 2024, in an effort to compromise, avoid the expense of litigation and avoid the possibility that Hudson would pay the demand outright (and then demand reimbursement from FS Investments), FS Investments agreed to pay $8,799.20 to settle Plaintiff's alleged actual damages as set forth in the Settlement Letter.  (A copy of the check and receipt from FedEx displaying the scheduled delivery of the check is annexed hereto as **Exhibit 3**).

14.     Thereafter, Plaintiff filed the Complaint seeking economic and actual damages.  (See copy of the Complaint annexed hereto as **Exhibit 4**).[1]

15.     When I contacted Plaintiff's counsel to inquire about the reason for filing the Complaint, given that I had tendered payment for Plaintiff's actual damages, he responded via email stating in pertinent part:

> What the bond company likely failed to explain is that by tendering the $9,000 *[sic]* for Mr. Haddon's claim for actual damages, the dealership arguably resolved the bond's liability in the matter since the bond company is only liable for actual damages and not statutory damages. However, the unconditional tender does not resolve Mr. Haddon's statutory damages and entitlement to attorney's fees which was all but ignored by the dealership. Had the dealership

---

[1] The Complaint is annexed without exhibits as the pertinent documents for this Declaration and the subject Motion for Summary Judgment are included herein and as attachments to the Motion.

contacted my office in this regard before unilaterally
sending a check, I would have explained as much. Given
the dealership's refusal to amicably confer in relation to
settlement, we were left with no choice but to file suit.

(A copy of the e-mail from Plaintiff's counsel is annexed hereto as **Exhibit 5**).

16.    Although Plaintiff's counsel has cashed the check, Plaintiff continues to
demand payment for alleged actual damages.  This has stalled all efforts to settle the
case promptly.

_UNDER PENALTY OF PERJURY, I DECLARE THAT I HAVE READ THE
FOREGOING AND THE SAME IS TRUE AND CORRECT._

Date: 10 / 07 / 2024          By ~~_____~~

Franklyn Strusberg

# Buyer's Order

**Dealer/Seller Name and Address**

Powerhouse Automotive
10330 Woodberry Rd
Tampa, FL 33619

(813) 530-3090
(813) 436-3000

Date  5/25/2020
App No. App# 57987168 - V# 3

**Buyer/Co-Buyer Name(s) and Address(es)**

| | |
|---|---|
| Gabriel  Luc Haddon | Maria Haddon |
| 3532 Braemar St | 3532 Braemar St |
| Land O Lakes, FL 34638 | Land O Lakes, FL 34638 |
| (813) 909-5344 | (720) 519-3002 |
| VALHADDON2@GMAIL.COM | VALHADDON2@GMAIL.COM |

Mo. of birth  03          Mo. of birth  01          Mo. of birth _____

Stock No.                 Salesperson
Contract No. 1112

## Vehicle Information

☐ New    ☒ Used    ☐ Demo
Year  2012                     Lic. No.
Make  Ford                     Odometer Reading  131636
Model  F150 SuperCrew Ca Color
Body Style Pickup
VIN  1FTFW1ET2CFA12718
Other

## Insurance Information

Buyer has arranged insurance on the motor vehicle.
Insurance Company
Policy No.

## Trade-In Information

**Trade-in 1**

| | |
|---|---|
| Year | Lic. No. |
| Make | Odometer Reading |
| Model | Color |
| Body Style | |
| VIN | |
| Lienholder Name | |
| Address | |
| Phone | Payoff  N/A |
| Payoff good through | |
| Approved | |

**Trade-in 2**

| | |
|---|---|
| Year | Lic. No. |
| Make | Odometer Reading |
| Model | Color |
| Body Style | |
| VIN | |
| Lienholder Name | |
| Address | |
| Phone | Payoff  N/A |
| Payoff good through | |
| Approved | |

## Itemization of Sale

| | | |
|---|---|---|
| 1. Vehicle Sales Price | $ | 21998.00 |
| 2. Sales Tax | $ | 1367.82 |
| 3. County Tax | $ | 50.00 |
| 4. Other Tax(es) | $ | N/A |
| 5. Subtotal (Add lines 1 through 4), Title, License, Taxes & Other Fees | $ | 23415.82 |
| 6. Pre-delivery Service Fee | $ | 799.00 |
| 7. Electronic Transfer Fee | $ | N/A |
| 8. License Plate/Registration | $ | C.O.D |
| 9. Certificate of Title | $ | C.O.D |
| 10. Temp Tag | $ | N/A |
| 11. Doc Stamp | $ | 70.35 |
| 12. | $ | N/A |
| 13. | $ | N/A |
| 14. | $ | N/A |
| 15. Total Other Fees (Add lines 6 through 14) | $ | 869.35 |
| **Additional Products** | | |
| 16. | $ | N/A |
| 17. | $ | N/A |
| 18. Knight Management Insurance Services | $ | 795.00 |
| 19. | $ | N/A |
| 20. | $ | N/A |
| 21. | $ | |
| 22. | $ | |
| 23. | $ | |
| 24. Total Products (Add lines 16 through 23) | $ | 795.00 |
| 25. Cash Sale Price (Add lines 5 + 15 + 24) | $ | 25080.17 |
| 26. Trade-in Allowance | $ | N/A |
| 27. Less Payoff | $ | N/A |
| 28. Net Trade Allowance (Line 26-27) | $ | N/A |
| 29. Cash Down Payment | $ | 5000.00 |
| 30. Deferred Down Payment | $ | N/A |
| 31. Total Down Payment (Line 28 + 29 + 30) | $ | 5000.00 |
| 32. Total Balance Due (Line 25-31) | $ | 20080.17 |

\* This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

Buyers Order-FL
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2016

Initials: _____

**Exhibit 1**

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,

FSIA000005

## Additional Terms

**Definitions.** *Contract* refers to this *Buyer's Order*. The pronouns *you* and *your* refer to each Buyer signing this Contract. The pronouns *we, us* and *our* refer to the Dealer/Seller. *Vehicle* means the motor vehicle described in the *Vehicle Information* section. *Trade-in Vehicle(s)* refers to the vehicle described in the *Trade-in Information* section that is being traded to the Dealer/Seller as part of this transaction. *Manufacturer* refers to the entity that manufactured the Vehicle.

**Agreement to Purchase.** You agree to buy the Vehicle from us for the price stated in this Contract. You agree to sign any documents necessary to complete this transaction. Unless you have cancelled this Contract under the condition described in the *Manufacturer* section, if you refuse to take delivery of the Vehicle, we can keep any deposits you have made to us, and you will be liable to us for all of our damages and expenses in connection herewith, including but not limited to reasonable attorneys' fees.

