## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No.: 8:23-cv-00709-WFJ-SPF

GABRIEL LUC HADDON,
an individual,

      Plaintiff,

vs.

FS INVESTMENTS OF
AMERICA INC., d/b/a
POWERHOUSE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

      Defendants.

_____/

## **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, GABRIEL LUC HADDON, an individual ("**Mr. Haddon**"), by and through his undersigned attorney, pursuant to Rule 3.01(b), Local Rules of the United States District Court, Middle District of Florida, and Fed. R. Civ. Pro. 56., files this his Motion for Partial Summary Judgment on Count I of the Complaint as to Defendant FS INVESTMENTS OF AMERICA, INC d/b/a POWERHOUSE AUTOMOTIVE, a Florida corporation ("**Defendant**") and Defendant's affirmative defense nos. 1, 2, 4, 7, 9-15, 18.

## I.     INTRODUCTION

Mr. Haddon has sued Defendant for, *inter alia*, the violation of the Odometer Act Federal Odometer Act, 49 U.S.C. §32710, *et sequi* arising from its sale of a 2012 Ford F150, with a VIN ending in 2718 ("**Ford**"). [DE 1]. At the time of the purchase of the Ford by Mr. Haddon, Defendant represented that the odometer reading for the Ford was 131,636 miles ("**Mileage Representation**"). (SOF ¶¶ 16, 20, 23).

Defendant likewise provided Mr. Haddon with an "Title Application With/Without Registration" ("**Title Application**"). (SOF ¶ 25). Through the Title Application, Defendant averred under penalty of perjury that the odometer reading of 131,636 reflected the actual mileage. (SOF ¶¶ 26).

In reliance upon the Mileage Representation, Mr. Haddon agreed to purchase the Ford for $21,998. (SOF ¶ 17). Mr. Haddon's decision to purchase the Ford was influenced by his understanding that vehicles with lower mileage require less maintenance. (SOF ¶ 18).

After consummating the transaction to purchase the Ford, Mr. Haddon left with

the Ford in the belief that he had acquired reliable transportation for his personal and household purposes. (SOF ¶ 27). However, not long after the sale of the Ford, Mr. Haddon began to experience unexpected and costly mechanical anomalies in the Ford that were not germane to a vehicle with just 131,636 miles. (SOF ¶¶ 58-62).Ultimately, Mr. Haddon attempted to sell the Ford sometime in May of 2022 and came to find out from a potential buyer that the Ford's mileage was tampered with. (SOF ¶¶ 63-64). After investigating the matter further, Mr. Haddon, through counsel, obtained the title history to the Ford from the Florida Department of Highway Safety and Motor Vehicles and was shocked to learn that the face of the title disclosed that the Ford's "actual" mileage was "201150" as late as March 06, 2019. (SOF ¶ 39).

As a result of the business practices of Defendant, Mr. Haddon filed suit seeking damages against the Defendant for violations of, *inter alia*, the Odometer Act (Count I). [DE 1]. Mr. Haddon now moves for partial summary judgment on his Odometer Act claim and certain affirmative defenses.

## II.   MEMORANDUM OF LAW

### A. Summary Judgment Standard.

Summary judgment is proper when "there is no genuine issue as to any material fact" and the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a reasonable jury could return a verdict for the defendant, then a "genuine issue of material fact exists." *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010) (citations omitted). But "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies,

are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citations omitted).

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 961 (11th Cir. 2005) (internal quotations omitted). Further, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo Ass'n v. Selective Ins. Co. of Southeast*, 492 F.App'x 16, 26 (11th Cir. 2012) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### B. Synopsis of the Odometer Act

Congress passed the Odometer Act to prevent fraud in the sale of motor vehicles. The Congressional intent in passing the Act was to prevent odometer tampering and to provide other general safeguards for the protection of consumers.

49 U.S.C. §32701(b). The impact that odometer tampering has on the American economy cannot be overstated. The National Highway Traffic Safety Administration ("**NHTSA**") estimates that tampering costs Americans over $1 billion, annually.[1]

As a remedial consumer protection statute, the Odometer Act is broadly and vigorously applied to accomplish the Act's purposes. *Owens v. Samkle Auto. Inc.*, 425 F.3d 1318, 1322 (*quoting Ryan v. Edwards*, 592 F.2d 756, 759-60 (4th Cir. 1979)). Broadly construing the Act promotes an important public policy. In passing the Act, Congress mandated accurate odometer statements and other pertinent information concerning motor vehicles to penalize those that engage in odometer tampering and related wrongdoing. *Owens*, 425 F.3d at 1322.

