## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No.: 8:23-cv-00709-WFJ-SPF

GABRIEL LUC HADDON,
an individual,

    Plaintiff,
vs.

DEFENDANT OF AMERICA
INC., d/b/a WESTLAKE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

    Defendants.
_____/

## DECLARATION OF PLAINTIFF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

THE UNDERSIGNED, GABRIEL LUC HADDON, hereby declares pursuant to 28 U.S.C. §1746, as follows:

1. I am the named plaintiff in the above-referenced lawsuit.

2. I make this affidavit based on my personal knowledge.

3. On May 25, 2020, I went to DEFENDANT OF AMERICA INC. ("**Defendant**"), to consider used vehicles with the intent of purchasing a vehicle for my personal and household use.

4. Ultimately, I decided to purchase a 2012 Ford F150, with a Vehicle Identification Number of ending in 2718 ("**Ford**").

5. Defendantship's salesperson affirmatively represented orally and in writing that the Vehicle had 131,636 miles.

6. Based on these representations, I agreed to complete the purchase as I believed that a lower mileage vehicle would need less mechanical repairs than a higher mileage vehicle.

7. I relied on FS Investment's representations concerning the mileage when he agreed to purchase the Ford for the cash price of $21,998.

8. Defendant prepared a bill of sale ("Buyer's Order") contract for the sale of the Vehicle.

9. Pursuant to the Buyer's Order, the disclosed mileage was 131,636.

10. The Buyer's Order failed to disclose that the mileage was inaccurate.

11. To facilitate the financing of the Vehicle, FS Investment prepared a retail installment sales contract ("RISC").

12. Pursuant to the RISC, the disclosed mileage was 131,636.

13. The RISC does not disclose the mileage representation was inaccurate.

14. Defendant executed a "Application for Certificate of Title With/Without Registration." ("Application for Title").

15. Pursuant to the Application for Title, Defendant disclosed to me that the "actual" mileage was 131,636.

16. Once I purchased the Ford, I felt satisfied with the condition of the Ford and my decision to purchase it for family and household purposes given that I was under the belief that the Ford had only been driven 131,636 miles.

17. Shortly after purchasing the Ford, I experienced unexpected mechanical difficulties.

18. On August 14, 2020, the Ford was delivered to Quality Care Automotive Center in Lutz, Florida to have the turbocharger replaced after it failed.

19. From the time of the purchase in May of 2020 and the date the Ford was delivered for repairs on August 21, 2020, the Ford was only driven 1,205 miles.

20. The cost of the repair was $1,720.47.

21. I did not anticipate to have to pay for such an expensive repair so soon after purchasing the Ford. Afterall, I purchased the Ford because I thought the lower mileage would mean it would not need significant repairs for quite some time.

22. I attempted to sell the Ford in May of 2022.

Case 8:23-cv-00709-WFJ-SPF   Document 73-16   Filed 10/07/24   Page 4 of 7 PageID 1209

23. A potential buyer alerted me to a mileage discrepancy on the Ford's CarFax in May of 2022. This was the first time I came to learn of a mileage discrepancy.

24. Ultimately, I obtained the title history to the Ford and was shocked to learn that Defendant signed my name to the title using an unsecure power of attorney form.

25. Defendant failed to provide me the Ford's title for inspection and signature.

26. Had Defendant provided me with the Transfer Title, I would have easily discovered that the mileage was "201150" as of March 06, 2019 because the face of the title clearly states as much. I would not have purchased the Ford had I known of its mileage discrepancy.

27. Instead, Defendant used an unsecure power of attorney form to affix my signature on the title to the Ford.

28. This unsecure power of attorney form did not provide me with any mileage disclosures.

29. The Ford was sold to me for the cash price of $21,998. My down payment of $5,000 was applied to the purchase, leaving a balance of $16,998 to be financed. The loan was financed with an annual percentage rate (APR) of 16.09% for a term of 48 months. The monthly payment, based on these terms, was $573.32. The monthly interest rate

is derived by dividing the APR (16.09%) by 12 months, yielding a monthly interest rate of approximately 1.34%. Over the course of 48 months, the total amount repaid under these terms was $573.32 multiplied by 48 months, equaling $27,437.19. The finance charge was $7,439.19 which was the difference between the total amount repaid ($27,437.19) and the amount financed ($16,998). If the Ford was sold for what it was actually worth according to my expert's findings ($16,500), after applying my down payment of $5,000, $11,500 was left to be financed. With an APR of 16.09% and a term of 48 months, the monthly interest rate would remain 1.34%. Applying a standard loan payment formula of P= rxPV / 1-(1+r) -n, where P is the monthly payment, r is the monthly interest rate (1.34%), PV is the loan amount ($11,500), and n is the loan term (48 months), my monthly payment should have been $326.44. The total amount I should have repaid is calculated by multiplying the monthly payment ($326.44) by the loan term (48 months), which equals $15,669.29. The finance charge for this loan is the difference between the total amount repaid ($15,669.29) and the amount financed ($11,500). This results in a finance charge of $4,169.29 which is $3,532.72 more than I had to pay.

30. In addition to the $3,532.72 I overpaid for the financing of the Ford, I likewise was charged more for taxes. The Ford's Buyer's Order

discloses tax in the amount of $1,367.82 was charged to me. If I was taxed on the purchase price of $16,500 which should have been the price of the Ford, I would have only paid $1,155 in taxes at a 6% taxable rate. Accordingly, I was overcharged $212.82 as and for the taxes on the purchase of the Ford.

31.   In addition to these monetary amounts, I spent countless hours investigating this matter with my attorney.

32.   I likewise spent a considerable amount of time dealing with repairs that had to be completed to the Ford.

33.   Due to DEFENDANT OF AMERICA, INC.'s violation of the Odometer Act, I am seeking minimum statutory damages of $10,000 pursuant to the Odometer Act against DEFENDANT OF AMERICA, INC.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

EXECUTED: 10/07/2024

_____
GABRIEL LUC HADDON