# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

Case No.: 8:23-cv-00709-WFJ-SPF

GABRIEL LUC HADDON,
an individual,

    Plaintiff,

vs.

FS INVESTMENTS OF
AMERICA INC., d/b/a
POWERHOUSE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

    Defendants.
_____/

## PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1. Plaintiff, GABRIEL LUC HADDON ("**Mr. Haddon**"), purchased a 2012 Ford F-150 with a VIN ending in 2718 ("**Ford**") sold by FS INVESTMENTS OF AMERICA, INC. D/B/A POWERHOUSE AUTOMOTIVE, a Florida corporation ("**FS Investments**") on May 25, 2020. Strusberg Dep. Ex. 1 at 53:12-13; Dec. of Mr. Haddon, Ex. 2 at ¶¶ 3-4.

2. FS Investments is a licensed used car dealership. Strusberg Dep. Ex. 1 at 15:21-23.

3. As a licensed dealer of used motor vehicles, FS Investments is required to take ongoing legal education courses by the Florida Department of Highway Safety and Motor Vehicles ("**DMV**"). Strusberg Dep. Ex. 1 at 20:11-13.

4. At the time of the sale of the Ford, FS Investments was in business for over four years. Strusberg Dep. Ex. 1 at 16:11-13.

5. FS Investments sells thirty vehicles per month. Strusberg Dep. Ex. 1 at 23-24.

6. FS Investments sells 360 vehicle per year. Strusberg Dep. Ex. 1 at 16:25-17:1.

7. FS Investments relies on neither CarFax reports nor AutoCheck reports when deciding to purchase a vehicle for resale. Strusberg Dep. Ex. 1 at 22:4-6.

8. FS Investments does not maintain an account with CarFax. Strusberg Dep. Ex. 1 at 24:23-24.

9. FS Investments does not maintain an account with AutoCheck. Strusberg Dep. Ex. 1 at 24:25-26:1.

10. FS Investments never inspects a vehicle's title before it is placed for sale. Strusberg Dep. Ex. 1 at 22:9-11.

11. FS Investments' inspection of a vehicle acquired for resale is limited to a test-drive. Strusberg Dep. Ex. 1 at 22:21-23:8.

12. FS Investments' inspection of the Ford was limited to a test drive and visual inspection. Strusberg Dep. Ex. 1 at 39:4-17.

13. FS Investments was unable to recall the condition of the Ford at the time of the inspection. Strusberg Dep. Ex. 1 at 39:18-40-22.

14. FS Investment employs no mechanics. Strusberg Dep. Ex. 1 at 25:16-17.

15. FS Investments does not have a vehicle lift on its premises. Strusberg Dep. Ex. 1 at 25:18-19.

16. FS Investments advertised the Ford's mileage as "131,636." Strusberg Dep. Ex. 1 at 67:3-9.

17. Mr. Haddon relied on FS Investment's representations concerning the mileage when he agreed to purchase the Ford for the cash price of $21,998. Dec. of Mr. Haddon, Ex. 2 at ¶¶ 6-7.

18. When making the decision to purchase the Ford, Mr. Haddon believed that a vehicle with less miles would require maintenance which influenced his decision to buy the Ford. Dec. of Mr. Haddon, Ex. 2 at ¶ 6.

19. FS Investments prepared a bill of sale ("Buyer's Order") contract for the sale of the Vehicle. Strusberg Dep. Ex. 1 at 52:5-24; Buyer's Order Ex. 3; Dec. of Mr. Haddon, Ex. 2 at ¶ 8.

20. Pursuant to the Buyer's Order, the disclosed mileage was 131,636. Strusberg Dep. Ex. 1 at 54:11-16; Buyer's Order Ex. 3; Dec. of Mr. Haddon, Ex. 2 at ¶ 9; FS Investment's Resp. to Pl.'s Req. for Admis. Ex. 4 at no. 17.

21. The Buyer's Order fails to disclose that the disclosed mileage was inaccurate. Strusberg Dep. Ex. 1 at 54: 17-10; Buyer's Order Ex. 3; Dec. of Mr. Haddon, Ex. 2 at ¶ 10.

22. To facilitate the financing of the Vehicle, FS Investment prepared a retail installment sales contract ("RISC"). Strusberg Dep. Ex. 1 at 56:17-57:2; RISC Ex. 5; Dec. of Mr. Haddon, Ex. 2 at ¶ 11.

23. Pursuant to the RISC, the disclosed mileage was 131,636. Strusberg Dep. Ex. 1 at 59:5-8; RISC Ex. 5; Dec. of Mr. Haddon, Ex. 2 at ¶ 12; FS Investment's Resp. to Pl.'s Req. for Admis. Ex. 4 at no. 16.

24. The RISC does not disclose the mileage representation was inaccurate. Strusberg Dep. Ex. 1 at 59:2-4; RISC Ex. 5; Dec. of Mr. Haddon, Ex. 2 at ¶ 13.

25. In connection with the transfer of title for the Ford, FS Investments executed a "Application for Certificate of Title With/Without Registration." ("Application for Title"). Strusberg Dep. Ex. 1 at 65:1-23; Dec. of Mr. Haddon, Ex. 2 at ¶ 25; Application for Title Ex. 6.

