UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

GABRIEL LUC HADDON, an individual,

        Plaintiff,

vs.

FS INVESTMENTS OF AMERICA, INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a foreign corporation,

        Defendants.
_____/

Case No. 8:23-cv-00709

**FS INVESTMENTS OF AMERICA, INC.**, a Florida corporation,

        Third-Party Plaintiff,

vs.

**MCCOMBS WEST FORD, LLC**, d/b/a MCCOMBS FORD WEST, a foreign corporation,

        Third-Party Defendant.
_____/

## THIRD-PARTY PLAINTIFF FS INVESTMENTS OF AMERICA, INC.'S RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT FILED BY THIRD-PARTY DEFENDANT MCCOMBS WEST FORD, LLC

Third-party plaintiff, FS Investments of America, Inc. ("FS Investments" or "Powerhouse"), by and through the undersigned counsel, and Pursuant to Fed. R. Civ. P. 56, and Local Rule 3.01, hereby responds to the Motion for Summary Judgment

filed by third-party defendant, McCombs West Ford, LLC ("McCombs"), stating the following:

## I. INTRODUCTION

In its Motion for Summary Judgment, McCombs argues that the Court "need not look much further" than the deposition testimony of FS Investments' corporate representative to deem the claims of FS Investments meritless. McCombs contends that this testimony shows (a) no special relationship existed between the parties, (b) McCombs made no material misrepresentation to FS Investments, and (c) FS Investments did not rely on any misrepresentation of McCombs. However, McCombs omits material portions of FS Investments' testimony that demonstrate there exist genuine issues of material fact which preclude summary judgment. In addition, McCombs disregards the Assignment of Claim Agreement ("Assignment") between FS Investments and non-party Auto Deal Corp. ("Auto Deal"), which, as outlined below, confirms FS Investments' standing to bring McCombs into this action.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper if the depositions, affidavits, and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). However, when resolving the issues, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1140

(11th Cir. 2007). Courts may also "not weigh conflicting evidence or make credibility determinations of its own." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). Nonetheless, Courts should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018). "Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." *Furcron*, 843 F.3d 1303.

### B. Common Law Indemnity

A claim for common law indemnity is one that "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Florida Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 196 (Fla. 5th DCA 2015). Accordingly, to succeed on such a claim, the claimant must prove three elements: (i) that it is without fault; (ii) that the party from whom it is seeking indemnity is at fault; and (iii) that it is liable to the injured party only because it is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom it is seeking indemnity. *Florida Peninsula Ins. Co.*, 171 So. 3d 196. The term "special relationship" merely describes a relationship that gives rise to any of these kinds of liability. *Id*.

Of the terms "vicarious," "constructive," "derivative" and "technical" liability, "only 'vicarious liability' is a recognized term of art, and it is typically used to describe liability imposed by agency law." *Auto-Owners Ins. Co. v. Ace Elec. Serv.*, Inc., 648 F. Supp. 2d 1371, 1379 (M.D. Fla. 2009). The other three terms "are meant merely to capture the concept that the party seeking indemnity must be without fault." *Auto-Owners Ins. Co.*, 648 F. Supp. 2d 1379; *see also Florida Peninsula Ins. Co.*, 171 So. 3d 196–97; *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979) ("Although courts of this state have consistently premised the allowance of indemnity upon a special relationship between the primary defendant and the third-party defendant, confusion seems to have arisen over the use of the labels employed to designate the conduct of the parties which will permit the party seeking indemnity to recover. . . . Regardless of what specific terms are employed whether the courts say active-passive or primary-secondary what they are really speaking of is fault or no fault.").

### III. ARGUMENTS

**A. There is a Genuine Issue of Material Fact for the Jury on Whether FS Investments Stands in a Special Relationship with McCombs**

As threshold matter, whether a "special relationship" exists for a claim of common law indemnity is a question of fact for the jury. *See, e.g.*, *Tucker v. PACCAR, Inc.*, 2005 WL 8159641, at *2 (M.D. Fla. Sept. 1, 2005) ("Florida courts have also left to the province of juries the question whether a 'special relationship' exists between the parties"). Here, McCombs has requested a jury trial in its Answer and Affirmative

Defenses to FS Investments' Third-Party Complaint. (*See* Def.'s Answer and Affirmative Defenses [D.E. 48] at 5).

