## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

GABRIEL LUC HADDON,

        Plaintiff,

vs.

FS INVESTMENTS OF AMERICA, INC., and WESTLAKE SERVICES, LLC,

        Defendants.

_____/

Case No. 8:23-cv-00709

### DEFENDANT FS INVESTMENTS OF AMERICA, INC.'S RESPONSE TO PLAINTIFF GABRIEL LUC HADDON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, FS Investments of America, Inc. ("Defendant" or "Powerhouse"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 56, Local Rule 3.01, and this Court's Amended Case Management and Scheduling Order [D.E. 24] (the "CMO"), hereby responds to the *Motion for Partial Summary Judgment* [D.E. 73] filed by plaintiff, Gabriel Luc Haddon ("Plaintiff" or "Haddon"), stating the following:

### I.   SUMMARY

In his Motion for Partial Summary Judgment, Plaintiff attempts to show that Defendant violated the Odometer Act with intent to defraud. However, as demonstrated below, Plaintiff erroneously applies a negligence standard of liability and relies on facts and claims not alleged in the Complaint, which should therefore be disregarded by this Court. Additionally, Plaintiff relies on a declaration, expert report,

and other documents that constitute hearsay and lack authentication, and are therefore insufficient to support his Motion.

## II.   LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper if the depositions, declarations, and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, when resolving the issues, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Courts may also "not weigh conflicting evidence or make credibility determinations of its own." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). Courts should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." *Furcron*, 843 F.3d 1303.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

### B.  Civil Actions Under the Odometer Act

The purpose of the Vehicle Information and Cost Savings Act (the "Odometer Act") is "to prohibit tampering with motor vehicle odometers [and] to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b). To succeed on a claim for violation of this Act, a plaintiff must show "(1) that the defendant violated the Act or its regulations, (2) with intent to defraud." 49 U.S. Code § 32710(a); *see Snoody v. Savannah Motors, Inc.*, 2007 WL 9711140, at *12 (S.D. Ga. Jan. 26, 2007).[1]

"Intent to defraud" may be demonstrated by showing fraudulent intent or reckless disregard. *Id*. This standard is met by showing that the defendant "'knew or suspected' that its mileage disclosure was inaccurate."  *See, e.g.*, *Mulderink v. RSB Enterprises, Inc.*, 2012 WL 3151384, at *2 (N.D. Ill. Aug. 2, 2012); *Cf. Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("A 'reckless disregard' for the truth, however, requires more than a departure from reasonably prudent conduct. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. The standard is a subjective one—***there must be sufficient evidence to permit the conclusion that the defendant actually had a high degree of awareness of ... probable falsity***.")(emphasis added). Other courts have applied a gross negligence standard to determine a

---

[1] As the Odometer Act clearly conveys its purpose and requirements for a private civil action, this Court need not consider the three pages of "synopsis" and history regarding the Act in Plaintiff's Motion. *See, e.g.*, *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807 (7th Cir. 1988) (noting that "the plain language of the statute makes resort to the legislative history unnecessary[.]").

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com

defendant's "intent to defraud." *See, e.g.*, *Coleman v. Lazy Days RV Ctr., Inc.*, 2006 WL 2131303, at *4 (M.D. Fla. July 28, 2006). Gross negligence requires a showing of "(1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act or omission occurring in a manner which evinces a conscious disregard of the consequences." *Wilder v. JP Morgan Chase Bank, N.A.*, 2018 WL 5629922, at *6 (S.D. Fla. Oct. 30, 2018) (citations omitted but emphasis added).

"What is clear [is] that simple negligence—the failure to exercise reasonable care—is insufficient." *Mulderink*, 2012 WL 3151384, at *2; *See also Snoody*, 2007 WL 9711140, at *12 ("***mere negligence cannot be the basis of civil liability under the Odometer Act.***")(emphasis added). Therefore, defendants <u>do not</u> have an affirmative duty to exercise reasonable care in order to verify a vehicle's odometer accuracy prior to sale. *See, e.g.*, *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 804 (7th Cir. 1988) (rejecting the magistrate's determination that "there is an "affirmative duty [on automobile dealers] to use reasonable care in order to protect consumers against purchasing automobiles with odometers that have been tampered with[,]" which was based on Senate Report No. 413, "[b]ecause mere negligence cannot be the basis for civil liability under the Odometer Act.").[2]

