## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**GABRIEL LUC HADDON**, an
individual,

Case No. 8:23-cv-00709

Plaintiff,

vs.

**FS INVESTMENTS OF AMERICA,
INC.**, and WESTLAKE SERVICES,
LLC,

Defendants.

_____/

## DECLARATION OF FRANKLYN STRUSBERG IN SUPPORT OF DEFENDANT FS INVESTMENTS OF AMERICA, INC.'S RESPONSE TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF GABRIEL LUC HADDON

FRANKLYN STRUSBERG, under penalty of perjury, hereby declares the following:

1.     I am a director of FS Investments of America, Inc., the defendant in the above styled action ("FS Investments"), and I am authorized to provide this declaration on behalf of FS Investments.

2.     I make this declaration based on my personal knowledge and review of the files and business records maintained by FS Investments with regard to plaintiff, Gabriel Luc Haddon ("Plaintiff"), and the 2012 Ford F150 with VIN 1FTFW1ET2CFA12718 (the "Vehicle") that is the subject of this lawsuit.

3.     The files and business records of FS Investments are complete and correct, have been kept under my supervision and control, and were made at or near

Exhibit 4

the time of the events recorded in the records by or from information transmitted by a person with knowledge. These records are kept in the ordinary course of a regularly conducted business activity, and it is FS Investments' regular practice to keep such records.

4.     FS Investments has operated a used car dealership under the trade name "Powerhouse Automotive" for over five years. I have owned and overseen operation at FS Investments during this time.

5.     For more than 15 years, I have managed all aspects of several used car dealerships.

### A.     PURCHASING VEHICLES THROUGH MANHEIM

6.     FS Investments chooses to pay a premium when it purchases vehicles at auction by purchasing from only major retailers wholesalers such as Manheim and CarMax, rather than small independent wholesalers, in order to reduce (if not eliminate) the risk of a discrepancy in the mileage between the odometer and the title.

7.     Major retailers such as Manheim and CarMax sell used vehicles nationally through online auctions, and vehicles with a known or suspected mileage discrepancy are designated as "TMU" (true mileage unknown).

8.     FS Investments relies on the vehicle designation by Manheim when purchasing used vehicles.

9.     When a vehicle is designated as TMU, FS Investments either will not purchase the vehicle, or will investigate the Manheim's Insight Condition Report for more information before deciding whether to make the purchase.

ARMSTRONG TEASDALE, LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 T. 305.371.8809 F. 305.675.3605 ArmstrongTeasdale.com

10.     When a vehicle is not designated TMU (indicating a mileage discrepancy), FS Investment has no reason to consider an Insight Condition Report.

11.     Manheim includes its designations as comments or announcements on the listing of each vehicle.  The Vehicle at issue in this lawsuit did not have such designation.   (See Ex. 7 at 4 to Pl.'s Motion for Partial Summary Judgment). Therefore, FS Investment had no reason to consider reviewing the Insight Condition Report.

12.     However, although Manheim classifies a vehicle with a rating of 2.8 as below average, based on my professional experience, such vehicles are usually vehicles in good conditions for resale.

13.     Moreover, during my 15 years in the industry, and having purchased over 10,000 used vehicles, the Vehicle in this lawsuit is the only instance where I have encountered a mileage discrepancy after purchasing a vehicle from Manheim that was not designated as TMU.  I am also aware of zero other instances from the several used car dealership owners with whom I regularly confer. Therefore, based on my experience, the probability of encountering a mileage discrepancy when buying used cars from Manheim that is not designated as TMU is 0.01%, or approximately one (1) out of every 10,000 vehicle purchases.

B.     **INSPECTION OF VEHICLES PURCHASED FROM AUCTION**

14.     When purchasing vehicles from Manheim, I inspect each vehicle's drivability by test-driving it, and I conduct a visual inspection of the interior, including

Page **3** of 7

ARMSTRONG TEASDALE, LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 305.371.8809 **F.** 305.675.3605 ArmstrongTeasdale.com

the dashboard, in order to publish photos of the vehicle when advertising the vehicle for sale.

15.     I also rely on the vehicle description provided by Manheim and any additional information provided by the seller.

16.     Specifically, in this case, with respect to the Vehicle, I conducted the foregoing inspection and relied on the description provided by Manheim and information provided by the third-party defendant/seller, McCombs West Ford, LLC, with respect to the Vehicle.   A former employee of mine, Alexander Reyes, also visually inspected the Vehicle.

