UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No.: 8:23-cv-00709-WFJ-SPF

GABRIEL LUC HADDON,
an individual,

      Plaintiff,

vs.

FS INVESTMENTS OF
AMERICA INC., d/b/a
POWERHOUSE
AUTOMOTIVE,
a Florida Corporation, and
WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL SERVICES,
A Foreign corporation,

      Defendants.
_____/

**SUPPLEMENTAL DECLARATION OF PLAINTIFF
IN SUPPORT OF PLAINTIFF'S RESPONSE TO
<u>MOTION FOR SUMMARY JUDGMENT</u>**

      THE UNDERSIGNED, GABRIEL LUC HADDON, hereby declares pursuant to 28 U.S.C. §1746, as follows:

    1.    I am the named plaintiff in the above-referenced lawsuit.

    2.    I make this affidavit based on my personal knowledge.

    3.    At the time of purchase, the Ford was not in good condition. Specifically, I observed that the following points of damage:

        a.    The front bumper had a dent;

        b.    Dents present in the left front door and fender;

    c.    The right front door was dented;

    d.    Chip and dent present in the left rear door;

    e.    The tailgate was scratched and had dents;

    f.    The right rear corner was scratched;

    g.    The right headlight had a crack;

    h.    The inside of the truck bed was scratched excessively and rusty;

    i.    The center console cover was very worn;

    j.    The drive's seat was considerably worn;

    k.    The plastic trim to the driver's seat was cracked;

    l.    The passenger front seat cushion was ripped;

4.    Ultimately, I decided to try and sell the vehicle because I could not afford the expenses associated with the vehicle, such as the gas mileage and the risk of additional costly repairs.

5.    I attempted to sell the Ford for its fair market value of $18,000 at the time of its sale based upon my personal review of comparable listings but was unable to do so because of the mileage discrepancy.

6.    Some prospective buyers refused to provide any offers for the vehicle because of the impaired mileage and the offers I received were for around $1,000.00 because of the impaired mileage reading on the vehicle.

7.    If I had known the truth about the Ford's impaired odometer reading and my inability to sell the Ford for fair value because of the impairment, I would never have agreed to purchase it.

8. I attempted to sell the Ford over the span of two months.

9. My efforts to sell the Ford included researching the vehicle's value, marketing the vehicle on Facebook Marketplace, responding to inquiries by potential buyers, and showing the vehicle to potential buyers.

10. In total, I spent approximately 100 hours attempting to sell the Ford over the span of two months.

11. Despite all of this effort, I could not sell the Ford because nobody was willing to pay me fair value because of the mileage discrepancy.

12. In addition to the time I spent trying to sell the Ford, I also had to spend time to have the Ford repaired within months of its purchase when the turbocharger failed.

13. In furtherance of the repairs, I spent approximately an hour traveling to the repair shop.

14. I spent approximately six hours dealing with the repairs to the Ford. This included consulting with the repair shop regarding their diagnostic evaluation and proposed course of action to repair the vehicle, completing my own due diligence into the repairs that were recommended, and completing a price comparison online for the turbocharger assembly, among other tasks.

15. Prior to retaining my counsel, I also spent approximately 10 hours researching my rights online through Google.

16. As a result of the Defendant's violation of the Odometer Act, I seek an award of $10,000 as and for my statutory damages together with my reasonable

attorney's fees and costs.

17. Prior to filing suit, I authorized my attorney to issue a pre-suit demand letter seeking $8,799.20 to resolve my claim for damages arising under Florida's Deceptive and Unfair Trade Practices Act.

18. I likewise authorized my attorney to issue a pre-suit demand letter seeking $10,000 as and for my statutory damages under the Odometer Act to resolve that claim without the need for litigation.

19. I never agreed to compromise all of my claims for $8,799.20 nor did I intend to resolve all of my claims for $8,799.20.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

EXECUTED: 10/07/2024

_____
GABRIEL LUC HADDON