UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

GABRIEL LUC HADDON,             Case No. 8:23-cv-00709-WFJ-SPF

    Plaintiff,

vs.

FS INVESTMENTS OF AMERICA, INC., and et al.,

    Defendants.
_____/

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO ITS MOTION FOR SUMMARY JUDGMENT

Defendant, FS Investments of America, Inc. ("Defendant"), by and through the undersigned counsel, hereby replies to the Response to its Motion for Summary Judgment [D.E. 87] ("Response") filed by plaintiff, Gabriel Luc Haddon ("Plaintiff"):

### I. SUMMARY OF ARGUMENTS

By presenting contradictory testimony and raising new issues of wasted time, Plaintiff attempts to conjure an injury in fact and factual issues in an effort to overcome Defendant's Motion for Summary Judgment [D.E. 72] ("Defendant's Motion"). As demonstrated below, the Court should not be swayed by these tactics.

### II. ARGUMENTS

#### A. Defendant Complied with Rule 56(a)

Defendant clearly sought summary judgment on all counts in the Complaint by demonstrating that Plaintiff lacks standing and the ability to establish the damage

element of its claims. (See Def.'s Mot. §§ I, II at ¶ 19). Thus, Defendant complied with Rule 56(a).[1]

## B. **Plaintiff Failed to Establish that He Suffered an Injury In Fact**

Plaintiff claims an injury in fact "in the form of the diminished value of the Ford and unrealized gain from its sale." (Response at 4). However, Plaintiff concedes that this claim has been resolved.[2] Next, as Plaintiff has already been compensated for the alleged diminution in value, Plaintiff may monetize the Ford's current fair market value (the value obtainable through a public sale) by selling it with the actual mileage. Finally, Plaintiff's reliance on his own conjecture and conclusory statements, with no direct or circumstantial evidence, to allege that the mileage discrepancy prevented the sale of the Ford is insufficient.[3] *See Sec. & Exch. Comm'n v. Aly*, 2018 WL 1581986, at *9 (S.D.N.Y. Mar. 27, 2018) ("[A] nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment.") (citations omitted); *see also Carter v. Florida Auto. Services LLC*, 2014 WL 3385048, at *4 (M.D. Fla. July 10, 2014).

---

[1] Additionally, any uncertainty regarding which of Plaintiff's claims were the subject of Defendant's Motion has been clarified in this Reply.

[2] *See* Response at 8, 16 ("It is evident that the funds were tendered in settlement of Mr. Haddon's FDUTPA claim," which he alleges sought the diminution in value); *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), 594 U.S. 413, 431 (2021) ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation.").

[3] Notably, if Plaintiff first became aware of the Ford's mileage discrepancy only after listing it for sale and communicating with multiple buyers, then he must have posted the Ford with the odometer's stated mileage. Thus, the mileage discrepancy could not have caused the Ford's lack of sale.

Plaintiff claims standing because he allegedly has "ownership of and a possessory interest in the Ford [as he] is named as a co-borrower on the loan. . . and . . . as an owner on the Ford's title." (Pl.'s Response at 4). **First**, the "loan" is nonexistent as it was paid off.[4] **Second**, while Plaintiff appears on the title to the Ford, mere ownership does not correlate to injury in fact.[5] **Third**, to claim that "[i]n all respects, the Ford was his property," Plaintiff cites to his mother's declaration, which states, "it was always my intention that the Ford would belong to my son. . . . I did not intend to retain any interest in the Ford. As such, the Ford is his vehicle." (*Id*. at 5). As a complete contradiction to Plaintiff's testimony conveniently made when the Response was filed, this testimony should be dismissed as a sham. *See Walker v. Carter*, 210 F. Supp. 3d 487, 502–03 (S.D.N.Y. 2016). Additionally, the declaration expresses his mother's <u>past</u> intentions but does not explain why the Ford <u>now</u> belongs to Plaintiff, especially given his contrary testimony.

In a desperate attempt to demonstrate injury in fact, Plaintiff now claims that he spent "approximately 100 hours attempting to sell the Ford over the span of two months," "approximately an hour traveling to the repair shop," "approximately six hours dealing with the repairs to the Ford," and "approximately 10 hours researching my rights online through Google." (Pl.'s Response at 6). **First**, because Plaintiff raised

---

[4] See history of loan payments and the ACH authorization form of Plaintiff's mother annexed as **Exhibit 2**.

[5] The two cases Plaintiff cites to support his argument acknowledge an injury <u>in addition to</u> the party's ownership interest. (Pl.'s Response at 4).

the issue of wasted time for the first time at summary judgment, and his actions were voluntary or not caused by Defendant, he is precluded from relying on it. *See Van Cleve v. Ross*, 2021 WL 4775269, at *6 (S.D. Fla. Oct. 13, 2021), aff'd sub nom. *Van Cleve v. U.S. Sec'y of Commerce*, 2022 WL 1640669 (11th Cir. May 24, 2022). **Second**, Plaintiff's testimony regarding wasted time should be dismissed as a sham, as he fails to explain how he can now quantify his wasted time when, during his deposition, he could not recall, *inter alia*, how long he advertised the Ford for sale, the number of buyers he contacted, when he learned of the mileage discrepancy, or who alerted him. (Haddon's Dep. 11:21–12:3, 13:3–14:4, 15:1–22).[6] **Third**, the prejudice to Defendant from Plaintiff's ambush with his wasted time argument could only be remedied by allowing Defendant to conduct discovery on the matter, which would cause further delay and expenditure of resources.[7]

### C.  Defendant Satisfied Plaintiff's Claim for Actual and Economic Damages

Plaintiff claims that he "paid more in finance charges and taxes on the Ford than was actually due" by citing to his mother's declaration, which states that "[she] made the monthly installment payments for the benefit of, and on behalf of, [her] son."