You represent that you are of legal age and have legal capacity to enter into this Contract.

**Manufacturer.** We are not an agent of the Manufacturer. Manufacturer can change the price, design or standard features of the Vehicle at any time without notice. If we cannot obtain the Vehicle from the Manufacturer at the price in effect as of the date of this Contract, or if we cannot obtain the agreed upon product from the Manufacturer, you or we can cancel this Contract.

If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the trade-in allowance after adjusting for any payoff to a lienholder.

**Insurance.** The insurance information you have given us is accurate.

**Trade-in Vehicle.** You will transfer title to the Trade-in Vehicle to us free of all liens except those noted on this Contract. You give permission to us to contact the lienholder(s) for payoff information. If the payoff information that we obtain from the lienholder(s) differs from the amount disclosed in this Contract, you agree to pay the difference to us if the actual amount of the balance owed is greater than the amount listed in this Contract. If the actual amount of the balance owed is less than the amount listed in this Contract, then we will pay you the difference.

If you do not deliver the Trade-in Vehicle to us at the time of the initial appraisal, we may reappraise the Trade-in Vehicle when it is delivered to us. If the reappraised value is lower than the original appraisal, you can cancel this transaction as long as you have not taken delivery of the Vehicle.

You represent that (a) you are the sole true and lawful owner of the Trade-in Vehicle, (b) the Trade-in Vehicle has never been titled under any state or federal "brand" such as "defective," "rebuilt," "salvage," "flood," etc, (c) the mileage of the Trade-in Vehicle shown in this Contract is the actual mileage of the Trade-in Vehicle, (d) all emission control equipment is on the Trade-in Vehicle and is in satisfactory working order, and (e) the Trade-in Vehicle has not been damaged by collision or other event and repaired. If any of these representations are not true, we may elect to cancel the transaction. We may also choose to reappraise the Trade-in Vehicle and adjust the Total Balance Due instead of cancelling the transaction. You agree to immediately pay us the difference.

**Retail Installment Contract.** In the event that you and we enter into a retail installment contract for the financing of the purchase of the Vehicle, the terms of the retail installment contract will control any inconsistencies between this Contract and the retail installment contract.

**Vehicle Inspection.** You are purchasing the Vehicle based upon your personal inspection, and are not relying upon any opinion, statement, promise or representation of the salesperson, or any other of our employees that is not contained in the written agreements you are signing today.

**Vehicle Condition.** You understand that the Vehicle may have sustained prior body damage and may have undergone prior mechanical repairs during or after its manufacture, during or after transit to us or while in the possession of prior owners or operators.

Buyers Order-FL
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2016

Initials: _____  _____

BUY-ORDER-FL 7/15/2016
Page 2 of 3

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,

FSIA000006

## Warranty Information

**Warranty.** We make no express or implied warranties. Except as required by law, we make no implied warranty of merchantability and no warranty that the Vehicle is fit for a particular purpose. We sell the Vehicle AS IS - NOT EXPRESSLY WARRANTED OR GUARANTEED, WITH ALL FAULTS.
If this is a new Vehicle, the Vehicle is subject to a standard written manufacturer's warranty. This warranty is made by the manufacturer and not by us.

**Used Car Buyer Notice.** If you are buying a used vehicle, the information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Guía para compradors de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## Notices

☐  You understand that the balance owed on the Trade-in exceeds the Trade-in Allowance and that as a result the Total Balance Due has been increased by this $ N/A of negative equity.

## Signatures

This agreement is not binding upon the Dealer\Seller until it is signed by an authorized representative of the Dealer\Seller.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it. This is the complete agreement; there are no other written or oral agreements.

☐  A separate Arbitration Agreement is a part of this Contract.

| eSigned By: *Gabriel Haddon* | 5/25/2020 |
| May 25, 2020 11:44:55 AM PDT | |
| Gabriel  Luc Haddon | Date |

| eSigned By: *Maria Haddon* | 5/25/2020 |
| May 25, 2020 11:46:57 AM PDT | |
| Maria Haddon | Date |

| | Date |

| eSigned By: *Alex Reyes* | 5/25/2020 |
| May 25, 2020 11:43:10 AM PDT | |
| Dealer\Seller  Powerhouse Automotive | Date |

Westlake Financial
4751 Wilshire Blvd. Suite 100
Los Angeles, CA 90010

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,

FSTA000007

FL-103-ARB 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Powerhouse Automotive<br>10333 Woodberry Rd<br>Tampa, FL 33619 | Gabriel Luc Haddon<br>Maria Haddon<br>3532 Braemar St<br>Land O Lakes, FL 34638 | No. App# 57987168 - V# 3<br>Date 5/25/2020 |

Buyers' Month of Birth  March        January

☐ Business, commercial or agricultural purpose Contract.

**Documentary Stamp Tax.** Florida documentary stamp tax required by law in the amount of $ _____ 70.35 ____ has been paid or will be paid directly to the Florida Department of Revenue. Certificate of Registration No. _____ .

## Truth-In-Lending Disclosure

| **Annual Percentage Rate**<br>The cost of your credit as a yearly rate. | **Finance Charge**<br>The dollar amount the credit will cost you. | **Amount Financed**<br>The amount of credit provided to you or on your behalf. | **Total of Payments**<br>The amount you will have paid when you have made all scheduled payments. | **Total Sale Price**<br>The total cost of your purchase on credit, including your down payment of<br>$ 5000.00 |
|---|---|---|---|---|
| 16.09 % | $ 7439.19 | $ 20080.17 | $ 27519.36 | $ 32519.36 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 48 | $ 573.32 | Monthly, Beginning 07/07/20 |
| | $ | |
| | $ | |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

**Prepayment.** If you pay off this Contract early, you may have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2012 | Ford | F150 SuperCrew Cab | Pickup | 1FTFW1ET2CFA12718 | 131636 |

☐ New
☒ Used
☐ Demo

Other:

## Description of Trade-In

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 20080.17 _____ plus finance charges accruing on the unpaid balance at the rate of _____ 16.09 % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZFL 11/9/2016

Page 1 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it as Custodian.

FSIA000026

☐ **Loan Processing Fee.** You agree to pay a loan processing fee of
$ N/A that will be ☐ paid in cash.
☐ financed over the term of the Contract.

☒ **Pre-delivery Service Fee.** You agree to pay a pre-delivery service fee of
$ 799.00 that will be ☐ paid in cash.
☐ financed over the term of the Contract. This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of
$ N/A if you pay this Contract in full before we have earned that much in finance charges.