The Act requires that a written disclosure of the mileage registered by the odometer or a disclosure that the mileage is unknown if the transferor knows the mileage registered by the odometer is incorrect. 49 U.S.C. §32705(a). Odometer disclosure statements are meant to protect consumers so that they know "how many miles the vehicle has traveled, as a guide to its safety, reliability and value." *Baker v. Cawthon Motor Co.*, 629 F.2d 410, 412 (5th Cir. 1980). Regardless if a disclosure is made on a vehicle's title, on a power of attorney, on a reassignment document, on a separate disclosure statement, or electronically, the content is the same. *See* 49 C.F.R. § 580.5(a), (b), (g); 49 C.F.R. §§ 580.13(a), 580.14(b). The transferor discloses the

---

1    National Highway Traffic Safety Administration, Odometer Fraud, NHTSA.gov, https://www.nhtsa.gov/equipment/odometer-fraud (last visited Oct. 1, 2024).

odometer reading at the time of the transfer and must disclose whether the reading is accurate. 49 C.F.R. § 580.5(c)(1) and (e).

The Odometer Act provides a private cause of action to recover damages from those who violate its provisions with fraudulent intent. 49 U.S.C. § 32710(a). To prevail on a claim under the Odometer Act, a plaintiff must show "(1) that the defendant violated the Act or its regulations, (2) with intent to defraud." *Owens v.*, 425 F.3d at 1321.

**C. There is no genuine dispute of fact that Defendant is liable for violating the Act with intent to defraud entitling Mr. Haddon to summary judgment as a matter of law on his Odometer Act claim.**

Mr. Haddon's Odometer Act claim in this lawsuit is based on Defendant violating the Act's disclosure requirements of 49 U.S.C. §32705 and not on a claim of tampering. As shown herein, Defendant violated the disclosure requirements of the Act in the sale of the Ford in two significant ways. First, Defendant made false statements as to the mileage of the Ford. Second, Defendant concealed the falsity of the statement by providing those false mileage disclosure statements on something other than the title. *See Owens*, 425 F. 3rd at 1318. The way in which Defendant made these disclosures and concealed the Ford's title from Mr. Haddon's examination evinces gross negligence and reckless disregard sufficient to establish liability under the Act.

### i. False statements of mileage.

With respect to the false statements made by Defendant, at the time of sale, Defendant provided Mr. Haddon with the Title Application that falsely averred under

penalty of perjury that the disclosed mileage of 131,636 was accurate. (SOF ¶¶ 25-26). However, the evidence shows that the title to the Ford disclosed the mileage to be "201150" over a year prior to Mr. Haddon's transaction. (SOF ¶39). And the Ford's title history from Texas shows that the disclosed "actual" mileage was 154,495 as of January 30, 2019. (SOF ¶41). Indeed, there is no dispute that the objective and incontrovertible proof establishes that the disclosures at the time of the purchase were false. (SOF ¶53).

Defendant likewise made false statements with respect to the disclosures during the course of the sale of the Ford, namely in its advertisement of the Ford, the Bill of Sale and the Retail Installment Sales Contract. (SOF ¶¶ 16, 20, 23).  The Act states that a person who transfers ownership of a vehicle may not "give a false statement to the transferee in making the disclosure required by [NHTSA's odometer disclosure] regulation." 49 U.S. Code § 32705(a)(2). False verbal statements, advertisements, and written claims in other documents, so long as they are connected to the disclosure, subject a transferor to liability. *See Hughes v. Box, 814 F.2d 498* (8th Cir. 1987); *Ryan*, 592 F.2d at 756). Since the disclosures are required as part of transferring ownership, any statements made in connection with the sale are also considered part of the disclosure.

In *Ryan*, the Fourth Circuit has found the Act applied to a car dealer's false newspaper advertising that described a car as "low mileage" and to false oral statements concerning mileage. The Court stated: "[a] transferor cannot insulate

himself from liability under the statute by completing the odometer disclosure statement correctly, and then contradicting that statement with false oral claims." *Id.*

Here, in addition to the Title Application, the Dealership provided disclosures of the odometer reading in both the Bill of Sale and Retail Installment Contract and Security Agreement (SOF ¶¶ 20, 23). Under both, the Dealership represented to Mr. Haddon that the odometer reading for the Ford was 131,636 miles without any disclosure that the mileage was inaccurate. (SOF ¶¶ 21; 24). Defendant likewise advertised the Ford with 131,636 miles. (SOF ¶16). By implication, Defendant represented that the actual odometer reading was 131,636. The undisputed facts show neither was true.

### ii. Concealment of false statements

With respect to Defendant's concealment of the inaccurate disclosures, the uncontroverted evidence shows that the Ford's title was withheld by Defendant from Mr. Haddon's examination which concealed the falsity of the disclosures provided to him.