26. Pursuant to the Application for Title, FS Investments disclosed the "actual" mileage to be 131,636 under penalty of perjury. Strusberg Dep. Ex. 1 at 66:20-25; 67:15-19; Dec. of Mr. Haddon, Ex. 2 at ¶ 15; Application for Title Ex. 6.

27. Mr. Haddon felt satisfied regarding the condition of the Ford and his decision to purchase it for family and household purposes given that he believed the Ford had only been driven 131,636 miles. Dec. of Mr. Haddon, Ex. 2 at ¶ 16.

28. The Manheim listing for the Ford had a "Condition Rating of 2.8 which was "below average." Manheim Resp. to Mr. Haddon's subpoena Ex. 7 at 24.

29. The Manheim listing for the Ford discloses "Odometer problem reported." Manheim Resp. to Mr. Haddon's subpoena Ex. 7 at pg. 6.

30. FS Investments did not receive title to the Ford when it was purchased. Strusberg Dep. Ex. 1 at 41:17-19, 43:4-6, 146:24-147:3; FS Investments responses to Mr. Haddon's Interogs. Ex. 8 at no. 8.

31. FS Investments accepted transfer of the Ford's title on a Texas Certificate of Title bearing Title/Document Number "01541843520093008." ("Transfer Title"). Transfer Title Ex. 10, "FSIA 000019-FSIA0020."

32. At the time of the sale of the Ford to Mr. Haddon, FS Investments was not in possession of the Transfer Title and only received the Transfer Title "about 10 days" after Mr. Haddon took possession of the Vehicle. Strusberg Dep. Ex. 1 at 43:4-6; 146:25-147:3.

33. The mileage disclosure made by FS Investments on the Transfer Title for the Ford was not actually made on May 25, 2020. Strusberg Dep. Ex. 1 at 146:8-11; FS Investments responses to Mr. Haddon's Interogs. Ex. 8 at no. 8.

34. The mileage disclosure made by FS Investments on the Transfer Title for the Ford was based on the Bill of Sale it received from Manheim and a visual

inspection of the Ford's odometer. Strusberg Dep. Ex. 1 at 146:12-16; 134:17-135:24; 147:4-7.

35. Manheim relays mileage representations to its buyers based upon representations they receive from the seller of the vehicle. Strusberg Dep. Ex. 1 at 138:14-22.

36. Manheim provides buyers like FS Investments with an opportunity to inspect vehicles sold through its platform but FS Investments did not ask that an inspection be performed on the Ford. Strusberg Dep. Ex. 1 at 147:15-21.

37. FS Investments has no policies or procedures to investigate the veracity of the mileage of a vehicle it acquires for resale other than relying on a seller's disclosure. Strusberg Dep. Ex. 1 at 147:11-14.

38. At the time the mileage disclosure for Mr. Haddon's transaction was made, FS Investment did not inspect the mileage disclosure on face of the Transfer Title. Strusberg Dep. Ex. 1 at 22-25; Transfer Title Ex. 9, "FSIA 000019."

39. The face of the Transfer Title discloses the "actual mileage" to be "201150" as of March 06, 2019. Strusberg Dep. Ex. 1 at 44:24-45:4; Transfer Title Ex. 9, "FSIA 000019"; Dec. of Mr. Haddon, Ex. 2 at ¶ 26.

40. FS Investments accepted transfer of the title to the Ford with an incomplete odometer disclosure by virtue of the penultimate seller's failure to select the designation that the mileage reading was not actual. Transfer Title Ex. 9, "FSIA 000020."

41. On January 30, 2019, the Ford had an actual odometer reading of 154,495 miles. Texas Title History, Ex. 10 at pg. 4.

42. FS Investments utilized an unsecure power of attorney form - "HSMV Form 82053" to sign the Transfer Title on behalf of Mr. Haddon as both transferor and transferee in its capacity as attorney of fact. Strusberg Dep. Ex. 1 at 67:20-68:20; 80:1-81:8; FS Investment's Resp. to Pl.'s Req. for Admis. Ex. 4 at nos. 11-14; Transfer Title Ex. 9, "FSIA 000020"; Dec. of Mr. Haddon, Ex. 2 at ¶¶ 24 & 27.

43. FS Investments uses the same unsecure power of attorney form for "every single deal." Strusberg Dep. Ex. 1 at 69:4-17.

44. The unsecure power of attorney does not disclose the Ford's mileage. Strusberg Dep. Ex. 1 at 72:20-23; Dec. of Mr. Haddon, Ex. 2 at ¶ 28.

45. An agent or employee by the name of "Betty" signed the Transfer Title on behalf of Franklyn Strusberg when the title was transferred from Auto Deal Corp to FS Investments. Strusberg Dep. Ex. 1 at 76:2-77:8.

46. FS Investments failed to provide the Transfer Title for inspection and signature by Mr. Haddon. Strusberg Dep. Ex. 1 at 80:12-81:8; Dec. of Mr. Haddon, Ex. 2 at ¶ 25; FS Investment's Resp. to Pl.'s Req. for Admis. Ex. 4 at nos. 13-14.