McCombs argues that it had no special relationship with FS Investments because they have had no business dealings. In support of this argument, McCombs relies heavily on the deposition testimony of FS Investments' director and corporate representative, Franklyn Strusberg, to show that Auto Deal purchased the Vehicle from McCombs and later sold it to FS Investments.[1]

However, by omitting certain deposition testimony of Mr. Strusberg, McCombs hides certain facts that demonstrate there exists a genuine issue of material fact for the jury. <u>First</u>, Mr. Strusberg testified that Auto Deal purchased the Vehicle through the Manheim account owned by FS Investments:

> Q. So, the Manheim account itself was under Auto Deal Corp.'s name?
>
> A. No. No. It's my Manheim account. I'm just added as a buyer on Auto Deal Corp.
>
> Q. Got it, but the Manheim account is you personally?
>
> A. Is mine, yeah, yeah. Yeah, FS Investments. Yes, it's my account.
>
> Q. Okay. And I know that you're here as a corporate rep, so when you say yours and FS Investment, you mean it's under the company name, right?
>
> A. Correct. Correct.
>
> Q. Not under Franklyn Strusberg?
>
> A. Correct, yes.

---

[1] "Vehicle" refers to the used 2012 Ford F-150 with VIN 1FTFW1ET2CFA12718 that is at issue in this case.

Page 5 of 11

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com

(Strusberg Dep. 104:25–105:13, 141:1–5) (breaks in speech omitted).[2]

*Second*, Mr. Strusberg testified that, in purchasing the Vehicle, he was acting on behalf of FS Investments and for FS Investments' benefit:

| | |
|---|---|
| Q. | Q. Okay. Would you say then that you were using the account for the benefit of Powerhouse? |
| A. | Yes. |
| Q. | Would you say that you were using the account as a representative of Powerhouse – |
| A. | Yes. |

(Strusberg Dep. 141:10–15; Santessi Decl. ¶ 5).[3]  According to Mr. Strusberg, he purchased the Vehicle with the intent that FS Investments would place it for sale on its lot, which is what occurred. (Strusberg Dep. 140:14–24; *see also* Santessi Decl. ¶ 4).

*Third*, when selling the Vehicle to plaintiff, Gabriel Haddon, FS Investments relied on the mileage disclosed by McCombs through Manheim's website. (*See* Strusberg Dep. 135:21–24; Finley Dep. 36:11–21).[4]

Therefore, a genuine issue of material fact exists as to whether FS Investments, as the owner of the Manheim account, on whose behalf Mr. Strusberg acted when purchasing the Vehicle, who relied on McCombs' mileage disclosure, and who sold the Vehicle to Mr. Haddon, had a "*special relationship*" with McCombs, as the vehicle's original seller and who disclosed the inaccurate mileage on which Mr. Haddon has

---

[2] A copy of the deposition transcript of FS Investments' corporate representative was filed with McCombs' Motion for Summary Judgment as **Exhibit A**.
[3] A copy of the Declaration of Martin Santessi, director of Auto Deal, is annexed hereto as **Exhibit 1**.
[4] A copy of the deposition transcript of Mr. Henry Finley, McCombs' general manager and corporate representative, is annexed hereto as **Exhibit 2**.

Page **6** of **11**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com

sued FS Investments. Accordingly, insofar as there is a genuine issue of material fact for the jury whether there was a special relationship between McCombs and FS Investments, granting McCombs' Motion for Summary Judgment would be premature.

### B. McCombs Made a Material Misrepresentation to FS Investments on Which FS Investments Relied

By referring to the following deposition testimony of Mr. Strusberg, McCombs claims that it made no material misrepresentation to FS Investments on which FS Investments relied:

> Q. So, when you purchased this vehicle, what representations did McCombs Ford tell you about the vehicle?
> 
> A. No, I never get to speak with the seller. I buy. . . the car through Manheim, and I bought it based on the information that I saw.
> 
> \*   \*   \*
> 
> Q. So, over here, it states that you relied upon the information provided by McCombs. What information was provided by McCombs?
> 
> A. The Bill of Sale.
> 
> Q. That was the only information you received from McCombs?
> 
> A. Correct.

(Strusberg Dep. 36:11–16, 97:17–23).

However, Mr. Strusberg's statement, "I buy. . . the car through Manheim, and I bought it based _on the information that I saw_[,]" refers to the mileage of the Vehicle that McCombs disclosed to the public through the Manheim's website, which is the same inaccurate mileage on which Mr. Haddon has sued FS Investments. In its deposition

Page **7** of **11**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  **ArmstrongTeasdale.com**

testimony, FS Investments confirmed that it obtained the mileage from Manheim's website:

> Q. . . . . Besides looking at the vehicle's dashboard, did Powerhouse obtain the mileage of the vehicle by looking at the Manheim website?
>
> A. Yes.

(Strusberg Dep. 135:21–24). And McCombs' general manager and corporate representative, M. Henry Finley, confirmed that it was McCombs who provided the mileage through Manheim's website:

> Q. . . . . To your knowledge, do you know what mileage McCombs *represented through Manheim* as to the F150?
>
> A. Yeah, it was 131,000 miles and some change is the -- I don't remember the exact change, but it was one 131 -- maybe 131.6, maybe. You know, 131,600 and something.
>
> Q. Well, you're close. Was it 131,628? Do you recall?
>
> A. I recall it was probably pretty close to that.