---

[2] Senate Report No. 413 was printed in 1972 U.S. Code Cong. & Admin. News, 3960, 3971–72.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com

### C. <u>Summary Judgment Requirements of This Court</u>

Pursuant to the CMO, "[a] party's claims or defenses for which summary judgment is sought shall be presented in a single motion and incorporated memorandum of law which, absent prior permission of the Court, shall not exceed twenty-five (25) pages total." (CMO ¶ 7(a)). "A violation of any of these directives <u>will result</u> in the Court *sua sponte* striking the motion for summary judgment and incorporated memorandum without notice." (*Id.* ¶¶ 7(a)(g)) (emphasis added).

### III.   <u>ARGUMENTS</u>

In the Complaint, Plaintiff's claim that Defendant violated the Odometer Act rests solely on two allegations (the "Claimed Violations"): that Defendant (1) "made a false statement to [Plaintiff] in violation of 49 U.S.C. § 32705(a) and 49 C.F.R. § 580.4 with intent to defraud"; and (2) "failed to provide [Plaintiff] with the actual title certificate to transfer title for examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5."   (Compl. ¶¶ 52, 53).[3] In his Motion for Partial Summary Judgment, the claim rests on additional allegations not raised in the pleadings, such as Defendant violated the Act by (a) accepting an incomplete disclosure of "the penultimate seller," (b) using a power of attorney ("POA"), (c) using a POA that did not disclose the Vehicle's mileage, and (d) disclosing the milage in the "Title Application With/Without Registration" form (the "Title Application"). (Mot. Summ. J. at 10, 11, 14, 15). However, in the resolving the Motion, the Court should

---

[3] Plaintiff's Complaint [D.E. 1] was filed with this Response as **<u>Exhibit 1</u>**.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

consider only the Claimed Violations, as Defendant never consented to litigate others and Plaintiff has failed to seek leave to amend the Complaint. *See Moulton v. Prosper*, 2019 WL 4345674, at *10 (S.D. Fla. Sept. 12, 2019) ("[F]acts and theories not raised in the pleadings are not properly considered on motions for summary judgment."); *Williams v. Mallet*, 707 F. Supp. 3d 1340, 1356 (S.D. Fla. 2023) ("Courts in our Circuit thus routinely exclude evidence—and refuse to consider arguments—that weren't included in a party's pleadings."). Defendant addresses Plaintiff's additional arguments in the event that the Court finds them at issue, but otherwise objects to their submission.

### A.    <u>Defendant's Compliance with the Odometer Act</u>

Plaintiff alleges that Defendant violated the Odometer Act because the mileage disclosure "at the time of purchase were false." (Pl.'s Mot. Summ. J. at 7). Specifically, Plaintiff claims that Defendant falsely disclosed <u>131,636</u> as the mileage in the advertisement for the Vehicle, the Title Application, the "Bill of Sale," and the Retail Installment Sales Contract. (*Id.* at 6–8).[4]  Plaintiff relies solely on the Vehicle's certificate of title in asserting that the Vehicle's "actual" mileage is <u>201,150</u>. (*See id.* at 7).

However, the mileage that was disclosed (as compared to the "actual mileage") may be the result of human error, which has happened before. (*See, e.g.*, Finley Dep. 47:13–48:7 ("What I can tell you, and we've seen this before, somebody could have

---

[4] These claims are among the allegations that should not be considered by the Court, as they were not included in the Complaint.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com

fat-fingered and put different miles on it.")).[5] At the time of sale, the Vehicle odometer stated 131,636 miles; which mileage was consistent with the physical condition and appearance of the Vehicle, and there was no evidence of tampering or rollback. (*See, e.g.*, Haddon's Dep. ¶ 36:3–8; Finley's Dep. 70:3–22; Strusberg's Dep. 134:17–23; Strusberg's Decl. 14–17).[6] Therefore, the "actual" mileage of the Vehicle and whether Defendant falsely stated this mileage are clearly issues of fact for the jury.[7]  *See Perry-Anderson v. Howard Univ. Hosp.*, 192 F. Supp. 3d 136, 143 (D.D.C. 2016) ("[T]he weighing of the evidence, and the drawing of legitimate inferences from the facts[,] are jury functions, not those of a judge.") (citations omitted); *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022) ("The court does not weigh evidence but rather views the evidence in the light most favorable to the party opposing the motion.") (citations omitted).