17.     Our inspection of the Vehicle did not reveal any indication that the mileage on the odometer of the Vehicle was incorrect.   Rather, I determined that the Vehicle was in good condition.   (A copy of photos of the Vehicle are annexed hereto as **Exhibit A**).

18.     Additionally, on or about May 25, 2020, after inspecting and test driving it, Plaintiff was satisfied with the performance of the Vehicle.

C.     **POSSESSION OF TITLES**

19.     Used car dealers such as FS Investments normally purchase vehicles at auction with financing through floor plan lenders.   These floor plan lenders require that they receive the title to the vehicle directly from the wholesaler (auction) to hold as collateral pending payoff at the time the vehicle is sold to the general public.

ARMSTRONG TEASDALE, LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 305.371.8809 **F.** 305.675.3605   ArmstrongTeasdale.com

20.     Once the vehicle is sold and the floor plan loan is paid, title is then sent from the floorplan finance company to the used car dealer.  That is when the dealer is first able to possess a physical copy of the title.[1]

21.     Floor plan financing results in in increased consumer choice and competition, as well as dealers' access to a broad selection of used vehicles from major retailers through floor plan lenders.

22.     Because lenders retain the title as security, used car dealers such as FS Investments commonly utilize a power of attorney to complete the transfer of title to customers.

23.     With respect to FS Investments' purchase of the Vehicle, Auto Deal acted as a floor plan lender because it financed Defendant's purchase of the Vehicle.  Auto Deal received the Vehicle's certificate of title ("Title") directly from Manheim, and provided it to FS Investments once the loan was paid with proceeds from the sale to Plaintiff.

24.     After receiving the title from floor plan lenders, FS Investments submits the title to the Florida Department of Highway Safety and Motor Vehicles on behalf of customer for processing, which is the steps it took with the Title.

---

[1] Floor plan financing is a specialized form of vehicle inventory financing that enables independent car dealerships to access the capital they need to purchase and stock their lots.  The floor plan lenders normally require that they receive the title to the vehicle directly from the wholesaler (auction) to hold as collateral pending payoff at the time the vehicle is sold to the general public.

ARMSTRONG TEASDALE, LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 305.371.8809 **F.** 305.675.3605 ArmstrongTeasdale.com

### D.    USE OF A CONTRACTOR FOR TITLE PROCEDURES

25.    FS Investments performs the service of completing the transfer of title on behalf of customers to prevent any delays in the process of recording the certificate of time, as many customers are unresponsive to dealers after the purchase of the vehicle.

26.    It is the usual and customary practice in the industry for car dealers to perform this service for both new and used car purchases.

27.    For the past five (5) years, FS Investments has contracted its title procedures to a third party.  This person collects the titles from FS Investments, completes them, and submits them to DMV.

28.    It is also a customary practice in the industry for used car dealers to contract title services to third parties.  In this case, a person named "Betty" completed the title procedure after Plaintiff purchased the Vehicle.

29.    During the 5 years of contracting title services, and having sold thousands of used vehicles, FS Investments knowns of only two (2) instances when the "actual mileage" was overlooked on the cover of the title.[2]  I am also aware of zero (0) other instances from the several used car dealerships with whom I regularly confer. Therefore, based on FS Investments' experience, the probability that a third-party contractor will overlook the "actual mileage" on a certificate of title is *diminimus*.

---

[2] Including the Vehicle.

ARMSTRONG TEASDALE, LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134 **T.** 305.371.8809 **F.** 305.675.3605 ArmstrongTeasdale.com

30.     Additionally, after the sale to Plaintiff was complete, and there was no reason to suspect a mileage discrepancy, FS Investments had no reason to inspect the face of the Title before completing the mileage disclosure.

**E.    NO INTENT TO DEFRAUD**

31.     FS Investments never knew or suspected that there was a mileage discrepancy between the Vehicle's odometer and Title.

32.     The Vehicle never exhibits conditions that would indicate that such discrepancy existed.

33.     Although it was later discovered that there was a mileage discrepancy between the Vehicle's odometer and Title, there was no physical or other evidence that the odometer had been tampered or rolled back.

***UNDER PENALTY OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING AND THE SAME IS TRUE AND CORRECT.***

Date:   October 28, 2024               By _____

                                               Franklyn Strusberg



Exhibit A