---

[6] *See Mack v. California Dep't of Corr. & Rehab.*, 790 Fed. Appx. 846, 848 (9th Cir. 2019). The transcript of Plaintiff's deposition was filed with Defendant's Motion. Notably, Plaintiff found no documents related to his attempts to sale the Ford in response to Defendant's Third Request for Production. (A copy of Pl.'s response to the request is annexed as **Exhibit 1**).

[7] Plaintiff's allegation that "[u]ltimately, I decided to try and sell the Ford because I could not afford the expenses associated with the Ford, such as the gas mileage *and the risk of additional costly repairs*." (Haddon Supp. Dec. ¶ 7) (emphasis added) is another contradictory testimony without explanation that should be dismissed as a sham. (See Haddon's Dep. 12:4–11).

(Pl.'s Response at 11). However, even if Plaintiff's mother intended to act on Plaintiff's behalf and for his benefit, as a party to the RISC, making the financing payments was in her interest as a debtor reducing her own debt.[8] Moreover, his mother's declaration does not change the fact that she, not Plaintiff, incurred the costs for which Plaintiff has no obligation to repay.

Plaintiff now asserts that he owes his mother for the alleged cost of repairing the Ford's turbocharger by referring to her declaration, which states, "I expected my son to repay me [$1,720.47] for this repair. To this day, my son owes me for this amount and I still expect repayment of this amount[.]" (Pl.'s Response at 11).[9] Plaintiff's expert, however, concluded that the Ford's value diminished by $5,500.00 due to the mileage discrepancy. (D.E. 73–25). Thus, by paying Plaintiff $8,799.20, Defendant covered the alleged repair cost and left Plaintiff with an additional $1,578.73.[10]

Courts may also disregard testimony under the sham-issue-of-fact doctrine "where a party submits contradictory evidence from non-party witnesses to defeat summary judgment." *Walker v. Carter*, 210 F. Supp. 3d 487, 502–03 (S.D.N.Y. 2016). "Application of this doctrine to non-parties may be particularly appropriate where the

---

[8] "RISC" refers to the Retail Installment Contract and Security Agreement between the parties.

[9] The Court should disregard the alleged invoice from Quality Care, as well as any other hearsay statements in the mother's declaration and Plaintiff's Supplemental Declaration, for the reasons set forth in Sec. III.E. of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment [D.E. 78] ("Defendant's Response"), which reasons are incorporate herein.

[10] Defendant does not waive the argument that the Court should disregard the report of Stuart Raskin as set forth in Defendant's Response Sec. III.F., which argument is incorporate herein. Should the Court disregard the report, Defendant contends that Plaintiff has failed to establish the total diminution in value and, therefore, cannot claim it as a damage.

non-party has a familial or other close relationship with the plaintiff that suggests [the plaintiff] could influence [the non-party's] testimony." (*Id*.). Given (i) the close relationship between Plaintiff and his mother, (ii) his mother's natural interest in Plaintiff's success in this case, (iii) the timing of her testimony, which appeared when Plaintiff required support for the Response, (iv) the clear contradiction between Plaintiff's deposition and the declaration of his mother, and (v) her lack of explanation for now seeking reimbursement for her alleged payments, the Court should disregard the testimony of Plaintiff's mother's as a sham. (*See id*). Based on these factors, the Court should also dismiss as a sham her testimony regarding the financing payments and Plaintiff's ownership of the Ford.

Accordingly, no matter how Plaintiff frames it, his mother alone incurred the all alleged costs, and his knowing acceptance of payment from Defendant for his alleged actual damages led to the satisfaction of the alleged diminution in value and the repair cost, which he did not incur or owe.

### D.     **Plaintiff is Not Entitled to Statutory Damages under the Odometer Act**

In the Response and his Motion for Partial Summary Judgment, Plaintiff seeks only the statutory minimum under the Odometer Act. While this amount may be available without proof of actual damages, Plaintiff is not entitled to it. He has failed to demonstrate that Defendant violated the Odometer Act with intent to defraud, as detailed in Defendant's Response to Plaintiff's Motion for Partial Summary Judgment [D.E. 78], incorporated herein to the extent relevant.

## III. CONCLUSION

WHEREFORE, defendant, FS Investments of America, Inc., respectfully requests that the Court enter an order granting its Motion for Summary Judgment and any other relief that the Court deems just and proper.

Dated <u>November 11, 2024</u>.

*Respectfully submitted,*

**ARMSTRONG TEASDALE LLP**
*Counsel for Defendant*
355 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Telephone: (786) 822-3700
Telecopier: (305) 675-3605

By: <u>*/s/ Jose A. Peralta, Esq.*</u>
Keith D. Silverstein, Esq.
Fla. Bar No. 086820
Jose A. Peralta, Esq.
Fla. Bar No. 1028554
**FOR SERVICE:**
miamiefiling@atllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on <u>November 11, 2024</u>, a true and correct copy of the foregoing was served to every counsel of record via transmission of notices of electronic filing generated by CM/ECF.

<u>*/s/ Jose A. Peralta*</u>
Jose A. Peralta, Esq.