## Itemization of Amount Financed

| | | |
|---|---|---|
| a. Price of Vehicle, etc. (incl. sales tax of $ 1417.82 ) | $ | 23415.82 |
| b. Pre-delivery service fee | $ | 799.00 |
| c. **Cash Price** (a+b) | | 24214.82 |
| d. Trade-in allowance | $ | N/A |
| e. Less: Amount owing, paid to (includes m) | | N/A |
| f. Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | $ | N/A |
| g. Cash payment | $ | 5000.00 |
| h. Manufacturer's rebate | $ | N/A |
| i. Deferred down payment | $ | N/A |
| j. Other down payment (describe) | $ | N/A |
| k. **Down Payment** (f+g+h+i+j) | $ | 5000.00 |
| l. **Unpaid balance of Cash Price** (c-k) | | 19214.82 |
| m. Financed trade-in balance (see line f) | $ | N/A |
| n. Paid to public officials, including filing fees | $ | N/A |
| o. Insurance premiums paid to insurance company(ies) (See *Insurance Disclosures* section for coverage and benefits types.) | $ | N/A |
| p. Service Contract, paid to: | $ | N/A |
| q. To: Documentary Stamp Tax | $ | 70.35 |
| r. To: | $ | N/A |
| s. To: Knight Management Insurance Services for GAP | $ | 795.00 |
| t. To: | $ | N/A |
| u. To: | $ | N/A |
| v. To: | $ | |
| w. To: | $ | |
| x. To: | $ | |
| y. To: | $ | |
| z. To: | $ | N/A |
| aa. **Total Other Charges/Amts Paid** (m thru z) | $ | 865.35 |
| bb. **Prepaid Finance Charge** | $ | N/A |
| cc. **Amount Financed** (l+aa-bb) | $ | 20080.17 |

We may retain or receive a portion of any amounts paid to others.

### Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**
☐ Single  ☐ Joint  ☒ None
Premium $ N/A   Term _____
Insured _____

**Credit Disability**
☐ Single  ☐ Joint  ☒ None
Premium $ N/A   Term _____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A
By: _____ DOB _____

N/A
By: _____ DOB _____

N/A
By: _____ DOB _____

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A . If you get insurance from or through us you will pay $ N/A for 0 months of coverage.
This premium is calculated as follows:
☐ $ N/A Deductible, Collision Cov. $ N/A
☐ $ N/A Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS CHECKED AND INDICATED.**

*[This area intentionally left blank.]*

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZFL 11/9/2016

Page 2 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,

FS1A000027

☐ **Single-Interest Insurance.** You must purchase single-interest insurance. The coverage may be obtained from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay
$ N/A                                    for
of coverage. This insurance is solely for the interest of the Seller, its successors and assigns, and no protection exists for your benefit. You authorize us to purchase Single-Interest Insurance.

eSigned By:
*Gabriel Haddon*
May 25, 2020 11:44:49 AM PDT        5/25/2020

By:  Gabriel  Luc Haddon                     Date

eSigned By:
*Maria Haddon*
May 25, 2020 11:46:45 AM PDT        5/25/2020

By:  Maria Haddon                            Date


By:                                          Date

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term
Price          $  N/A
Coverage

☒ **Gap Waiver or Gap Coverage**
Term           48 months
Price          $  795.00
Coverage

☐
Term
Price          $
Coverage

eSigned By:
*Gabriel Haddon*
May 25, 2020 11:44:49 AM PDT        5/25/2020

By:  Gabriel  Luc Haddon                     Date

eSigned By:
*Maria Haddon*
May 25, 2020 11:46:45 AM PDT        5/25/2020

By:  Maria Haddon                            Date


By:                                          Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**Deferment.** We may agree to defer the scheduled due date of all or any part of any installment payment, and will collect a $15.00 fee for such deferment. You must maintain the insurance on the Property required by this Contract during any deferment period. You may extend any optional insurance you bought with this Contract if the insurance company or your insurance contract allows the extension and if you pay the extension charge. In addition to the $15.00 deferment fee and the costs of extending required or optional insurance, you will also be required to pay additional finance charges as a result of exercising the deferment option.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance, and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. We may impose an acquisition charge of $75.00 for services performed in processing this Contract if it is paid in full within 6 months after the Contract's effective date. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a service charge that is the greater of 5% of the face amount of the instrument, (including orders of payment, debit card orders, or electronic funds transfers); or $25.00, if the face value of the instrument does not exceed $50.00; $30.00 if the face value exceeds $50.00 but does not exceed $300.00; $40.00 if the face value exceeds $300.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Florida and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, your agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

♦  You fail to perform any obligation that you have undertaken in this Contract.

♦  We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,

FSIA000028

If you default, you agree to pay our court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.

◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

◆ We may release any security and you will still be obligated to pay this Contract.

◆ If we give up any of our rights, it will not affect your duty to pay this Contract.

◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

◆ You are not to remove the Property from the U.S. without our prior written consent.

◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

◆ You will pay all taxes and assessments on the Property as they become due.

◆ You will notify us with reasonable promptness of any loss or damage to the Property.

◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance from any insurance provider that is reasonably acceptable to us. Your choice of an insurance provider will not affect the credit decision. We may impose reasonable requirements concerning the extent of coverage and the financial soundness of the insurance provider. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**PLEASE READ CAREFULLY! By agreeing to this Arbitration Provision you are giving up your right to go to court for claims and disputes arising from this Contract:**

◆ **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.**

◆ **YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.**

◆ **IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.**

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or JAMS, 1920 Main Street, Suite 300 Irvine, CA 92614 (www.jamsadr.com). You may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However, to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,

FSIA000029

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator must be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this Arbitration Provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

You or we can do the following without giving up the right to require arbitration: seek remedies in small claims court for Claims within the small claims court's jurisdiction, or seek judicial provisional remedies. If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

PROCESS TO REJECT THIS ARBITRATION PROVISION. You may reconsider and reject your approval of this Arbitration Provision by sending a written notice to the Assignee (identified in the Assignment section) or if there is no Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. It simply needs to state your decision to reject the Arbitration Provision in this Contract and include your signature. It must also provide your name, Seller's name and the date of this Contract. Rejecting this Arbitration Provision will NOT affect the terms under which we will finance and sell the Property to you or any other terms of this Contract, except that the Arbitration Provision will not apply.

**CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject, this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.**

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A                                                              5/25/2020

By: _____                          Date

Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,

FS1A000030

## Arbitration Provision and Process to Remove

This Contract contains an Arbitration Provision that affects your rights. By signing this Contract, you agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

## Acknowledgment for Electronic Signatures

☒ Electronic Signature Acknowledgment. You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

eSigned By:
*Gabriel Haddon*
May 25, 2020 11:44:49 AM PDT
By: Gabriel  Luc Haddon                          5/25/2020
                                                        Date

eSigned By:
*Maria Haddon*
May 25, 2020 11:46:45 AM PDT
By: Maria Haddon                                  5/25/2020
                                                        Date

By: _____
                                                        Date

Notice to Buyer. a. Do not sign this Contract before you read it or if it contains any blank spaces. b. You are entitled to an exact copy of the Contract you sign. Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

Buyer

eSigned By:
*Gabriel Haddon*
May 25, 2020 11:44:49 AM PDT
By:  Gabriel  Luc Haddon                          5/25/2020
                                                        Date

eSigned By:
*Maria Haddon*
May 25, 2020 11:46:45 AM PDT
By:  Maria Haddon                                 5/25/2020
                                                        Date

By: _____
                                                        Date

Seller  Powerhouse Automotive

eSigned By:
*Alex Reyes*
May 25, 2020 11:43:06 AM PDT
By: _____        5/25/2020
                                                        Date

Assignment. This Contract and Security Agreement is assigned to
Westlake Financial
4751 Wilshire Blvd. Suite 100 Los Angeles CA 90010
the Assignee, phone (800) 641-6700 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐ This Assignment is made with recourse.
Seller  Powerhouse Automotive

eSigned By:
*Alex Reyes*
May 25, 2020 11:43:06 AM PDT
By: _____        5/25/2020
                                                        Date

[This area intentionally left blank.]

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems TM VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZFL 11/9/2016
Page 6 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian.

FSIA000031



---
✂ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
*Cut on dotted line.*

## Instructions

1. Each Click-N-Ship® label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

## Click-N-Ship® Label Record

**USPS TRACKING # :**
**9405 5036 9930 0438 6837 75**

| | | |
|---|---|---|
| Trans. #: | 579030152 | Priority Mail® Postage: $9.90 |
| Print Date: | 12/21/2022 | Total: $9.90 |
| Ship Date: | 12/21/2022 | |
| Expected | | |
| Delivery Date: | 12/23/2022 | |

From:  JOSHUA E FEYGIN
       JOSHUA FEYGIN, PLLC
       STE 208
       1930 HARRISON ST
       HOLLYWOOD FL 33020-7828

To:    POWERHOUSE AUTOMOTIVE
       10333 WOODBERRY RD
       TAMPA FL 33619-8011

* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

Exhibit 2     Plaintiff's_Resp_FS_RFP003



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

**POWERHOUSE AUTOMOTIVE**
10333 Woodberry Road
Tampa, FL 33619
<u>**VIA USPS PRIORITY MAIL**</u>: 9405503699300438683775

**WESTLAKE FINANCIAL SERVICES, INC.**
4751 Wilshire Boulevard, Suite 100
Los Angeles, CA 90010
<u>**VIA USPS PRIORITY MAIL**</u>: 9405503699300438647722

December 21, 2022

*Re:*       Consumer:   **GABRIEL HADDON**
            Vehicle:    2012 Ford F150 SuperCrew Cab
            VIN:        ███████2718

<u>**FLA. STAT. 501.98 DEMAND**</u>

To Whom It May Concern:

Please be advised that this office represents GABRIEL HADDON (hereinafter the "Plaintiff") regarding claims against POWERHOUSE AUTOMOTIVE located at the above listed address (hereinafter the "Dealer" or the "Dealership"), arising under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) with respect to the purchase and financing of the above-listed vehicle ("Vehicle"). Please direct all future contacts and correspondence to this Firm **in writing**.

**HAVING BEEN FORMALLY NOTIFIED OF OUR REPRESENTATION, YOU ARE INSTRUCTED NOT TO CONTACT MY PLAINTIFF UNDER ANY CIRCUMSTANCES. DIRECT ALL INQUIRIES TO THIS OFFICE. IF YOU FAIL TO ACT IN CONFORMITY WITH THIS DIRECTIVE, INJUNCTIVE RELIEF WILL BE SOUGHT AGAINST YOU. ACCORDINGLY, YOU ARE HEREBY NOTIFIED OF OUR ATTORNEYS' LIEN.**

Pursuant to Florida Statute 501.98, my Plaintiff hereby notifies the Dealership of its violation of the Florida's Deceptive and Unfair Trade Practices Act in connection with the sale and financing of the subject vehicle.

The following deceptive acts and practices were committed by Dealership:

<u>**Facts**</u>

On or about May 25, 2020, Plaintiff purchased the Vehicle from Dealer. *See* RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT ("RISC") attached hereto

Plaintiff's_Resp_FS_RFP004



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

as Exhibit "A". Plaintiff paid all necessary down-payment amounts required under the RISC and otherwise complied with all relevant terms. At the time of the sale of the Vehicle to the Plaintiff, Dealer affirmatively represented the mileage to be 131,636. Plaintiff materially relied upon the Dealer's representation in this regard and agreed to purchase the Vehicle as a result.

More recently the Plaintiff determined that the Vehicle's odometer had been rolled back prior to the Dealer's acquisition of the same. Specifically, on the face of the transfer title signed by the Dealer for the transfer of ownership of the Vehicle, the disclosed mileage as of March 06, 2019 was 201,150. *See* Exhibit "B". As such, Dealer had express knowledge of the Vehicle's mileage discrepancy and nevertheless affirmatively misrepresented the mileage to be 131,636.

At no point in time did Dealer present the Plaintiff with a copy of the title to inspect that the title odometer reading history on the title. Instead, Dealer had the Plaintiff execute a power of attorney form and application for certificate of title in order to allow the Dealer to affix the Plaintiff's signature to the title. *See* Exhibit "C". This was undertaken in order to prevent the Plaintiff from ascertaining the true status of the Vehicle's mileage being in excess of the disclosed mileage of 131,636 reading and with the express intent to defraud the Plaintiff. In light of the above, it is readily apparent that the Dealer knowingly and intentionally sold the Vehicle without disclosing in writing to the Plaintiff the Vehicle's true mileage causing the Plaintiff to incur significant actual damage.

### Per-Se Violations of FDUTPA

Dealer has violated the following:

a.   Fla. Stat. § 320.27(9)(b)(3) when it misrepresented or made false, deceptive, or misleading statements with regard to the sale and financing of the Vehicle.
b.   Fla. Stat. § 320.27(9)(b)(13) when it perpetrated the fraud upon my Plaintiff as described above.