In 1986 Congress amended the Federal Odometer Act to require that the odometer disclosure be made on the title certificate. S.Rep. No. 99-47, at 1-2 (1986), reprinted in 1986 U.S.C.C.A.N., 5620, 5621. "The central purpose of [the Act] is to make the title document the sole vehicle for odometer disclosures, thereby completing a years-long movement among the States toward the use of the title for disclosure." *See* Supplementary Information to 1991 Final Rule, 56 Fed. Reg. 47,681, 47,684 (1991). Congress amended the Odometer Act in 1986 to require that the

odometer disclosure be made on the title certificate. Disclosure on the title was required because "using a separate document for odometer disclosure, which had been common in the early days of the Federal odometer law, had been shown to be too vulnerable to abuse." *Id*.

The NHTSA issued the regulations implementing the Act. It recognized that, at the time of the amendments, Congress was aware that a high percentage of vehicles were being transferred without the customers seeing the title certificate at the time of sale. "Therefore, the provisions of the [Act] were amended to combat odometer fraud by making the disclosure of an odometer's mileage a condition of title." If the law did not require the buyer to sign the title, "only the transferor is aware of the previous mileage disclosures." Therefore, "the integrity of the paper trail' intended by Congress would be in jeopardy." Supplementary Information to Proposed Revisions of Odometer Disclosure Requirements, 52 Fed. Reg. 27, 022, 27,025, July 17, 1987.

In adopting its final regulations, NHTSA anticipated the exact situation which occurred in this case, where a dealer would withhold the title certificate from the eyes of a purchaser. NHTSA specifically expected that its rules would allow the watchful buyer to discern the mileage history predating their purchase. NHTSA was carrying out Congressional intent by requiring disclosures on the title certificate. In the Supplementary Information to 1988 Final Rule, 53 Fed. Reg. 29464 (August 5, 1988), NHTSA explained:

> We recognize that, under State laws, "transfer of ownership" may not occur at one point in time, but is a process. Under this final rule, at some point during that process, the title, containing **the disclosure statement**

**completed and signed by the transferor, must be given to, and signed by, the transferee**.... Under this requirement, the integrity of the paper trial has been maintained since the disclosure will be on the title and **consumers will be able to see the disclosures and examine the titles for alterations, erasures or other marks.** Furthermore, consumers will learn the names of previous owners that appear on the title.

(Emphasis supplied).

Thus, with the 1986 amendment, Congress gave the Act an additional "central purpose" by requiring the title document to be the only place for the disclosure under the Act. *See Owens*, 425 F.3d at 1318.

Despite this clear-cut directive, there is no dispute that Defendant failed to provide the required disclosures on the Transfer Title. Rather, Defendant employed devious machinations to bypass the requirements of both federal and state titling procedures to prevent Mr. Haddon from investigating the veracity of the Ford's mileage history. This scheme consisted of the use of an unsecure power of attorney to appoint an agent or employee of Defendant to complete the disclosures on the Ford's title and affix his name to the title, thereby preventing Mr. Haddon from ever setting his eyes on the Ford's title. (SOF ¶¶ 50-51). In lieu of providing Mr. Haddon with the title, Defendant supplied the mileage disclosures on the Title Application. (SOF ¶¶ 25-26; 46). Its use of these forms runs headfirst into the requirements of the Act. 49 C.F.R. § 580.13(a); 49 C.F.R. § 580.5(g); 49 C.F.R. § 580.6(h).

For starters, a power of attorney may be utilized in two limited situations: (1) if "the transferor's title is physically held by a lienholder," or (2) "if the transferor to whom the title was issued by the State has lost his title and the transferee obtains a duplicate title on behalf of the transferor . . ." *Tuckish v. Pompano Motor Co.*, 337

F.Supp. 2d 1313, 1318 (S.D. Fla. 2004) (citing 49 C.F.R. § 580.13(a); *Coleman v. Lazy Days RV Ctr., Inc.*, 2006 U.S. Dist. LEXIS 52178, *15-16. If a power of attorney is utilized, the form must contain the mileage disclosures which are required under the Odometer Act and its regulations. 49 U.S.C. § 32705(b)(2)(A); 49 C.F.R. § 580.13; *Lee v. Gallup Auto Sales, Inc.*, 1998 U.S. Dist. LEXIS 24326, Fn. 4. And, a power of attorney may not be used to sign as both a transferor and transferee in the same transaction. 49 C.F.R. § 580.6(h).

Additionally, the regulations also provide that the mileage disclosure may be made on a supplemental form only if a vehicle has not yet been titled or where there is no room on the title certificate. 49 C.F.R. § 580.5(g); *Coleman*, 2006 U.S. Dist. LEXIS 52178, *14-15.