47. At the time the Ford was sold, the Transfer Title was not held by a lender. Strusberg Dep. Ex. 1 at 82:22-83:1.

48. At the time the Ford was sold, the Transfer Title was not lost and in the process of being replaced. Strusberg Dep. Ex. 1 at 83:2-4.

49. FS Investments is unable to explain why an unsecure power of attorney was utilized. Strusberg Dep. Ex. 1 at 83:5-8.

50. An agent or employee by the name of "Betty" signed the Transfer Title on behalf of Franklyn Strusberg in connection with the mileage disclosures provided to Mr. Haddon. 79:14-18.

51. Betty acted with FS Investment's authority when completing the title transfers. Strusberg Dep. Ex. 1 at 147:22-25.

52. The mileage reading is inaccurate on the Ford. Strusberg Dep. Ex. 1 at 82:24-83:1, 84:8-10, 90:24-91:2; Expert Witness Report of Stuart Raskin, Ex. 11 at ¶ IV; Transfer Title Ex. 9, "FSIA 000020."

53. The mileage disclosures provided by FS Investments to Mr. Haddon were inaccurate. Strusberg Dep. Ex. 1 at 90:24-91:2; Expert Witness Report of Stuart Raskin, Ex. 11 at ¶ IV; Transfer Title Ex. 9, "FSIA 000020"; Texas Title History, Ex. 10 at pg. 4.

54. An inaccurate odometer reading negatively impacts a vehicle's value. 18:16-20. Expert Witness Report of Stuart Raskin, Ex. 11 at ¶ VI.

55. A vehicle with an impaired odometer reading is worth less than the same vehicle with an accurate reading. Strusberg Dep. Ex. 1 at 18:22-25.

56. The diminution of value attributable to the impaired odometer reading is $5,500. Expert Witness Report of Stuart Raskin, Ex. 11 at ¶¶ VI & VII.

57. Had FS Investments provided Mr. Haddon with the Transfer Title, he would have discovered that the mileage was "201150" as of March 06, 2019 and opted to not purchase the Ford. Dec. of Mr. Haddon, Ex. 2 at ¶ 26.

58. After purchasing the Ford, Mr. Haddon experienced unexpected mechanical difficulties. Dec. of Mr. Haddon, Ex. 2 at ¶¶ 17 & 21; Quality Care Automotive Center Invoice, Ex. 11.

59. On August 14, 2020, the Ford was delivered to Quality Care Automotive Center in Lutz, Florida to have the turbocharger replaced after it failed. Dec. of Mr. Haddon, Ex. 2 at ¶ 18; Quality Care Automotive Center Invoice, Ex. 11.

60. From the time of the purchase in May of 2020 and the date the Ford was delivered for repairs on August 21, 2020, the Ford was only driven 1,205 miles. Dec. of Mr. Haddon, Ex. 2 at ¶ 19; Quality Care Automotive Center Invoice, Ex. 11.

61. The cost of the repair was $1,720.47. Dec. of Mr. Haddon, Ex. 2 at ¶ 20; Quality Care Automotive Center Invoice, Ex. 11.

62. Mr. Haddon did not anticipate such a costly repair would be required for the Ford given FS Investment's representations that the Ford's mileage was 131,636. Dec. of Mr. Haddon, Ex. 2 at ¶ 21.

63. Mr. Haddon attempted to sell the Ford in May of 2022. Dec. of Mr. Haddon, Ex. 2 at ¶ 22.

64. A potential buyer alerted him to a mileage discrepancy on the Ford's CarFax in May of 2022. This was the first instance he found out that the mileage disclosures for the Ford may have been inaccurate. Dec. of Mr. Haddon, Ex. 2 at ¶ 23.

65. Mr. Haddon paid $3,532.72 more than he should have as and for the finance charges. Dec. of Mr. Haddon, Ex. 2 at ¶ 29.

66. Mr. Haddon paid $212.82 more than he should have as and for the taxes assessed on the purchase of the Ford. Dec. of Mr. Haddon, Ex. 2 at ¶¶ 30.

67. Mr. Haddon needlessly wasted time repairing the Ford. Dec. of Mr. Haddon, Ex. 2 at ¶ 32.

68. Mr. Haddon needlessly wasted time investigating the mileage discrepancy. Dec. of Mr. Haddon, Ex. 2 at ¶ 31.

69. Defendant did not obtain a CarFax report for the Ford. Strusberg Dep. Ex. 1 at 96:21-97:8.

Respectfully submitted on Monday, 7 October 2024, by:

*/s/ Joshua Feygin*
Joshua Feygin, Esq.
FLORIDA BAR NO: 124685
Email:  Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison Street, Suite 208 F
Hollywood, FL 33020
Telephone: (954) 228-5674
Facsimile: (954) 697-0357

## CERTIFICATE OF SERVICE

I certify that on Monday, 7 October 2024, a copy of the foregoing was filed via the Court's Electronic Filing system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Joshua Feygin*
Joshua Feygin, Esq.
FLORIDA BAR NO: 124685