(Finley Dep. 36:11–21) (emphasis added).[5]

Moreover, the Bill of Sale shows the allegedly incorrect mileage on which Mr. Haddon has filed suit against FS Investments.[6] That FS Investments relied on the Bill of Sale from McCombs defeats rather than support McCombs' argument. As stated on the Bill of Sale, McCombs "is the transferor of the vehicle and is responsible for all disclosures, including odometer and mileage." (*See* Ex. 3 (Bill of Sale)).

---

[5] For a short description on how information is shared between sellers and buyers through Manheim, see Strusberg Dep. 137:6–138:21.
[6] A copy of the Bill of Sale is annexed hereto as **Exhibit 3**.

Page **8** of **11**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com

Therefore, contrary to McCombs' assertion, the parties' deposition testimony demonstrates that McCombs made a material misrepresentation upon which FS Investments relied.

### C. FS Investments Has Standing to Pursue Its Claims Against McCombs Pursuant to Its Assignment of Claim Agreement with Auto Deal

As threshold matter, common law indemnity claims, and the claims asserted thereby, are assignable. *See, e.g.*, *Diplomat Properties Ltd. P'ship v. Tecnoglass, LLC*, 114 So. 3d 357 (Fla. 4th DCA 2013) (finding that plaintiff, standing in the shoes of an assignor, may maintain its claim for common law indemnity); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick*, 742 So. 2d 328, 330 (Fla. 3d DCA 1999), approved, 765 So. 2d 36 (Fla. 2000) ("A cause of action, which is not based on a personal tort such as malpractice, may be assigned.").

Here, pursuant to its Assignment of Claim Agreement (the "Assignment") with Auto Deal, FS Investments has standing to pursue its common law indemnity and negligent misrepresentation claims against McCombs. The Assignment states that Auto Deal "irrevocably assigns and remits to [FS Investments], and [FS Investments] hereby assumes from [Auto Deal], all of [Auto Deal's] right, title and interest in any claim that [Auto Deal] may have arising out of the purchase and sale of the Vehicle." As for consideration, the Assignment states that "[i]n consideration of [Auto Deal's] assignment of the Claim to [FS Investments], contemporaneously with the execution

Page **9** of **11**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605 **ArmstrongTeasdale.com**

and delivery of this Agreement by each of the parties hereto, [FS Investments] shall execute a General Release for the benefit of [Auto Deal]."[7]

McCombs asserts that it sold the Vehicle to Auto Deal, who then sold it to FS Investments. Auto Deal claims it relied on the mileage provided by McCombs when purchasing the Vehicle, and that it shared this mileage with FS Investments. (Santessi Decl. ¶¶ 7–9 and 10). Therefore, based on McCombs' account of events, McCombs misrepresented the mileage of the Vehicle to Auto Deal, who passed this misrepresentation to FS Investments. As a result, FS Investments has valid claims for common law indemnity and negligent misrepresentation against Auto Deal, and Auto Deal holds similar claims against McCombs. Accordingly, Auto Deal properly assigned its right to hold McCombs liable for the mileage misrepresentation in exchange for FS Investments releasing any claims against Auto Deal for misrepresenting the Vehicle's mileage.

## IV.   CONCLUSION

WHEREFORE, third-party plaintiff, FS Investments of America, Inc., respectfully requests that the Court enter an order denying the Motion for Summary Judgment filed by third-party defendant, McCombs West Ford, LLC, and granting any other relief that the Court deems just and proper.

Dated October 25, 2024.

Respectfully submitted,

---

[7] A copy of the Assignment is annexed hereto as **Exhibit 4**. FS Investments invited McCombs to participate in the negotiations leading to the Assignment, but McCombs declined to attend.

Page **10** of **11**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com

**ARMSTRONG TEASDALE LLP**
*Counsel for FS Investments of America, Inc.*
355 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Telephone: (786) 822-3700
Telecopier: (305) 675-3605

By: /s/ *Jose A. Peralta, Esq.*
   Keith D. Silverstein, Esq.
   Fla. Bar No. 086820
   ksilverstein@atllp.com
   Jose A. Peralta, Esq.
   Fla. Bar No. 1028554
   jperalta@atllp.com
   **FOR SERVICE:**
   miamiefiling@atllp.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served to every counsel of record via transmission of notices of electronic filing generated by CM/ECF on October 25, 2024.

   /s/ *Jose A. Peralta*
   Jose A. Peralta, Esq.