Next, Plaintiff claims that Defendant violated the Odometer Act by "accept[ing] an incomplete disclosure given that the penultimate seller failed to disclose the mileage was inaccurate." (Mot. Summ. J. at 14, 15). Section 32705(a)(1) of the Odometer Act requires that a transferor disclose (a) "the cumulative mileage registered on the

---

[5] A copy of the deposition transcript of Mr. Henry Finley, general manager and corporate representative of third-party defendant McCombs West Ford, LLC, a Ford authorized dealership, was filed with this Response as **Exhibit 2**.

[6] A copy of the deposition transcript of plaintiff Gabriel Haddon was filed this Response as **Exhibit 3**. A copy of Mr. Strusberg's Declaration was filed with this Response as **Exhibit 4**. A copy of the deposition transcript of Mr. Franklyn Strusberg, director and corporate representative of Defendant, was filed with Plaintiff's Motion for Partial Summary Judgment.

[7] This case is scheduled for a jury trial.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605  ArmstrongTeasdale.com

odometer, and (b) "that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled." Section 32705(a)(3) states that "[a] person acquiring a motor vehicle for resale may not accept a written disclosure under this section unless it is complete." Here, the "penultimate seller" is non-party Auto Deal Corp. ("Auto Deal"), and in the Vehicle title, Auto Deal completed the mileage disclosure section. (See copy of Title).[8] Therefore, Defendant never accepted an incomplete disclosure. Additionally, the accuracy of Auto Deal's disclosure is immaterial, as requiring accuracy for completeness would impose an obligation on transferors and transferees not intended by the statute.

Plaintiff also claims that Defendant violated the Odometer Act by including the mileage of the Vehicle in the Title Application. (Mot. Summ. J. at 2, 10). **<u>First</u>**, the Odometer Act does not forbid such disclosure. **<u>Second</u>**, pursuant to Fla. Stat. § 319.23(1), an "[a]pplication for a certificate of title shall be made upon a form prescribed by the department. . . ." **<u>Third</u>**, pursuant to the Fla. Admin. Code R. 15C-21.001, "[a]ny person applying for a certificate of title to evidence ownership of a motor vehicle. . . must apply to the department on [form] HSMV 82040, Application for Certificate of Title With/Without Registration."[9] Here, the Title Application is

---

[8] A copy of the Certification of Title, as fully completed by Auto Deal and produced by Plaintiff, was filed with this Response as **<u>Exhibit 5</u>**.

[9] Defendant cites to the 2019 version of the Florida Administrative Code because this version was in effect at the time Plaintiff purchased the Vehicle.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

form HSMV 82040.   (See Ex. 6 of Mot. Summ. J.). Therefore, Defendant complied with both state and federal law.

Plaintiff further claims that Defendant violated the Odometer Act by not providing Plaintiff with a copy of the Title at the time of sale, using instead a POA to complete the mileage disclosure on the Title. (*Id*. at 6, 8, 10). However, as stated by Plaintiff, "a power of attorney may be utilized. . . if the transferor's title is physically held by a lienholder[.]" (Mot. Summ. J. at 10); *Coleman v. Lazy Days RV Ctr., Inc.*, 2006 WL 2131303, at *4 (M.D. Fla. July 28, 2006) (stating the same). Here, Auto Deal held the Title as security for the funds it advanced on behalf of Defendant in connection with the purchase of the Vehicle, and provided Defendant with the Title only after the debt was satisfied from the proceeds when Plaintiff purchased the Vehicle. (*See* Strusberg's Dep. 111:4–20, 126:21–128:4; Strusberg's Decl. ¶ 23). Accordingly, it was impossible for Defendant to have provided the Title to Plaintiff, and opted instead to use a POA.

Lastly, Plaintiff claims that Defendant violated the Odometer Act by failing to disclose the Vehicle's mileage in the POA and by using this POA to sign the Title as both transferor and transferee.[10] (Mot. Summ. J. at 11). Even if these claims are true, Plaintiff must demonstrate that Defendant acted with intent to defraud regarding the Vehicle's mileage, which at set forth below, he fails to do.