### Good Faith Settlement Demand

Notwithstanding the foregoing, Plaintiff is willing to amicably resolve this matter and demands payment as set forth below:

a.   $8,799.2 representing Plaintiff's good faith estimate of actual damages;
b.   $500.00 representing the FDUTPA statutory surcharge; and,
c.   Reasonable attorney's fees in an amount to be determined.

Plaintiff's_Resp_FS_RFP005



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

In exchange, Plaintiff will release Dealership and its employees, sureties, agents, principles, and insurers from liability for damages under Ch. 501, Florida Statutes in connection with the above-described transaction. This offer of resolution is reasonable given your liability in this situation.

We will look forward to hearing from you regarding my Plaintiff's dispute. **Please respond within 30 days from receipt of this letter or else we will be force to proceed accordingly.**

Sincerely,

**Joshua Feygin, Esq.**
1930 Harrison Street
Suite 208F
Hollywood, FL 33020
T. 954-228-5674
F. 954-697-0357
E. Josh@sueyourdealer.com
www.sueyourdealer.com

Cc:

**GABRIEL LUC HADDON**

(Claimant)

Encl:

As indicated

Page 3 of 3

1930 Harrison Street, Suite 208, Hollywood, Florida 33020

Plaintiff's_Resp_FS_RFP006



**POWERHOUSE AUTOMOTIVE**
(954) 706-9630

20876

63-8413/2670

DATE 3/16/23

PAY TO THE ORDER OF Joshua Feygin, PLLC Trust account          $ *8,799.30"

eight thousand seven hundred And ninety nine 30/100 ———— DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR The law office of Stephanie M ~ Powerhouse Automotive

⑆020876⑈ ⑆267084131⑈ 131277280⑈

Exhibit 3



**FedEx**

Address:          5101 WEST WATERS
                  AVENUE
                  TAMPA
                  FL 33634
Location:         TPFA
Device ID:        BTC04
Transaction:      940361690896

FedEx Priority Overnight
Tracking Number:
395851954820    0.10 lb (S)        10.81
    Declared Value    100
Recipient Address:
    Joshua Feygin
    PLLC
    1930 Harrison St STE 208F
    Hollywood, FL 33020
    8137338281
    ajohnson@johnson-lawoffice.com

Scheduled Delivery Date 3/17/2023

Pricing option:
    STANDARD RATE

Package Information:
    FedEx Envelope

        Shipment subtotal:        $10.81

            Total Due:            $10.81


    M = Weight entered manually
    S = Weight read from scale
    T = Taxable item

Terms and Conditions apply. See
fedex.com/serviceguide for details.


        We value your feedback!
        Tell us how we're doing!
        fedex.com/fscfeedback

            *** Thank you ***


        Visit us at: fedex.com
        Or call 1.800.GoFedEx
            1.800.463.3339

        Mar 16, 2023 3:20:12 PM

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Case No.

GABRIEL LUC HADDON,
an individual,                                        CASE NO. 8:23-cv-00709

    Plaintiff,

vs.

FS INVESTMENTS OF
AMERICA INC., d/b/a
POWERHOUSE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

    Defendants

_____/

### COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, GABRIEL LUC HADDON, an individual, sues Defendant, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and alleges:

### *Jurisdiction and Venue*

1.     Venue is proper in Hillsborough County as FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE is a legal entity incorporated under the laws of Florida whose principal business location was or is in Hillsborough County, Florida, and as the vehicle sale upon which these claims are based occurred in Hillsborough County, Florida.

Exhibit 4

## GENERAL ALLEGATIONS

### *SYNOPSIS OF PROCEEDING*

2.      The instant action involves claims under the Federal Odometer Act, 49 U.S.C. §32701 ("**Odometer Act**"), which prohibits the disconnection, resetting or alteration of odometers with the intent to change the number of miles indicated thereon. The law requires that a written disclosure of the mileage registered on the odometer be provided by the seller to the purchaser on the title to the vehicle when the ownership of the vehicle is transferred. If the odometer mileage is incorrect, the law requires a statement to that effect to be furnished on the title to the buyer.

3.      Odometer tampering is a significant criminal and consumer fraud issue in the United States. According to the National Highway Traffic Safety Administration ("**NHTSA**"), over 450,000 vehicles sold each year have false odometer readings, causing over One Billion Dollars ($1,000,000,000.00) of loss to American car buyers.

### *ALLEGATIONS AS TO PARTIES*

4.      At all times material hereto, Plaintiff, GABRIEL LUC HADDON ("**Mr. Haddon**"), was *sui juris* and a resident of Hillsborough County, Florida.

5.      Mr. Haddon is a "transferee" as said term is defined under 49 C.F.R. §580.3.

6.      At all times material hereto, Defendant, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, ("**POWERHOUSE**" or "**Dealership**") was a Florida corporation, doing business at 10333 Woodberry Road, Tampa, FL 33619.

7.      At all times material hereto, POWERHOUSE was a "dealer" as said term is defined under 49 U.S.C. §32702(2).

8.      At all times material hereto, the Dealership was in the business of selling and financing used motor vehicles to the public-at-large in Hillsborough County, Florida.

9.      WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES (hereinafter "**Holder**" or "**Lender**") is a Foreign entity authorized to do business in Florida as a lender and a "sales finance company" as defined in Fla. Stat. § 520.02(19) and is a "holder" of a "retail installment contract" as defined in Fla. Stat. § 520.02(8).

## *FACTUAL ALLEGATIONS*
### *1.      Purchase of Vehicle*

10.     On or about May 25th, 2020, Mr. Haddon visited the place of business of the Dealership for the purpose of selecting a used motor vehicle to be used for personal, family and household purposes.

11.     After brief negotiations, Mr. Haddon selected a used 2012 Ford F150, VIN: 1FTFW1ET2CFA12718 ("**Subject Vehicle**").

12.     At the time Mr. Haddon selected the Subject Vehicle, Defendant both in writing through its contractual documents and orally through its agents and employees, affirmatively represented to Mr. Haddon that the odometer reading for the Subject Vehicle was at or about 131,636 miles ("**Mileage Representation**").

13.     In the belief that he was purchasing reliable transportation at a reasonable value, Mr. Haddon executed and delivered to Defendant a document

entitled Buyer's Order ("**Order**").

14.    A true and correct copy of the Order is attached hereto as Exhibit "A."

15.    Pursuant to the RISC, Mr. Haddon agreed to pay the sum of Twenty-three Thousand Four Hundred and Fifteen Dollars with 82/100ths ($23,415.82), as and for the purchase price for the Subject Vehicle.