The record evidence reveals no justification of Defendant' use of an unsecure power of attorney as the title was not held by a lender or lost. (SOF ¶¶ 47-48). Assuming Defendant is able to somehow argue otherwise, the power of attorney nevertheless failed to provide any mileage disclosures. (SOF ¶ 44). And, Defendant utilized the power of attorney to sign as both the transferor and transferee in the same transaction. (SOF ¶ 42). Similarly, neither of the two exceptions that would allow Defendant to provide mileage disclosures on a supplemental form exist here. As is evident, Defendant ultimately made mileage disclosures on the Transfer Title which in and of itself shows that the Ford had been previously titled and there existed sufficient space to make the disclosures on the Transfer Title itself. (SOF ¶ 42).

That Defendant violated the Act when it concealed the Transfer Title from Mr.

Haddon and failed to provide the mandated disclosures on the Transfer Title is an inescapable conclusion on the evidence before the Court. *Owens*, 425 F.3d at 1321; *Yazzie v. Amigo Chevrolet, Inc.*, 189 F.Supp. 2d 1245 (D.N.M. 2001) (finding that withholding of certificate of title is of violation of the Odometer Act).

### iii. Fraudulent intent

The 11th Circuit has analyzed few cases involving claims under the Odometer Act. However, the Fifth Circuit Case of *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978) exemplifies the majority view that a reckless disregard for the truth or gross negligence with respect to an odometer disclosure supports a finding of intent to defraud. This Court has similarly adopted a recklessness or gross negligence standard. *Fowler v. Elegant Auto Fin. LLC*, 446 F. Supp. 3d 966, 969; *Coleman v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-930-T-17TBM, 2007 U.S. Dist. LEXIS 50514, at *2.

A dealer's failure to take basic steps to investigate the accuracy of the odometer is reckless. *Bolton v. Tyler Lincoln Mercury, Inc.*, 587 F.2d 796 (5th Cir. 1979); *Avila v. Used Car Showcase 1 LLC*, 2021 U.S. Dist. LEXIS 232918, *10. "The failure to take any steps to independently verify the accuracy of an odometer  reading constitutes reckless disregard for the purposes of the Act." *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1284 (10th Cir. 1998). The mere reliance on the odometer reading, in the face of other readily ascertainable information from the title and condition of a vehicle constitutes a reckless disregard that rises to the level of intent to defraud as a matter of law. *Aldridge v. Billips*, 656 F.Supp. 975, 978 (W.D. Vir. 1987); *see also Tusa v. Omaha Auto. Auction Inc.*, 712 F.2d 1248, 1254 (8th Cir. 1983) (finding an intent to

defraud where the defendant "made no effort to obtain any previous disclosure statements" and where the disclosure statement "relied on nothing but the odometer reading.")

### 1.    Odometer disclosure

The law required Defendant to ensure the mileage representations it was making were accurate. But Defendant chose not to. It made the disclosures to Mr. Haddon exclusively based upon a visual inspection of the Ford's odometer and the mileage representations provided to it by Manheim® auction. (SOF ¶ 40). Evidently, these disclosures were merely relayed by Manheim® based upon the representations made by the Ford's seller without any sort of independent inspection. (SOF ¶ 41). Indeed, Defendant has no policies to investigate the veracity of a vehicle's mileage. (SOF ¶ 37). Defendant's reliance on the mileage representations made by Manheim® were patently unreasonable as Manheim® never actually inspected the Ford to confirm the veracity of the mileage. (SOF ¶ 36).  And despite having the option to request an inspection of the Ford by Manheim® it did not. *Id.*

Defendant also made it clear that its own inspection of the Ford purportedly included nothing more than a visual examination and test-drive. (SOF ¶ 12). Yet despite claiming it completed an inspection, it was unable to provide any information about the condition of the Ford at the time of the inspection (SOF ¶ 13). Even if Defendant wanted to complete a diagnostic evaluation of the Ford, it would have been unable to do since it does not employ a mechanic (SOF ¶ 14)  nor does it even have a vehicle lift on its premises to enable such an inspection. (SOF ¶ 15).

What's worse, Defendant failed to undertake what is arguably the most basic form of due diligence by obtaining the Ford's CarFax® or AutoCheck® report (SOF ¶ 69) which would have alerted Defendant to the impaired odometer reading. Evidently, Defendant never obtains CarFax® or AutoCheck® reports to investigate vehicle mileage (SOF ¶ 7) as it does not even maintain an account with either entity. (SOF ¶¶ 8-9).