---

[10] Defendant's use of a POA to sign as the transferor and transferee is yet another claim absent from the Complaint that should not be considered by this Court.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 T. 786.822.3700 F. 305.675.3605 ArmstrongTeasdale.com

## B.    Defendant Did Not Act with Intent to Defraud Plaintiff

Even if this Court finds that Defendant failed to disclosed the correct mileage of the Vehicle, or failed to provide the Title to Plaintiff at the time of sale, before it can hold Defendant liable, it must also find that Defendant acted with intent to defraud Plaintiff regarding the mileage.[11]   49 U.S.C.A. § 32710(a); *Fowler v. Elegant Auto Fin. LLC*, 446 F. Supp. 3d 966, 969 (M.D. Fla. 2020).

In the Complaint, Plaintiff alleged that Defendant acted with intend to defraud because it had "actual and constructive notice that the Vehicle's mileage was in excess of 131,636" (the "Claimed Intent"). (Compl. ¶ 36). However, in his Motion for Partial Summary Judgment, Plaintiff changed his argument, asserting instead that Defendant willfully ignored the truth. (*See, e.g.*, Mot. Summ. J. at 17). For the same reasons that the Court should consider only the Claimed Violations, it should also limit its consideration to the Claimed Intent. In the event that the Court finds them at issue, Defendant addresses Plaintiff's additional arguments below, but otherwise objects to their admission.

Plaintiff seeks to demonstrate Defendant's intent to defraud by arguing that Defendant neglected to "take basic steps to investigate the accuracy of the odometer," such as performing a diagnostic evaluation of the Vehicle, requesting an inspection from non-party Manheim, or purchasing CarFax or AutoCheck reports. (*Id*. at 12–14). Plaintiff alleges that Defendant acted with intent to defraud by not having the Title at

---

[11] Intent to defraud is also required for liability under the additional violations alleged in Plaintiff's Motion for Partial Summary Judgment that were not included in the Complaint.

Armstrong Teasdale LLP **|** 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

the time of transfer, failing to inspect the face of the Title when disclosing the mileage therein, and routinely using a POA and not inspecting titles in other transactions. (*Id.* at 14–15). Plaintiff claims that the "law required Defendant to ensure the mileage representations it was making were accurate." (*Id.* at 13). However, Plaintiff's analysis erroneously relies upon a negligence standard of liability. (*See, e.g.*, *id.* at 12–13, 17 ("[H]ad Defendant exercised the reasonable care expected of it, it could have readily ascertained the mileage inaccuracy[.]")). As demonstrated in Section II.B. *supra*, there is no appliable duty of care requiring Defendant to verify the actual mileage of the Vehicle.

Under the applicable standard of fraudulent intent, gross negligence, or reckless disregard (the "Standards of Liability"), Plaintiff must show that Defendant knew, suspected, or should have known or suspected that its mileage disclosure was inaccurate, and either chose to disregard this knowledge or suspicion in its disclosures, or withheld the Title at the time of sale to conceal the truth from Plaintiff. Here, Defendant's actions do not rise to the level of intent to defraud.

**First**, as explained in Section III.A. *supra*, when Plaintiff purchased the Vehicle, Defendant could not have relied on the Title, as it was held by Auto Deal as the lender. Lenders retaining titles as security is a common industry practice, and in such cases, dealerships typically rely on a power of attorney to complete title disclosures.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

(Strusberg's Decl. ¶ 20–23).[12]   Defendant, like other similarly situated dealerships, routinely sell cars with titles held by floor plan lenders and, therefore, it is standard industry practice for dealerships to rely upon a POA. (*Id.*). Consequently, Defendant's use of a POA, and inability to rely on the Title, does not support Plaintiff's claim that it acted with fraudulent intent, gross negligence, or reckless disregard. *See Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180 (5th Cir. 1975) ("Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence."); *Baker v. S/S Cristobal*, 488 F.2d 331, 333 (5th Cir. 1974) ("[C]ompliance with the customs and practices of an industry is not in itself due care, but it is evidence of due care.") (citations omitted).