16.    To facilitate the purchase of the Subject Vehicle, the Dealership prepared and had Mr. Haddon execute a "Retail Installment Sales Contract" ("**RISC**").

17.    A true and correct copy of the RISC is attached hereto and incorporated herein by reference as Exhibit "B".

18.    Prior to consummation of the transaction, Dealership represented both orally and in writing that the Vehicle's mileage was 131,636 miles.

19.    Specifically, pursuant to the Order, the disclosed mileage was 131,636. *See* Exhibit A.

Year  2012         Lic. No.
Make  Ford         Odometer Reading  131636
Model  F150 SuperCrew Ca Color

20.    Moreover, the Dealership also disclosed that the mileage was 131,636 on the RISC. *See* Exhibit B.



| Description of Property | | | | | |
|---|---|---|---|---|---|
| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
| 2012 | Ford | F150 SuperCrew Cab | Pickup | 1FTFW1ET2CFA12718 | 131636 |
| | | | | Other: | |

21.    Following consummation of the transaction for the Subject Vehicle,

Dealership assigned the RISC to Lender, upon unknown terms and for unknown consideration.

## 2. *Discovery of Mileage Rollback*

22.    Upon conclusion of the transaction to purchase the Subject Vehicle, Mr. Haddon left the Dealership with the Subject Vehicle in the belief that he acquired reliable transportation for his personal and household purposes.

23.    However, after purchasing the Subject Vehicle, Mr. Haddon became concerned with the subject vehicle's mileage as it became apparent that the vehicle did not reflect the mechanical condition of a vehicle with approximately 131,636 miles.

24.    Unbeknownst to Plaintiff, he purchased the Vehicle with an undisclosed odometer rollback.

25.    Pursuant to the Vehicle's CarFax report, Ford Motor Company, manufactured the Vehicle and shipped to the initial dealer on or about November 17th, 2011.

26.    The Vehicle was serviced on January 4th, 2012 at Sam Pack's Five Star Ford of Carrolton with 10 miles on the odometer and later sold and titled on January 4th, 2013 with 850 miles on the odometer.

27.    The Vehicle's CARFAX further demonstrates that the Vehicle was serviced on the following dates with the following increasing mileage readings:

   a. 3/14/2014 at Pecan Lube Center with 57,236 miles

   b. 11/22/2016 at Truck City Ford with 154,210 miles

   c. 1/29/2018 at Ken Stoepel Ford Lincoln with 154,495 miles

28.     Thereafter, the CarFax report demonstrates that the mileage suddenly dropped and began to climb once more on the following dates:

  a. 2/11/2019 at Red McCombs Ford West with 113,234 miles

  b. 9/23/2019 at Red McCombs Ford with 124,528 miles

  c. 10/17/2019 at Red McCombs Ford with 124,583 miles

29.     The Vehicle was then reported at an auto auction on April 6th, 2020 with *131,636* miles.

30.     Thereafter, POWERHOUSE acquired the Vehicle on 05/15/2020.

31.     A true and correct copy of the CarFax report for the Subject Vehicle is attached as Exhibit "C".

32.     On the face of the Texas Certificate of Title upon which POWERHOUSE took transfer of the Vehicle's title ("**Certificate of Title**"), the last disclosed "actual" mileage was disclosed as 201150 as of March 6th, 2019. *See* Exhibit "D."



33.     The Vehicle was then sold to Mr. Haddon on 5/25/2020 with an inaccurate odometer reading.

34.     Pursuant to the Title Application, the Dealership was required to provide an odometer declaration in the following form ("**Odometer Declaration**"):

| ODOMETER DECLARATION |
|---|
| WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines or imprisonment. |
| I/WE STATE THAT THIS ☐ 5 OR ☐ 6 DIGIT ODOMETER NOW READS ☐☐☐ XX (NO TENTHS) MILES, DATE READ ☐☐ ☐☐ AND I/WE HEREBY CERTIFY THAT TO THE BEST OF MY/OUR KNOWLEDGE THE ODOMETER READING |
| ☐ 1. REFLECTS ACTUAL MILEAGE     ☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS.     ☐ 3. IS NOT THE ACTUAL MILEAGE |

35.     When completing the Odometer Declaration for the Title Application, the Dealership inserted into the Odometer Declaration that the mileage reading was "131,636". *See* Exhibit "E".

| ODOMETER DECLARATION |
|---|
| WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines or imprisonment. |
| I/WE STATE THAT THIS ☐ 5 OR ☒ 6 DIGIT ODOMETER NOW READS [1][3][1],[6][3][6] XX (NO TENTHS) MILES, DATE READ 05 / 25 / 2020 AND I/WE HEREBY CERTIFY THAT TO THE BEST OF MY/OUR KNOWLEDGE THE ODOMETER READING: |
| ☒ 1. REFLECTS ACTUAL MILEAGE     ☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS.     ☐ 3. IS NOT THE ACTUAL MILEAGE |

36.     Despite having both actual and constructive notice that the Vehicle's mileage was in excess of 131,636, Defendant certified under penalty of perjury that disclosed mileage "reflects actual mileage."

37.     In order to feign compliance with the Act and its requirements, the Dealership affixed Mr. Haddon's signature to the Certificate of Title where it entered the Vehicle's mileage as 131636. However, the Dealership intentionally failed to select the checkbox that the odometer reading was inaccurate in order to provide itself with plausible deniability if its scheme was uncovered. *See* Exhibit D.



38.     Upon good information and belief, the sale of vehicles with tampered odometers is a regular business practice of the Defendant.

39.     All conditions precedent to instituting this action have occurred or have otherwise been waived.

40.     Mr. Haddon has retained the undersigned attorneys and has obligated himself to pay a reasonable fee for legal services.

41.     Mr. Haddon has been damaged by virtue of the above-described conduct. Had Mr. Haddon known the true mileage of the Vehicle, he would have paid significantly less for it or not purchased the Vehicle at all.

### *Finance Company Liability*

42.     Pursuant to 16 C.F.R. §433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "**FTC Holder Rule**," Lender is subject to all claims and defenses of the Plaintiff, as consumer, which are available against the credit-seller, to-wit, the Dealership.

43.     In compliance with the FTC Holder Rule, the RISC bears the following conspicuous language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

44.     Florida Statue § 516.31(2), known more commonly as the "Florida

Holder Rule," provides in pertinent part the following:

> (2) Restriction on Certain Negotiable Instruments and
> Installment Contracts - A holder or assignee of any
> negotiable instrument or installment contract, other than a
> currently dated check, which originated from the purchase
> concerning consumer goods or services is subject to all
> claims or defenses of the consumer debtor against the
> seller of those consumer goods or services. A person's
> liability under this section may not exceed the amount
> owing to the person when that claim or defense is asserted
> against the person.