These glaring failures of diligence smack of gross negligence and recklessness which is the cornerstone of Defendant's business practices. It had multiple avenues by which it could have discovered the mileage discrepancy but chose to turn a blind eye. And although it did not know that Mr. Haddon would be defrauded, this Court may infer from its abhorrent lack of diligence that it understood the risk of such an occurrence by closing its eyes to the truth. *Fowler*, 446 F. Supp. 3d, at 969; *Desamours v. Impact Auto Depot, Inc.*, 2022 U.S. Dist. LEXIS 115116, *6; *Nieto* 578 F.2d at 641.

### 2.  Titling procedures

There can also be no doubt that Defendant exhibited a reckless disregard for what the law required of it with respect to its titling procedures. It readily admits that at the time of Mr. Haddon's transaction it did not possess the Ford's title and only obtained it "about 10 days" after Mr. Haddon's transaction (SOF ¶¶ 32-33) despite having an affirmative obligation to make the disclosure at the time of the transfer. *Tuckish*, 337 F.Supp. 2d  at 1318 (holding dealer violated Act by failing to provide plaintiff with the actual title certificate for examination and signature at time of sale pursuant to 49 C.F.R. § 580.5(c)). Likewise, Defendant accepted an incomplete

disclosure given that the penultimate seller failed to disclose the mileage was inaccurate. (SOF ¶ 40). Accepting an incomplete disclosure is in and of itself a violation of the Act. 49 U.S. Code § 32705(a)(3).

Moreover, when it made the disclosures on the Transfer Title, it failed to ever inspect the face of the title (SOF ¶ 38) which clearly demarcated that the "actual" mileage was in excess of 200,000 miles over a year prior to Mr. Haddon's transaction. (SOF ¶ 39). Evidently, this was not a one-off occurrence as Defendant "never" inspects titles before completing mileage disclosures. (SOF ¶ 10). And, Defendant uses an unsecure power of attorney in "every single deal" (SOF ¶ 43) despite having no meaningful explanation for doing so. (SOF ¶ 49). Some would say that Defendant's policies and procedures in this regard evince willfulness well beyond gross negligence or a reckless disregard for what the law required. There can be no logical explanation for such an overwhelming level of disregard for the obligations imposed by the Act, aside from malicious intent.

It is anticipated that Defendant will claim that it lacked intent to defraud as it was unaware of the inaccuracy of the mileage reading on the Ford's odometer given that it obtained the Transfer Title after Mr. Haddon's transaction. [2] But, actual knowledge is not a pre-requisite for establishing liability and ignorance is no defense. "Claiming ignorance, even truthfully, is not enough to avoid liability for giving a

---

[2] Regardless, even if FS Investments would have been in possession of the Transfer Title, the circumstances would be no different given its policy of "never" inspecting titles prior to making mileage representations. (SOF ¶11.).

certification showing an odometer figure, rather than 'unknown.' Care must be taken to learn and reveal the facts, rather than care to avoid or hide them." *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387; *see also Jones v. Fenton Ford, Inc.*, 427 F. Supp. 1328; *Auto Sports, Inc. v. Bruno Auto Dealers, Inc.*, 721 F. Supp. 63 (S.D.N.Y. 1989).

"Among the factual circumstances that courts have considered in determining whether a dealer  was grossly negligent or reckless in certifying a vehicle's mileage are the following: the dealer's experience in used car sales, and the vehicle's unreasonably low mileage in light of its age and/or its interior, exterior or mechanical condition." *Harris*, 2005 U.S. Dist. LEXIS 48275, 2005 WL 1861730, at *4 (citation omitted).

In *Auto Sports, Inc. v. Bruno Auto Dealers, Inc.*, the defendant dealer sold a vehicle to the plaintiff dealer with incorrect mileage. 721 F. Supp. 63. The defendant sought summary judgment, arguing that it had no knowledge that the odometer had been tampered with, nor did they claim to know that the stated mileage was incorrect. *Id.* at 65. The Court rejected a strict construction of the statute that would require proof of actual knowledge. *Id.* at 65-66. The Court referenced legislative history, stating that "the test of 'knowingly' was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark 'true mileage unknown' if, in the exercise of **reasonable care**, he would have reason to know that the mileage was more than that which the odometer recorded." *Id.* (*quoting* 1972 U.S. Code, Cong. & Adm. News, 3960, 3971-72). (Emphasis supplied).

In  *Jones* the dealership lacked a mileage disclosure in its files at the time of

sale. The court held that "[t]he absence of an original [disclosure] in the automobile's file should have led the individual charged with certifying the new [disclosure] to launch an inquiry into the true facts. This employee should not have prepared a [disclosure]which failed to put the Joneses on notice in any way of a possible defect." *Jones*, 427 F. Supp. at 1335-1336.