**<u>Second</u>**, Defendant routinely does not inspect titles because it outsources this work to a third-party, which a common practice in the use car sales industry. (*See* Strusberg's Dep. 75:10–77:8, 113:9–18, 141:18–142:2; Strusberg's Decl. ¶¶ 28, 29). During the 5 years of contracting title services, and having sold thousands of used vehicles, FS Investments knowns of only two (2) instances when the "actual mileage" was overlooked on the cover of the title.   I am also aware of zero (0) other instances from the several used car dealerships with whom I regularly confer. Therefore, based on FS Investments' experience, the probability that a third-party contractor will overlook the "actual mileage" on a certificate of title is diminimus. Defendant's lack

---

[12] Floor plan financing results in in increased consumer choice and competition, as well as dealers' access to a broad selection of used vehicles from major retailers through floor plan lenders. (Strusberg's Decl. ¶ 22).

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605 ArmstrongTeasdale.com

of direct title reviews by using contractors is not fraudulent intent, gross negligence, or reckless disregard.

**Third**, Defendant reasonably relied on the mileage disclosure provided by McCombs at the time of purchasing the Vehicle. (*See* Strusberg's Dep. 36:11–16, 97:17–23, 135:21–24; Finley's Dep. 36:11–21; Strusberg's Decl. ¶ 16). McCombs is a leading authorized Ford dealer that sells both new and used vehicles.[13]   While Defendant sells approximately 30 used vehicles per month, McCombs sells about 175 used vehicles and 200 to 210 new vehicles per month. (Strusberg's Dep. 16:23–24; Finley Dep. 9:22–10:5). Moreover, it is McCombs' standard operating procedure to check the CarFax or AutoCheck reports of each automobile in its possession — including the Vehicle. (Finley Dep. 19:17–22). The Vehicle is allegedly the **first one** sold by McCombs with a mileage discrepancy. (*See id*. 70:3–22). According to Mr. Finley, selling vehicles without accurately disclosing their mileage is simply something McCombs does not do. (*Id*. 70:3–22).

**Fourth**, McCombs completed a visual and drivability inspection by staff who "have been doing this for years upon years and years, so they know what they need to look at as far as inspecting a car and checking it for safety and drivability or whatnot." (Finley's Dep. 57:4–58:5). Defendant, through Mr. Strusberg and employee Alexander Reyes, inspected the Vehicle's interior, tire conditions, and drivability. (*See, e.g.*, Strusberg's Dep. 22:12–23:1, 23:21–24, 24:16–22, 39:4–17; Strusberg's Decl. ¶¶ 14,

---

[13]   *See* McCombs Ford West, *Why Buy from McCombs Ford West in San Antonio, TX*, mccombsfordwest.com/aboutus.aspx (last visited October 28, 2024).

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

16). Plaintiff inspected and test drove the Vehicle prior to purchase, and allegedly the Vehicle's turbocharger and muffler were repaired by a mechanic.[14] (*See* Haddon's Dep. 24:7–24:21, 25:7–9, 26:9–14, 40:3–17; Ex. 12 to Mot. Summ. J.; Strusberg Decl. ¶ 19). However, none of these inspections or repairs revealed or raised any suspicion that the Vehicle's odometer was incorrect. (*See* Finley's Dep. 70:3–22; Strusberg's Dep. 124:9 –17; Haddon's Dep. 11:21–12:20; Mot. Summ. J. at 3). Plaintiff allegedly discovered the mileage discrepancy only because a buyer told him to look at the CarFax report. (Haddon Dep. 11:21–12:20; Mot. Summ. J. at 3). Similar facts have demonstrated a defendant's lack of intent to defraud. *See Diersen v. Chicago Car Exch.*, 110 F.3d 481, 488 (7th Cir. 1997) (dealer's reliance on only seller's statements and its own inspection does not raise to intent to defraud given that non suggest that the mileage disclosure was inaccurate or erroneous); *Jones*, 848 F.2d 803, 804–05 (dealer's sole reliance on seller's mileage disclosure and inspection of the vehicle mechanical defects did not constitute intent to defraud); *see also* Mulderink, 2012 WL 3151384, at *1 (finding lack of intent to defraud despite seller's admissions that (i) the vehicle's odometer did not increase after being driven, (ii) at the time of the sale, the vehicle had more miles than the amount disclosed to buyer and seller did not know whether the mileage disclosed was the actual mileage, and (iii) prior to the sale, seller knew that the vehicle's odometer was not working properly).