45.     Accordingly, pursuant to Florida Holder Rule, Lender, as a holder or

assignee of any negotiable instrument subject to the requirements of Florida Statutes

Chapter 516, is subject to all claims and defenses of the consumer debtor against the

seller of those consumer goods or services, to-wit, the Dealership.

46.     Specifically, Plaintiff seeks restitution of all installment payments

made in furtherance of the RISC, rescission of the transaction in full and damages

up to and including the present balance of indebtedness under the RISC.

47.     Plaintiff avers that his claim is so large that it exceeds the remainder of

any debt owed to Lender under the RISC.

## COUNT I
## VIOLATION OF THE FEDERAL ODOMETER ACT

48.     This is an action for violation of the Federal Odometer Act, also known

as the "Federal Motor Vehicle Information and Cost Savings Act," 49 U.S.C.

§32710, *et seq.*, and the regulations promulgated thereunder.

49.     Mr. Haddon realleges and reaffirms the allegations contained in Paragraphs 1 through 47 above as if set forth herein in full.

50.     At all times material hereto, POWERHOUSE was a "dealer" as said term is defined under 49 U.S.C. §32702(2).

51.     Pursuant to 49 U.S.C. §32705, a motor vehicle, the ownership of which is transferred, may not be licensed for use in the state unless the transferee, in submitting an application to the state upon which the license will be issued, includes with the application the transferor's title and, if that title contains a blank space, must disclose the mileage at the time of a future transfer, a statement, signed and dated by the transferor under the Odometer Act.

52.     POWERHOUSE has violated the Act in that POWERHOUSE made a false statement to a transferee in violation of 49 U.S.C. § 32705(a) and 49 C.F.R. § 580.4 with intent to defraud.

53.     POWERHOUSE has violated the Act in that POWERHOUSE failed to provide Mr. Haddon with the actual title certificate to transfer title for examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

54.     POWERHOUSE violated the Act with the intent to defraud.

55.     As a direct and proximate result of the above-described actions, Mr. Haddon has been harmed.

56.     As a result of the violation of the Act, POWERHOUSE is liable to Mr.

Haddon in an amount equal to three times actual damages or $10,000.00, whichever is greater, plus attorney's fees and costs pursuant to 49 U.S.C. §32710.

57.    Mr. Haddon has retained the undersigned attorney and is obligated to pay said attorney a reasonable fee for his services.

58.    Mr. Haddon reserves the right to amend the complaint upon discovery and subsequent proffer revealing the identity of individuals who conspired with the Dealership to violate the Odometer Act.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, for statutory and actual damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

**COUNT II**
**ACTION FOR FRAUD**

59.    Mr. Haddon realleges and reaffirms the allegations contained in Paragraph 1 through 47 above as if set forth hereat in full.

60.    As more fully described above, POWERHOUSE misrepresented material facts concerning the sale of the Subject Vehicle to Mr. Haddon at the time of the sale of the Vehicle, to wit: the Mileage Representation.

61.    POWERHOUSE knew that the representations set forth above were

false or made such representations recklessly, and Defendant had no reasonable grounds for believing those representations to be true.

62.     POWERHOUSE knew that the above representations and omissions concerning the purchase of the Subject Vehicle were material and important.

63.     POWERHOUSE intended to deceive Mr. Haddon, who relied upon the misrepresentations and omission to his detriment.

64.     Mr. Haddon was damaged as a result of the misrepresentations and non-disclosures by POWERHOUSE.

65.     As a direct and proximate result of the misrepresentations and non-disclosures by POWERHOUSE, the actual and economic damages of Mr. Haddon include but are not limited the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment for damages against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, together with interest and costs.

## COUNT III
## ACTION FOR FRAUDULENT INDUCEMENT

66.     Mr. Haddon realleges and reaffirms the allegations contained in

Paragraph 1 through 47 above as if set forth hereat in full.

67.    As more particularly described above, POWERHOUSE induced Mr. Haddon into signing the RISC and consummating the transaction for the sale of the Subject Vehicle by knowingly making misrepresentations of material fact and omitting material facts with the intent that Mr. Haddon rely on them to his detriment.

68.    POWERHOUSE's misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Mr. Haddon rely on them, or be deceived by them to his detriment.

69.    Mr. Haddon justifiably relied upon the misrepresentations to his detriment and further, had Mr. Haddon been advised of the truth, Mr. Haddon would not have entered into the RISC or otherwise consummated the transaction for the Subject Vehicle.

70.    As a result of the fraud and deceit by POWERHOUSE, the actual and economic damages of Mr. Haddon include but are not limited to the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment for damages against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, with interest and

costs.

## COUNT IV
## ACTION FOR BREACH OF EXPRESS WARRANTY

71.    Mr. Haddon realleges and reaffirms the allegations contained in Paragraph 1 through 47 above as if set forth hereat in full.

72.    From the various statements by POWERHOUSE, including the Mileage Representation, POWERHOUSE made an express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("**UCC**") by both affirmation of fact or promise and by description of goods ("**Express Mileage Warranty**").

73.    As evidenced by the title records and other evidence, POWERHOUSE has breached the Express Mileage Warranty.

74.    As a direct and proximate result of the breach of the Express Mileage Warranty, Mr. Haddon has been damaged. The damages of Mr. Haddon include but are not necessarily limited to the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer.

75.    Mr. Haddon has performed all conditions precedent to the filing of the instant action.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, demands judgment for damages against Defendants, FS INVESTMENTS OF AMERICA INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES,

a Foreign corporation, and each of them, jointly and severally, together with interest

and costs.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff, GABRIEL

LUC HADDON, demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ Joshua E. Feygin
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email: Josh@JFeyginesq.com
JOSHUA FEYGIN, PLLC
1930 Harrison St, Suite 208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiff*

**From:**        Keith Silverstein <keith@silversteinpa.com>
**Sent:**        Monday, May 1, 2023 3:19 PM
**To:**          Jose A. Peralta
**Cc:**          Keith D. Silverstein
**Subject:**     FW: Re: Haddon v Powerhouse - CONFIDENTIAL SETTLEMENT COMMUNICATION