Here, the absence of the title in the Ford's deal file would have raised a red flag for a reasonably prudent dealer which would have stirred up an inquiry to ascertain the veracity of the mileage. Things may be different if Defendant was a novice in the industry. However, the record reveals that the Defendant is an experienced dealer in used automobiles. (SOF ¶¶ 4-8). And had Defendant exercised the reasonable care expected of it, it could have readily ascertained the mileage inaccuracy, either by way of simply inspecting the title or obtaining a vehicle history report, if it truly wanted to. The little information Defendant did rely on showed that the condition of the Ford was "below average" and it had a "odometer problem." (SOF ¶¶ 28-29). These disclosures should have prompted Defendant to request an inspection of the Ford, but it did not. (SOF ¶36). The absence of the Transfer Title and the willful blindness exhibited by the Defendant was nothing more than business as usual for the Defendant who turned a blind eye to the truth to purloin profit and Mr. Haddon's expense. The overwhelming evidence shows that this was a conscious choice. Defendant should be held responsible for its choice.

**b. Mr. Haddon is entitled to recover treble damages under the Act.**

The Odometer Act provides for treble actual damages or $10,000 whichever is greater. 49 U.S.C. § 32710(a). Although the Eleventh Circuit has not spoken on what constitutes "actual damages" under the Act, other Circuits have defined actual damages under § 32710(a) as "(1) the purchase price of the vehicle less its [fair market value] given the vehicle's actual mileage, and (2) any expenses shown to be attributable to the defendant's wrongful acts[.]" *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 498 (8th Cir. 2009) (*citing Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1388 (D. Neb. 1977)).

The majority view which embodies the remedial nature of the Odometer Act finds that repair costs proximately caused by the misconduct to be recoverable. *Farmers Coop. Co. v. Senske & Son Transfer Co.*, 572 F.3d 492 (8th Cir. 2009); *Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F.3d 565 (8th Cir. 1998); *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254 (5th Cir. 1991). *See also Castillo v. Autokirey, Inc.*, 379 F.3d 4 (1st Cir. 2004). Likewise, actual damages also include any additional amounts paid in taxes and financing charges because the consumer paid more for the vehicle than it was worth. *Grabinski*, 136 F.3d at 565 (interest); *Corrales-Gonzalez v. Speed Auto Wholesalers L.L.C.*, 2022 WL 7733230 (D. Ariz. Sept. 13, 2022) (finance charges, sales tax, and documentary fees, all trebled); *Goeman v. Keating*, 498 F. Supp. 700 (D.S.D. 1980) (financing charges).

There can be no dispute that Mr. Haddon was harmed by buying a car with a tampered odometer. (SOF ¶¶ 54-56; 59-61; 65-68). Yet, Mr. Haddon need not prove any actual damages to recover the minimum statutory amount. *See* Att'y Gen. of *Ryan*

*v. Edwards*, 717 F. Supp. 1090 (D. Md. 1989); *Evans v. Paradise Motors, Inc.*, 721 F. Supp. 250 (N.D. Cal. 1989) *Williams v. Toyota of Jefferson, Inc.*, 655 F. Supp. 1081 (E.D. La. 1987). Mr. Haddon need only prove that the defendant violated the Act with an intent to defraud. As shown above, he has readily satisfied his burden. Accordingly, Mr. Haddon is entitled to minimum statutory damages of $10,000. 49 U.S.C. § 32710(a).[3]

### D. Plaintiff is entitled to summary judgment on certain of Defendant's affirmative defenses.

Summary judgment may be granted on an affirmative defense. *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). "The standard for a motion for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on the relevant issue." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (*quoting* William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)). As the United States Court of Appeals for the Sixth Circuit has noted: the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. *Id.*

### i. Defense No. 1 – Accord and Satisfaction

This defense arises when there is a good-faith dispute between two parties over the amount or terms of a contract, and they agree to settle the matter by a new

---

[3] Plaintiff does not waive, and expressly reserves the right, to seek plenary damages at trial in this action.

agreement. The new agreement (the "accord") and its execution (the "satisfaction") effectively discharge the original obligation. *Air Products & Chemicals, Inc. v. Louisiana Land & Exploration Co.*, 806 F.2d 1524, 1528-1529. Plaintiff has raised no contractual claims against the Defendant. See Complaint, *generally.* Nor is there any evidence of a new agreement being executed to discharge an original obligation. This defense is a red-herring and must fail as a matter of law.