---

[14] In 2012 F-150, the turbocharger is normally located near the engine, typically mounted on or integrated into the exhaust manifold. The turbocharger is positioned between the engine and the exhaust system, utilizing exhaust gases to spin the turbine, which then forces more air into the engine to increase power.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 T. 786.822.3700 F. 305.675.3605 ArmstrongTeasdale.com

**Fifth**, Plaintiff's claims that "[t]he little information Defendant did rely on showed that the condition of the [Vehicle] was 'below average' and it had a 'odometer problem.'" (Mot. Summ. J. at 17). However, Defendant did not rely on such information. When it purchased the Vehicle through Manheim, Manheim did not designate the Vehicle as "TMU" (True Mileage Unknown) through its announcement. Therefore, Defendant had no reason to consider reviewing the Insight Condition Report. (*See* Strusberg Dep. 36:17–37:23, 88:7–23; Strusberg Decl. ¶¶ 7–11). Moreover, based on experience, based on Mr. Strusberg's experience, a vehicle with a rating of 2.8 is usually vehicle in good condition for resale. (Strusberg's Dep. 35:3–4; Strusberg Decl. ¶ 12). Additionally, during Mr. Strusberg's 15 years in the industry, and having purchased over 10,000 used vehicles, the Vehicle is the only instance where he has encountered a mileage discrepancy after purchasing a vehicle from Manheim that was not designated as TMU. (Strusberg Decl. ¶ 13). Therefore, based on Mr. Strusberg's experience, the probability of encountering a mileage discrepancy when buying used cars from Manheim that are not designated as TMU is 0.01%, or approximately one (1) out of every 10,000 vehicle purchases. (*Id.*). Consequently, Defendant's reliance on Manheim's decision not to designate the Vehicle as TMU lacks fraudulent intent, gross negligence, or reckless disregard.

**Sixth**, Defendant and its title contractor obtained possession of the Title only *after* Plaintiff purchased the Vehicle. (*See* Strusberg Dep. 113:9–18; Strusberg Decl. ¶¶ 24, 28). Therefore, Plaintiff cannot reasonably assert that Defendant's failure to review the face of the Title served to defraud Plaintiff regarding the mileage. Furthermore, as

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605 ArmstrongTeasdale.com

the sale was complete and there was no reason to suspect a mileage discrepancy, Defendant had no reason to inspect the face of the Title before completing the mileage disclosure. (Strusberg Decl. ¶ 31). At most, Defendant's failure to inspect the Title is evidence of negligence, not fraudulent intent, gross negligence, or reckless disregard.

**Seventh**, Defendant did not fail to provide a copy of the Title to Plaintiff. Defendant took the responsibility to complete the transfer of Title for Plaintiff. (*Id*. ¶ 26). It is the usual and customary practice in the industry for car dealers to perform this service for both new and used car purchases to prevent delays in the event the customer fails to complete the title transfer after purchase. (*Id*. ¶¶ 26, 27). Moreover, Plaintiff never expected or requested a copy of the Title. (*See* Haddon Dep. 27:23–28:5).

### C. Plaintiff Is Not Entitled to Any Damages

Although Section C.2.b. of Plaintiff's Motion for Partial Summary Judgment is titled "Mr. Haddon is entitled to recover treble damages under the Act," Plaintiff does not seek any actual damages, only statutory damages. (Mot. Summ. J. at 17 –19, 25). Nevertheless, Plaintiff is not entitled to any damages. In support, Defendant reasserts and incorporates the arguments set forth in its Motion for Summary Judgment [D.E. 72].[15]

### D.   This Court Should Disregard Certain Portions of Plaintiff's Declaration

---

[15] It is evident that Plaintiff's mother, as the Vehicle's owner and the person who allegedly covered the repair costs, did not wish to sue. The next best option for opposing counsel to attempt fee recovery was Plaintiff.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