---

<span style="color:red">**CAUTION:**</span>  **EXTERNAL EMAIL**

---

**From:** Frank Strusberg <frank@powerhouseautomotive.us>
**Sent:** Monday, May 1, 2023 11:47 AM
**To:** Keith Silverstein <keith@silversteinpa.com>
**Subject:** Fwd: Re: Haddon v Powerhouse - CONFIDENTIAL SETTLEMENT COMMUNICATION

============ Forwarded message ============
From : josh@jfeyginesq.com<josh@jfeyginesq.com>
To : "Frank Strusberg"<frank@powerhouseautomotive.us>
Date : Mon, 01 May 2023 11:29:00 -0400
Subject : Re: Haddon v Powerhouse - CONFIDENTIAL SETTLEMENT COMMUNICATION
============ Forwarded message ============

You certified under penalty of perjury that the mileage was accurate. It is irrelevant what Mannheim disclosed or did not disclose in light of the fact that the mileage on the face of the title you took possession of the vehicle on clearly discloses the last mileage reading was 201150 as late as 03/06/2019. The odometer act does not afford a "good faith" defense, particularly when the dealership ignored glaring evidence of a mileage rollback.

The dealership would be wise to review the demands that were delivered with due care as the extent of the dealership's liability is clearly and succinctly setforth therein. Also, Manheim will be of no help since the 5 day arbitration period has long since lapsed.

While this appears to be the dealership's first encounter with litigation, it is far from my first time litigating such a claim. I routinely prosecute these claims on behalf of consumers and I defend dealerships as well. The dealership is urged to be governed accordingly as things will only go from bad to worse, rapidly.

Regards,

<span style="color:red">**NOTE: As a result of the Covid-19 pandemic, we are currently working remotely which presents certain challenges to our efficiency.  We will reply to you as soon as possible.  As always, e-mail continues to be the quickest way of reaching our Firm.  We appreciate your patience and understanding in these troublesome times.**</span>

1

<span style="color:red">Exhibit 5</span>

**Joshua Feygin, Esq.**
Attorney At Law*

**Joshua Feygin, PLLC**
P: 954.228.5674
F: 954.697.0357
A: 1930 Harrison Street
   Suite 208F
   Hollywood, FL 33020
   (**NOTE**: By appointment only)
W: www.jfeyginesq.com
E: josh@jfeyginesq.com
*Admitted to practice in Florida, Vermont and Washington D.C.*

**NO CLIENT RELATIONSHIP**: *Communication with an attorney or staff member at Joshua Feygin, PLLC does not by itself create an attorney-client relationship or constitute the provision or receipt of legal advice. Any communication from this law firm should be considered informational only, and should not be relied or acted upon until a formal attorney-client relationship is established by formal written agreement.*

On Mon, May 1, 2023 at 11:17 AM Frank Strusberg <frank@powerhouseautomotive.us> wrote:

Hello! This is the proof I have to show you we bought this truck from manheim with the miles showing on the bill of sale 131,628, we found out there was a discrepancy and you requested for the incident 8k dollars and now there is a sue! I just want to save you time by sending you the bill of sale from manheim! I'm calling manheim now to get answers because this miles discrepancy was never announced by them nowhere! I bought it in good faith and sold it in good faith as I've been doing for the last 14 years!

---- On Mon, 01 May 2023 10:34:12 -0400 josh@jfeyginesq.com<josh@jfeyginesq.com> wrote ----

Dear Mr. Cruzberg:

I received your message from my receptionist regarding the above referenced lawsuit. As you are aware, a lawsuit has been filed against your company for various transgressions of law arising from the sale of the subject vehicle to my client. If you have any attorney, please advise. As I have not been contacted by anyone on your behalf or otherwise advised the dealership is represented by counsel, I will assume the dealership is not represented until I learn otherwise.

2

That being said, as you are also likely aware, my office issued the attached demand package to the dealership outlining the dealership's liability to my Client for actual damages, statutory damages and attorney's fees, as more particularly set forth therein.

In conjunction with the issuance of the demand package to allow the dealership an opportunity to resolve all of the claims of Mr. Haddon, we also made a claim against the dealership's surety bond. In turn, the attorney for the surety bond likely contacted the dealership and made a demand for indemnification and pressured the dealership to resolve Mr. Haddon's claim for actual damages.

Thereafter, without as much as a single attempt to contact my office to discuss the matter, the dealership tendered a check for an unknown reason. This check has not been cashed but even so it would be irrelevant as it relates to Mr. Haddon's claims for statutory damages and attorney's fees which were not resolved by the unconditional tender made by the dealership. My Client, as an aggrieved party, is entitled to both actual damages *and* statutory damages along with the recovery of his fees/costs.

What the bond company likely failed to explain is that by tendering the $9,000 for Mr. Haddon's claim for *actual* damages, the dealership arguably resolved the bond's liability in the matter since the bond company is only liable for actual damages and not statutory damages. However, the unconditional tender <u>does not</u> resolve Mr. Haddon's statutory damages and entitlement to attorney's fees which was all but ignored by the dealership.  Had the dealership contacted my office in this regard before unilaterally sending a check, I would have explained as much. Given the dealership's refusal to amicably confer in relation to settlement, we were left with no choice but to file suit.

With that being said, we intend on vigorously pursuing this matter given the significant transgression committed by the dealership. We are in the initial stages of the litigation and our fees/costs will only increase from here. If the dealership would like to discuss settlement of <u>all</u> of my Client's claims for damages and attorney's fees, we welcome such an opportunity in order to avoid protracted litigation. If the dealership is of the same mindset, I will obtain authorization from my Client to issue a global settlement demand to resolve all pending claims.

**Dealer Demand Scan HADDON.pdf**Error! Filename not specified.

Sincerely,

**NOTE: As a result of the Covid-19 pandemic, we are currently working remotely which presents certain challenges to our efficiency.  We will reply to you as soon as possible.  As always, e-mail continues to be the quickest way of reaching our Firm.  We appreciate your patience and understanding in these troublesome times.**



**Joshua Feygin, Esq.**
Attorney At Law*

**Joshua Feygin, PLLC**
P: 954.228.5674
F: 954.697.0357
A: 1930 Harrison Street
Suite 208F

3

Hollywood, FL 33020
(**NOTE**: By appointment only)
W: www.jfeyginesq.com
E:   josh@jfeyginesq.com
*Admitted to practice in Florida, Vermont and Washington D.C.*

**NO CLIENT RELATIONSHIP**: *Communication with an attorney or staff member at Joshua Feygin, PLLC does not by itself create an attorney-client relationship or constitute the provision or receipt of legal advice. Any communication from this law firm should be considered informational only, and should not be relied or acted upon until a formal attorney-client relationship is established by formal written agreement.*