### ii.   Defense No. 2 – Statute of Limitations

The Federal Act provides that an "action to enforce a claim under this section . . . must be brought not later than 2 years after the claim accrues." 49 U.S.C. § 32710(b). The claim accrues not on the date of the illegal conduct, but when the plaintiff discovers or should have discovered the violation. *Ferris v. Haymore*, 967 F.2d 946 (4th Cir. 1992). The "should have discovered" standard does not require that a consumer purchase a Carfax at the time of sale, so it is reasonable for a consumer to discover a rollback until years later. *Johnson v. Thacker Enterprises, Inc.*, 2018 WL 1725651 (D. Utah Apr. 6, 2018).

Here, Mr. Haddon only discovered the truth about the botched mileage disclosures when he tried to sell the Ford in May of 2022. (SOF ¶ 63).  This action was initiated on March 30, 2023 [DE 1] which is well within the two-year limitations period.  This defense fails as a matter of law.

### i.   Defense No. 3 – Laches

Laches applies to claims that are equitable in nature. *Jeremiah's Int'l Trading Co. v. Calderone*, 2015 U.S. Dist. LEXIS 183662, *6. The defense of laches does not apply

to claims arising under congressional acts providing a statute of limitations. *See Wlodynski v. Ryland Homes of Florida Realty Corp.*, No. 808-CV-00361-JDW-MAP, 2008 U.S. Dist. LEXIS 54515, 2008 WL 2783148, at *2 (M.D. Fla. July 17, 2008). Mr. Haddon has raised no equitable claims. *See* Complaint, *generally*. Moreover, Congress has established a two-year limitations period, 49 U.S.C. § 32710(b). This defense fails as a matter of law.

### ii.    Defense No. 4 – No Actual Damages

A denial is not an affirmative defense. "Affirmative defenses which simply deny the complaint's allegations are also not affirmative defenses." *Losada*, 296 F.R.D. at 690; Gent Row, LLC v. Truist Fin. Corp., 2022 U.S. Dist. LEXIS 236971, *4 (Striking affirmative defense denying existence of actual damages). Moreover, a plaintiff need not have been damaged to prevail under the Odometer Act; there is a minimum statutory award of $10,000.00 to encourage persons who discover and act on violations. *Evans*, 721 F. Supp. At 250. In any event, the record reveals Mr. Haddon has indeed sustained actual damages. (SOF ¶¶ 54-56; 59-61; 65-68). This defense fails.

### iii.    Defense No. 7 – Waiver

Waiver requires a voluntary relinquishment of a known right. *Irvine v. Cargill Investor Services, Inc.*, 799 F.2d 1461, 1464. "There can be no waiver unless the party against whom the waiver is invoked was in possession of all the material facts." *Id*. The defense is disfavored and may not be used to bring about ends contrary to public policy. *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432, 442-43  (5th Cir. 1962) (applying Florida law). Moreover, an individual cannot waive the protection of

a statute that is designed to protect both the public and the individual. *Belcher v. Ocwen Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 173271, *3.

Defendant can point to no evidence that Mr. Haddon was fully apprised of the falsity of the mileage disclosures. The evidence shows the exact opposite. [CITE]. Nor is there any conduct evident from the record before the Court that Mr. Haddon voluntarily relinquished a known right. To apply the doctrine of waiver to this claim would effectively undermine the remedial paradigm established by Congress to ensure accuracy in odometer disclosures and to punish wrongdoers who contravene the Odometer Act's requirements. This defense must fail as a result.

### iv.   Defense No. 9 – Good Faith

"Good faith," is defined as "A state of mind consisting in . . . absence of intent to defraud or to seek unconscionable advantage." *Clevenger v. Bolingbrook Chevrolet, Inc.*, 401 F. Supp. 2d 878, 882 (*quoting* Black's Law Dictionary, p.713, 8th ed., Bryan A. Garner, ed. (2004)). *Clevenger v. Bolingbrook Chevrolet, Inc.*, 401 F. Supp. 2d 878, 882. A claim of "good faith" contradicts the "intent" liability element of and Odometer Act claim. *Id.* This purported is nothing more than a denial of an element of Mr. Haddon's Odometer Act claim which must fail as a matter of law. "A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense." *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

### v.   Defense No. 10 – No Intent to Defraud

This is likewise not a defense. "A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense." *In re Rawson Food Service, Inc.*,

846 F.2d at 1349. Intent to defraud is an element of an Odometer Act Claim. 49 U.S.C. § 32710(a). Thus this defense fails as a matter of law.