When a declaration contradicts deposition testimony without explanation, a court may disregard or strike it as a sham document. *See Faulk v. Volunteers of Am.*, 444 Fed. Appx. 316, 318 (11th Cir. 2011); *Bucklew v. Charter Communications, Inc.*, 82021 WL 1250772, at *1 (M.D. Fla. Apr. 5, 2021) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

In its Declaration, Plaintiff claims that it did not anticipate needing to repair the Vehicle, believing the mileage to be 131,636, and that it incurred repair expenses as well as the costs of purchasing and financing the Vehicle. (Haddon's Decl. ¶¶ 21, 29, 30). However, in deposition, Defendant testified that he expected the Vehicle would require repairs and that his mother exclusively covered all repair, purchase, and financing expenses. (Haddon Dep. 38:16-21, 39:10-13, 40:18-19, 40:20-25, 56:23-57:4, 60:12-18, 67:12-20).

In its Declaration, Plaintiff also claims that "Defendant failed to provide me with the Ford's title for inspection and signature." (Haddon's Decl. ¶ 25). However, in deposition, Defendant testified that he expected the title would be held by the finance company defendant Westlake Services, LLC, who would provide him with the title after paying the loan. (Haddon Dep. 27:23–28:5).

Therefore, in determining Plaintiff's Motion for Partial Summary Judgment, the Could should disregard paragraphs 21, 25, 29, and 30 of Plaintiff's Declaration.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605  ArmstrongTeasdale.com

### E.     The Should Disregard the Invoice from Quality Care and the Alleged Statement of the "Potential Buyer"

"On motions for summary judgment, a court may consider only that evidence which can be reduced to an admissible form." *Snover v. City of Starke, Florida*, 398 Fed. Appx. 445, 449 (11th Cir. 2010) (citations omitted). "Authentication is a "condition precedent to admissibility." *Id.* (citations omitted). Moreover, when a party objects to the admissibility of evidence, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Marine Diesel Repairs, LLC v. M/Y Dream On*, 596 F. Supp. 3d 1303, 1309 (S.D. Fla. 2022).

Plaintiff relied on a purported invoice from non-party Quality Care Automotive Center ("Quality Care") as evidence of the alleged "unexpected mechanical difficulties," turbocharger repair costs, and mileage accumulated after purchase. (Pl.'s SOF ¶¶ 58–60). However, this invoice constitutes inadmissible hearsay evidence, as it is intended to prove the matters asserted therein and no testimony or affidavit of Quality Care's record custodian authenticating it exist. The same limitations apply to Plaintiff's statement that "[a] potential buyer alerted me to a mileage discrepancy on the Ford's CarFax in May of 2022," as is a statement not made by Plaintiff and offered to prove the matter asserted. (Haddon Decl. ¶ 23; Haddon SOF ¶ 64); *see* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 901; Fed. R. Evid. 801(c).

### F.     The Should Disregard the Expert Report of Stuart Raskin

Armstrong Teasdale LLP **|** 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605  ArmstrongTeasdale.com

Plaintiff relied on the "Expert Witness Report of Stuart Raskin" to support the claim that the mileage reading on the Vehicle, as well as the mileage disclosed by Defendant, were inaccurate. (Pl.'s SOF ¶¶ 52, 53). Plaintiff further relied on this report to support the claim that an inaccurate odometer reading negatively impacts a vehicle's value, and that the "diminution of value attributable to the impaired odometer reading is $5,500." (*Id.* ¶¶ 54, 56). However, the report is not under oath or attested to under penalty of perjury. Further, Plaintiff did not submit any declaration, affidavit, or deposition testimony from Mr. Raskin to support his Motion for Partial Summary Judgment. Accordingly, the Expert Witness Report constitutes inadmissible evidence, which cannot support Plaintiff's Motion. *Compare with Bridges v. United States*, 2017 WL 3764244, at *2 (M.D. Fla. May 23, 2017) ("Plaintiff is not defending but seeking summary judgment and has provided no deposition testimony to support the unsworn expert reports. The Court agrees with [defendant] that the expert reports should be stricken; without support, the Court cannot rely on their content when considering summary judgment. Because Plaintiff fails to meet his evidentiary burden, his partial summary judgment motion is due to be denied.").