### vi.    Defense No. 11- Estoppel

Under Florida law, equitable estoppel requires proof of three elements: (1) a representation by the party estopped to the party claiming the estoppel as to some material fact, which representation is contrary to the condition of affairs later asserted by the estopped party; (2) a reliance upon this representation by the party claiming the estoppel; and (3) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon. *United States Life Ins. Co. v. Logus Mfg. Corp.*, 845 F. Supp. 2d 1303, 1318 (S.D. Fla. 2012). The doctrine "is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position[.]" *Fla. Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So. 2d 1091, 1096 (Fla. 2002). Defendant cannot point to any evidence of a representation of material fact, reliance nor a detrimental change of position. This defense must fail.

### vii.    12 – No Causation

The absence of proximate cause is not an affirmative defense; rather, it is "a requirement of plaintiffs cause of action put at issue by a general denial." *Coquina Invs. v. Rothstein*, 2011 U.S. Dist. LEXIS 121039, *47-48 (*quoting Clement v. Rousselle Corp.*, 372 So. 2d 1156, 1158 (Fla. Dist. Ct. App. 1979)); *see also Currie v. Dollar Gen. Corp.*, No. 05-099, 2005 U.S. Dist. LEXIS 35488, 2005 WL 1684161, at *1 (N.D. Fla. Jul. 12, 2005). This purported defense fails as a matter of law.

### viii.   Defense No. 13 – Comparative Negligence

It is no defense to liability under the Act that the consumer was at fault in not recognizing the odometer problem. A complaint for a violation that requires intent is akin to a complaint in fraud, and there is no comparative fault defense for fraud actions. *Fowler*, 446 F. Supp. 3d at 966. This defense fails as a matter of law.

### ix.   Defense No. 14 – Unclean Hands

For unclean hands to apply, a defendant must show that the plaintiff's wrongdoing is directly related to the claim against which it is asserted and the defendant was personally injured by the conduct. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450. The doctrine only applies to equitable claims of relief. *Regions Bank v. Old Jupiter, LLC*, No. 10-80188, 2010 U.S. Dist. LEXIS 131443, at *6 (S.D. Fla. Dec. 13, 2010). Here, there can be no doubt Mr. Haddon had no hand in the Odometer Act violations. Likewise, Defendant cannot point to any resulting injury. Lastly, Mr. Haddon seeks to recover only damages as no equitable claims have been raised. *See* Complaint, *generally.* This defense fails as well. *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 756 n.10 (3d Cir. 1990).

### x.   Defense No. 15 – Arbitration

An "agreement to arbitrate, just like any other contract, may be waived.'" *Grigsby & Assocs. v. M Sec. Inv.*, 635 F. App'x 728, 731 (11th Cir. 2015). While there is "no set rule" over what constitutes a waiver of arbitration, a part who '"substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate."' *S H Contractors v. A.J. Taft Coal Co.*, 906 F.2d 1507,1514. To date, no

demand has been made to arbitrate this dispute. *See* Docket. And as the record reveals, the Defendant has litigated this case extensively. *Id*. This extensive use of the litigation machinery evinces a knowing relinquishment of the right to arbitrate the dispute. *Mellien v. U-Drive Motors, LLC*, 2024 U.S. Dist. LEXIS 139384, *5 ("[W]aiver is the intentional relinquishment or abandonment of a known right."). This affirmative defense fails as a matter of law.

### xi.   Defense No 18 – Failure to State a Cause of Action

Failure to state a claim is a specific denial rather than an affirmative defense. *GS Holistic, LLC v. Kinder Combs 7 LLC*, 2023 U.S. Dist. LEXIS 135404, *3. Even so, as shown, *supra*, Mr. Haddon has indeed stated a claim under the Odometer Act.

## III.   CONCLUSION

Given the above, this Court should grant Plaintiff's Partial Motion for Summary Judgment, holding that Plaintiff is entitled to an award of statutory damages in his favor since there is no dispute of material fact that Defendant violated the Odometer Act with intent to defraud and that certain of Defendant's affirmative defenses be stricken as set forth hereinabove.

**WHEREFORE**, Plaintiff, GABRIEL LUC HADDON, an individual, respectfully request the Court grant Plaintiff's Motion for Summary Judgment, finding that Plaintiff is entitled to an award in his favor in the amount of $10,000, plus mandatory attorney's fees pursuant to 49 U.S.C. § 32710(a).

Respectfully submitted on Monday, 7 October 2024, by:

*/s/ Joshua Feygin*
Joshua Feygin, Esq.
FLORIDA BAR NO: 124685
Email:  Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison Street, Suite 208 F
Hollywood, FL 33020
Telephone: (954) 228-5674
Facsimile: (954) 697-0357

## CERTIFICATE OF SERVICE

I certify that on Monday, 7 October 2024, a copy of the foregoing was filed via the Court's Electronic Filing system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Joshua Feygin*
Joshua Feygin, Esq.
FLORIDA BAR NO: 124685