### G.   Plaintiff Failed to Comply with the CMO

Plaintiff's Motion for Partial Summary Judgment exceeds the 25-page limit mandated by the CMO, totaling 26 pages. Given Plaintiff's has disregarded this requirement, the Court should strike Plaintiff's Motion *sua sponte* as required by the CMO.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700  F. 305.675.3605  ArmstrongTeasdale.com

**H.**    **Plaintiff Is Not Entitled to Summary Judgment on Defendant's Affirmative Defenses No. 1 (Accord and Satisfaction), No. 4 (No Actual Damages) and No. 10 (No Intent to Defraud), and No. 11 (Estoppel)**

As demonstrated in Defendant's Motion for Summary Judgment [D.E. 72], which Defendant reasserts and incorporates herein, Plaintiff accepted Defendant's payment for the entirety of his alleged actual damages. Defendant provided this payment based on reasonable reliance on Plaintiff's material representation that it would satisfy Plaintiff's claim for actual damages. Nevertheless, Plaintiff continues to pursue actual damages without regard to Defendant's loss. These facts support Defendant's Affirmative Defenses No. 1 (Accord and Satisfaction), No. 4 (No Actual Damages), and No. 11 (Estoppel), while Plaintiff offers no evidence to the contrary. Additionally, as demonstrated in this Response, Defendant did not act with intent to defraud Plaintiff.

**I.**    **Plaintiff Is Not Entitled to Summary Judgment on Defendant's Affirmative Defense No. 2 (Statute of Limitations)**

Plaintiff's Declaration is the sole basis for his claim that he discovered the alleged mileage discrepancy in May 2022 when a potential buyer alerted him. (Mot. Summ. J. at 20; Pl.'s SOF 63, 34; Haddon's Decl. ¶ 23). This Declaration contradicts Plaintiff's deposition testimony, in which he could not recall the date of the potential buyer's notice. (Haddon's Dep. 11:21–24).[16]    However, Plaintiff provided no explanation or evidence that would explain his sudden recollection of the date.

---

[16] Plaintiff did not even remember the buyer's name, when it posted the Vehicle for sale, or when it first obtained the CarFax report. (Haddon Dep. 13:8–15:8).

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

Therefore, Plaintiff's Declaration is insufficient for this Court to grant summary judgment on Defendant's Affirmative Defense No. 2 (Statute of Limitations). *See Bryant v. U.S. Steel Corp.*, 428 Fed. Appx. 895, 897 (11th Cir. 2011) (approving the trial court's strike of plaintiff's affidavit as a sham because he failed to provide any explanation for the sudden recollection of the exact date he received a right-to-sue letter); *see also Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546, 558 (D. Del. 2013). The issue of when Plaintiff actually learned of the milage discrepancy should best to the jury.

## IV.  **CONCLUSION**

Plaintiff agrees that Defendant "did not know that Mr. Haddon would be defrauded," and the circumstances of the transaction do not suggest that Defendant should have any reason to suspect otherwise. (Mot. Summ. J. at 14). Accordingly, this Court should deny Plaintiff's Motion for Partial Summary Judgment.

**WHEREFORE**, defendant, FS Investments of America, Inc., respectfully requests that the Court enter an order denying the Motion for Partial Summary Judgment filed by plaintiff, Gabriel Haddon, and granting any other relief that the Court deems just and proper.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605   ArmstrongTeasdale.com

Dated <u>October 28, 2024</u>.

Respectfully submitted,

**ARMSTRONG TEASDALE LLP**
Counsel for FS Investments of America, Inc.
355 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Telephone: (786) 822-3700
Telecopier: (305) 675-3605

By: <u>*/s/ Keith D. Silverstein, Esq.*</u>
    Keith D. Silverstein, Esq.
    Fla. Bar No. 086820
    <u>ksilverstein@atllp.com</u>
    Jose A. Peralta, Esq.
    Fla. Bar No. 1028554
    <u>jperalta@atllp.com</u>
    **FOR SERVICE:**
    <u>miamiefiling@atllp.com</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>October 28, 2024</u>, a true and correct copy of the foregoing was served to every counsel of record fvia transmission of notices of electronic filing generated by CM/ECF.

    <u>*/s/ Keith D. Silverstein*</u>
    Keith D. Silverstein, Esq.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 786.822.3700 **F.** 305.675.3605 ArmstrongTeasdale.com