UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GABRIEL LUC HADDON**, an individual,

Plaintiff,

vs.

**FS INVESTMENTS OF AMERICA, INC.**, **d/b/a POWERHOUSE AUTOMOTIVE,** a Florida corporation, and **WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES**, a foreign corporation,

Defendants.
_____/

Case No. 8:23-cv-00709-WFJ-SPF

**FS INVESTMENTS OF AMERICA, INC.**, a Florida corporation,

Third-Party Plaintiff,

vs.

**MCCOMBS WEST FORD, LLC, d/b/a MCCOMBS FORD WEST**, a foreign corporation,

Third-Party Defendant.
_____/

## **ORDER**

Before the Court is Plaintiff Gabriel Luc Haddon's ("Haddon") Partial Motion for Summary Judgment, Dkt. 73, and Defendant FS Investments of America, Inc.'s

("FS Investments") Motion for Summary Judgment. Dkt. 72. All parties have responded (Dkts. 78 & 87) and replied (Dkts. 92 & 91). Additionally, the Court held an oral summary judgment hearing on December 19, 2024. Dkt. 96. Upon due consideration, the Court denies in part and grants in part Defendant FS Investments' motion for summary judgment and denies in part and grants in part Plaintiff Haddon's partial motion for summary judgment.

## FACTUAL BACKGROUND

On May 25, 2020, Plaintiff Haddon visited Defendant FS Investments' dealership, looking to purchase a used motor vehicle. Dkt. 80 ¶ 1. After an inspection and test drive, Haddon ultimately landed on a used 2012 Ford F-150 (the "Vehicle"), VIN Number 1FTFW1ET2CFA12718. *Id.* Plaintiff and his mother, Maria Haddon, signed a Buyer's Order and Retail Installment Contract and Security Agreement ("RISC") to purchase the Vehicle for $21,998. *Id.* ¶ 2; Dkt. 74 ¶ 17.

FS Investments advertised the Vehicle with 131,636 miles. Dkt. 74 ¶ 16. The buyer's order said: "Odometer Reading 131636." Dkt. 72-2 at 6. The RISC and Title Application With/Without Registration also indicated the disclosed mileage was 131,636. Dkt. 74 ¶¶ 20, 26. The RISC would later be assigned to Defendant Westlake. Dkt. 80 ¶ 2. Plaintiff testified that the Vehicle was a gift from his mother, that only his mother made all the payments to Westlake, and that Plaintiff is not obligated to reimburse his mother for these payments. *Id.* ¶ 4.

2

At the time of the sale to Plaintiff, Defendant FS Investments did not have title to the Vehicle. Dkt. 74 ¶ 30. Defendant received the Vehicle's title on a Texas Certificate of Title bearing Title/Document Number 01541843520093008 ("Transfer Title") "about 10 days" after Plaintiff took possession of the Vehicle. *Id.* ¶¶ 31-32. Defendant utilized an unsecure power of attorney form—"HSMV Form 82053"—to sign the Transfer Title on behalf of Plaintiff as both transferor and transferee in its capacity as attorney of fact. *Id.* ¶ 40; Dkt. 73-1H. The unsecure power of attorney does not disclose the Vehicle's mileage. Dkt. 74 ¶ 44. Plaintiff never had an opportunity to inspect or sign the Transfer Title. *Id.* ¶ 46. When the Vehicle was sold, the Transfer Title was not lost or in the process of being replaced. *Id.* ¶¶ 47-48. The face of the Transfer Title discloses the "actual mileage" to be "201,150" as of March 06, 2019 (Dkt. 73-5 at FSIA000019), but the mileage disclosure on the prior seller's 2020 assignment of Title listed "131,636" miles. Dkt. 74 ¶ 53; Dkt. 73-5 at FSIA000020; Dkt. 73-23 at 2.

After the sale, Plaintiff testified that repairs were required on the turbocharger, muffler, and tires. Dkt. 80 ¶ 6. Plaintiff also agreed that a motor vehicle with over 100,000 miles will likely require repair, replacement parts, and usual maintenance costs. *Id.* ¶ 8. Plaintiff's mother assumed the costs of all repairs because Plaintiff "didn't have the money at the time." *Id.* ¶ 9. In May of 2022, Plaintiff allegedly attempted to sell the Vehicle. Dkt. 74 ¶ 63. One of the reasons Plaintiff wanted to

3

sell the Vehicle was because "the miles per gallon [were] too low for [his] job at the time." Dkt. 80 ¶ 12. After a potential buyer requested Plaintiff obtain a CarFax report of the Vehicle, Plaintiff became aware of a mileage discrepancy. *Id.* ¶ 13. Upon further investigation, Plaintiff obtained the title history to the Vehicle from the Florida Department of Highway Safety and Motor Vehicles, which disclosed that the Vehicle's "actual mileage" was "201,150" on March 06, 2019. Dkt. 74 ¶ 39.

On December 21, 2022, Defendant FS Investments received a written settlement demand from Plaintiff's counsel titled "Fla. Stat. 501.98 Demand" ("Settlement Letter"). Dkt. 80 ¶ 16. In the Settlement Letter, Plaintiff states that he is "willing to amicably resolve this matter and demands payment" of $8,799.20 "representing [his] good faith estimate of actual damages." *Id.* On March 17, 2024, Defendant delivered a check to Plaintiff for $8,799.20 to settle Plaintiff's alleged Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim in the Settlement Letter. *Id.* ¶ 18.

On March 30, 2023, Plaintiff filed suit seeking statutory damages against Defendant for violations of the Federal Odometer Act, 49 U.S.C. § 32710, *et sequi* ("Odometer Act") in Count I, common law fraud in Count II, fraudulent inducement in Count III, and breach of express warranty in Count IV. *See* Dkt. 1.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e), (c). The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993).

Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992).

## DISCUSSION

### I. Defendant FS Investments' Motion for Summary Judgment

Defendant FS Investments' motion for summary judgment raises three claims: "(i) [Plaintiff] lacks standing to pursue the claims in the complaint, (ii) has settled his claim for actual damages against Defendant, and (iii) has not suffered any out-of-pocket expenses related to the vehicle." Dkt. 72 at 2. For the reasons discussed below, the Court finds Plaintiff has standing to bring his Odometer Act claim in Count I and denies summary judgment for Defendant on Counts II, III, and IV, but grants Defendant partial summary judgment on any diminution of value damages.

#### a. Article III Standing

To demonstrate Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Congress may "elevat[e]" previously inadequate injuries "to the status of legally cognizable injuries." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992). "[T]he injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which

6

creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citation omitted). Defendant's motion only argues Plaintiff lacks an "injury in fact." Dkt. 72 at 11.

The Odometer Act provides several different methods of enforcement, including a private cause of action "to recover money damages from those that violate its provisions with the intent to defraud." *Owens v. Samkle Automotive Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005). Specifically, this provision states that "[a] person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater." 49 U.S.C. § 32710(a). Congress' inclusion of treble damages expresses "its intent to enforce compliance by requiring violators to do more than simply make the victim whole." *Womack v. Nissan N. Am., Inc.*, 550 F. Supp. 2d 630, 634 (E.D. Tex. 2007). Moreover, the congressional provision for $10,000 per vehicle in statutory damages "allows victims to recover without proving actual damages." *Id.* (citation omitted).

Here, Defendant asserts there is no injury since Plaintiff's mother paid for the Vehicle's down payment, monthly financing payments, car insurance, and any repairs. Dkt. 72 at 11. But Plaintiff was on the buyer's order, selected the Vehicle and drove it, and it was titled in his name. Dkt. 87 at 4; Dkt. 80 ¶¶ 1–4.

Further, Plaintiff alleges a quantifiable fraud: inaccurate mileage. Defendant's alleged violation of the Odometer Act is a "concrete and particularized" invasion of

Plaintiff's right to rely upon the odometer as an indicator of "the safety and reliability of the vehicle . . . " *Lujan*, 504 U.S. at 560; 49 U.S.C. § 32701(a)(3).

Defendant's argument about Plaintiff not suffering any out-of-pocket expenses is not controlling as to the standing analysis. As discussed above, Congress' provision for statutory damages provides relief without proof of actual damages. *Womack*, 550 F. Supp. 2d at 635; 49 U.S.C. 32710(a); *see also Attorney Gen. of Maryland v. Dickson*, 717 F. Supp. 1090, 1105 (D. Md. 1989) ("When the victim proves no damage, he receives the minimum statutory amount of [$10,000] as a penalty."). Defendant's assertion that Plaintiff is "not entitled to [statutory damages]" because Plaintiff has "failed to demonstrate that Defendant violated the Odometer Act with intent to defraud" is not a standing issue but a factual dispute reserved for the trier of fact to decide. Dkt. 91 at 6.

Finally, Defendant's contention that they had already settled any "actual damages" with Plaintiff after sending $8,799.20 is disputed. There is a genuine dispute that the payment was to resolve Plaintiff's FDUTPA claim, not Plaintiff's federal claim under the Odometer Act. *See* Dkt. 73-1M (showing the Settlement Letter titled "FLA. STAT. 501.98 DEMAND" and discussing payment and release to resolve claims arising under FDUTPA). This distinction is critical since the "actual damages" allowed under FDUTPA may be much narrower than the "actual damages" allowed under the Odometer Act. *Compare Fort Lauderdale Lincoln*

8

*Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 584 (Fla. 3d DCA 1984)) (discussing scope of FDUTPA damages); *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 263 (Fla. 2d DCA 2004); *Stuart Roofing, Inc. v. Thomas*, 372 So. 3d 298, 300 (Fla. 4th DCA 2023), with *Gaskins v. Tropical Auto. Wholesale Group, Inc.*, No. 615CV580ORL18TBS, 2016 WL 2346953, at *2 (M.D. Fla. Apr. 14, 2016), *report and recommendation adopted*, No. 615CV580ORL18TBS, 2016 WL 2347886 (M.D. Fla. May 3, 2016) (discussing scope of Odometer Act damages); *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 498 (8th Cir. 2009); *Rivera Castillo v. Autokirey*, Inc., 379 F.3d 4, 13 (1st Cir. 2004); *Corrales-Gonzalez v. Speed Auto Wholesalers LLC*, No. CV-20-02023-PHX-SPL, 2022 WL 7733230, at *1 (D. Ariz. Sept. 13, 2022).

The "actual damages" recoverable under the Odometer Act may be broader and cover a larger gamut of alleged harms, including incidental and consequential damages, than FDUTPA. *See* Dkt. 87 at 10–11 (noting Plaintiff is seeking damages outside of FDUTPA's scope like repair costs, finance charges, and taxes on the Vehicle). However, Defendant's prior payment under the FDUTPA settlement may operate as a set-off.

> b. *Damages on Counts II (Fraud), III (Fraudulent Inducement), and IV (Breach of Express Warranty)*

There are still genuine disputes of material fact regarding the actual damages Plaintiff can receive on Counts II, III, and IV in the Complaint. However, the Court grants Defendant partial summary judgment on any diminution in value damages based on the undisputed pre-suit settlement.

Defendant's motion requests summary judgment on these three counts because "Plaintiff has already settled his claim with Defendant for any actual damages," and any "claim for damages excludes any out-of-pocket expenses related to the Vehicle." Dkt. 72 at 12–13. Plaintiff responds by pointing out there are additional unsettled damages for his common law fraud, fraudulent inducement, and breach of express warranty claims. Dkt. 87 at 8. Plaintiff asserts that the scope of "actual damages" under FDUPTA is narrower, and he still has outstanding damages for repair costs (which Plaintiff's mother paid and expects Plaintiff to reimburse), overpaid finance costs, and excess taxes. Dkt. 87 at 11.

Here, there are still genuine factual disputes on whether Plaintiff can recover repair costs, finance costs, and taxes as damages under Counts II, III, and IV. An affidavit filed by Maria Haddon supports these additional damages. *See* Dkt. 87-2. Citing Ms. Haddon's affidavit, Plaintiff contends that he is "indebted" to his mother for the repair costs, excess finance charges, and taxes that were paid on Plaintiff's behalf for his benefit by his mother. Dkt. 87 at 11 (citing Dkt. 87-2 ¶¶ 6, 9-10).

Defendant, however, urges this Court to strike Ms. Haddon's deposition under the "sham" affidavit rule because of the familial relationship between the parties, Ms. Haddon's "natural interest in Plaintiff's success in this case, the timing of her testimony, which appeared when Plaintiff required support for the Response, the clear contradiction between Plaintiff's deposition and the declaration of his mother, and [Ms. Haddon's] lack of explanation for now seeking reimbursement for her alleged payments." Dkt. 91 at 6 (citing *Walker v. Carter*, 210 F. Supp. 3d 487, 502–03 (S.D.N.Y. 2016)).

Plaintiff testified in deposition that his mother Maria Haddon paid these expenses and he was not required to reimburse her. Dkt. 72-1 at 40:20–25. Ms. Haddon's later-filed affidavit flatly contradicts this. Dkt. 87-2 ¶ 10.

The Court declines to strike Ms. Haddon's affidavit as a sham, although the Court might well rule otherwise if it could adjudge credibility at this stage. The Eleventh Circuit has been clear that "the 'sham affidavit' doctrine [ ] should be applied 'sparingly.'" *Mortg. Payment Protection, Inc. v. Cynosure Fin., Inc.*, No. 6:08–cv–1212, 2011 WL 2670081, at *4 (M.D.Fla. July 8, 2011) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987)). "Before striking an affidavit, the court must find 'some inherent inconsistency' between an affidavit and the affiant's sworn testimony." *Id.* (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986)). "'If no inherent inconsistency exists, the general rule allowing an

11

affidavit to create a genuine issue[,] even if it conflicts with earlier testimony in the party's deposition, governs.' " *Id.* (quoting *Rollins*, 833 F.2d at 1530). Plaintiff's mother filed an affidavit to contradict her son's damaging deposition testimony.

Importantly, the doctrine only applies when a party's affidavit "contradicts *that* party's earlier deposition testimony." *Haynes v. Twin Cedars Youth & Fam. Servs., Inc.*, No. 5:10-CV-321 CAR, 2012 WL 895699, at *8 (M.D. Ga. Mar. 15, 2012) (citing *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007)) (emphasis in the original). This Court can only disregard a non-party's affidavit when it conflicts with deposition testimony previously given by the non-party in the same case. *Santhuff v. Seitz*, 385 Fed. Appx. 939, 945 (11th Cir. 2010).

Here, Ms. Haddon's affidavit cannot be contradictory since her deposition was never taken in this case. As such, the Eleventh Circuit is clear that this Court cannot set aside her affidavit as a sham. Defendant's citation to case law from the Second Circuit Court of Appeals suggesting that the doctrine "may also apply where a party submits contradictory evidence from non-party witnesses to defeat summary judgment" is somewhat persuasive but not dispositive. *Carter*, 210 F. Supp. 3d at 502 (citing *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014)).

However, the Court grants Defendant partial summary judgment on any diminution of value damages. During the summary judgment hearing, Plaintiff's counsel conceded that the $8,799.20 paid settled any diminution in value damages

on all four counts in the Complaint. Dkt. 96. Moreover, Plaintiff's pre-litigation settlement emails with Defendant made it explicitly clear the diminution in value for Plaintiff's claims was $8,799.20, the exact amount tendered by Defendant before litigation ensued. *See* Dkt. 72-3 ("[Plaintiff's] expert has informally opined that a diminution of value model would be in line with a 40% reduction in value of the vehicle. 40% of $21,988 comes out to $8,799.20 which is the Plaintiff's good faith estimate of damages in this claim as reflected in the statutory demand delivered to and ignored by the insured."). Accordingly, while there is no genuine dispute that the pre-suit payment of $8,799.20 has settled any diminution in value suffered by Plaintiff, there is still a genuine factual dispute on whether Plaintiff can recover his repair costs, overpaid finance costs, and excess taxes under Counts II, III, and IV.

## II. Plaintiff Haddon's Motion for Partial Summary Judgment

Plaintiff only moves for partial summary judgment on his Odometer Act claim in Count One and Defendant's affirmative defenses nos. 1, 2, 3, 4, 7, 9, 10, 11, 12, 13, 14, 15, & 18. Dkt. 73 at 2; Dkt. 1 at 9. Plaintiff asserts, "Defendant made false statements as to the mileage of the Ford" and "concealed the falsity of the statement by providing those false mileage disclosure statements on something other than the title," demonstrating gross negligence and recklessness. Dkt. 73 at 6. The Court concludes there are genuine disputes of material fact about whether Defendant violated the Odometer Act with an intent to defraud. The Odometer Act imposes

various requirements to ensure that automobile consumers are provided with accurate statements of a car's mileage. *See* 49 U.S.C. § 32705. To establish a violation, a plaintiff must present evidence showing "(1) that the defendant violated the Act or its regulations, (2) with intent to defraud." *Owens*, 425 F.3d at 1321; 49 U.S.C. § 32710(a).

The Eleventh Circuit has not addressed the meaning behind "intent to defraud," but other courts have found "the plain and ordinary meaning of the phrase 'intent to defraud' envisions misconduct more invidious than mere negligence." *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807 (7th Cir. 1988); *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1284 (10th Cir. 1998) ("[S]imple negligence is not sufficient to impose liability under the Odometer Act.").

Here, there is still a genuine dispute of material fact on whether Defendant's alleged violations were done with an intent to defraud. Plaintiff's motion points to several facts that demonstrated an intent to defraud, including Defendant only completing a visual inspection and test drive of the Vehicle, relying on the mileage representations from non-party Manheim, and failing to obtain a CarFax or AutoCheck report. Dkt. 73 at 12–14. Further, Plaintiff alleges the mileage disclosures on the face of the Transfer Title "clearly demarcated that the 'actual' mileage was in excess of 200,000 miles," but Defendant's policy and practice of

never inspecting the titles before completing mileage disclosures means the inaccurate disclosure of 131,636 miles "evince willfulness well beyond gross negligence or a reckless disregard." *Id.* at 15; *see* Dkt. 73-23.

Defendant, however, claims its procedure of never inspecting titles is "because [Defendant] outsources this work to a third-party, which is a common practice in the use car sales industry." Dkt. 78 at 12 (citing Dkt. 73-2 at 75:10–77:8, 113:9–18, 141:18–142:2). As for the inconsistency between the listed mileage in the Transfer title (*see* Dkt. 73-23), Defendant notes "[d]uring the 5 years of contracting title services, and having sold thousands of used vehicles, [Defendant] knows of only two (2) instances when the 'actual mileage' was overlooked on the cover of the title. . . . the probability that a third-party contractor will overlook the 'actual mileage' on a certificate of title is diminimus." Dkt. 78 at 12 (quoting 78-4 ¶ 29).

Likewise, Plaintiff's complaints about Defendant only completing a visual inspection and test drive of the Vehicle do not necessarily indicate an intent to defraud. The record shows multiple parties inspected the Vehicle with no concerns about an inaccurate odometer reading. Defendant (through its employees Franklyn Strusberg and Alexander Reyes) inspected the Vehicle's interior, tire conditions, and drivability. Dkt. 78 at 13 (citing Dkt. 73-2 at 22:12–23:1, 23:21–24, 24:16–22, 39:4–17). Plaintiff inspected and test drove the Vehicle prior to buying it with no concerns. Dkt. 78-3 at 24:7–21. Third-party Defendant McCombs completed a visual and

drivability inspection by staff who "have been doing this for years upon years and years, so they know what they need to look at as far as inspecting a car and checking it for safety and drivability or whatnot." Dkt. 78-2 57:4–59:15, 70:3–22. Importantly, the mileage discrepancy was only revealed when a potential buyer for the Vehicle asked Plaintiff to obtain a CarFax report. Dkt. 78-3 at 11:21–12:20. The record omits any undisputed evidence whether the Vehicle's interior, exterior, or mechanical condition at the time of the sale provided Defendant with any indication of a mileage discrepancy and whether Defendant's decision to only do a visual and drivability inspection supports actionable *mens rea*.

Accordingly, even if Defendant violated the Odometer Act and its regulations, there are still genuine disputes about whether Defendant had the requisite intent to defraud Plaintiff. The Court is precluded from granting summary judgment on Count One.

### A. Affirmative Defenses

Plaintiff's motion also seeks summary judgment on several of Defendant's affirmative defenses. Specifically, Plaintiff argues summary judgment should be granted on affirmative defenses nos. 1, 2, 3, 4, 7, 9, 10, 11, 12, 13, 14, 15, & 18. Dkt. 73 at 19–25. Defendant has only responded to defend nos. 1, 2, 4, 10, & 11.

As such, the Court grants summary judgment for Plaintiff on affirmative defenses nos. 3 (laches), 7 (waiver), 9 (good faith), 12 (no causation), 13

(comparative negligence), 14 (unclean hands), 15 (arbitration), and 18 (failure to state a cause of action). *See Jones v. Bank of Am., N.A.*, 564 Fed. Appx. 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. . . . when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (internal citations and quotations omitted)); *Johns v. CSX Transp., Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016) ("When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims."). The remaining affirmative defenses will be discussed in turn.

    i.   <u>No. 10 (No Intent to Defraud)</u>

Defendant asserts that "Plaintiff's claim for damages under the Odometer Act is barred because Defendant never acted with the intent to defraud." Dkt. 35 at 4. "No intent to defraud" is not an affirmative defense; it is an element of an Odometer Act claim under 49 U.S.C. § 32710(a); *see In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."). As such, affirmative defense no. 10 fails.

17

      ii.    <u>Affirmative Defenses No. 1 (Accord and Satisfaction), No. 4 (No Actual Damages), and No. 11 (Estoppel)</u>

Next, Defendant groups affirmative defenses nos. 1, 4, & 11 together and argues that "Plaintiff accepted Defendant's payment for the entirety of his alleged actual damages. Defendant provided this payment based on reasonable reliance on Plaintiff's material representation that it would satisfy Plaintiff's claim for actual damages." Dkt. 78 at 20. As to no.1 (accord and satisfaction) and no. 11 (estoppel), Defendant may proffer any proof at the pretrial conference.

As for affirmative defense no. 4 (no actual damages), simply denying that Plaintiff suffered any actual damages is not an affirmative defense. Dkt. 35 at 2; *see Gent Row, LLC v. Truist Fin. Corp.*, No. 9:22-CV-80684-WPD, 2022 WL 18466213, at *2 (S.D. Fla. Sept. 23, 2022) ("A defense that denies an allegation in the plaintiff's complaint also is not an affirmative defense."). Additionally, as discussed previously, Congress' provision for statutory damages provides relief without proof of actual damages. *Womack*, 550 F. Supp. 2d at 635; 49 U.S.C. 32710(a). Thus, affirmative defense no. 4 fails.

      iii.    <u>Affirmative Defense No. 2 (Statute of Limitations)</u>

As for affirmative defense no. 2, the Court agrees with Defendant that there is still a genuine dispute of material fact as to this defense. The Odometer Act provides that an "action to enforce a claim under this section . . . must be brought not later than 2 years after the claim accrues." 49 U.S.C. § 32710(b). The claim

accrues not on the date of the illegal conduct but "when a plaintiff actually discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation." *Henley v. Neessen Chevrolet, Inc.*, No. 24-CV-00195 (JMB/LIB), 2024 WL 4202716, at *7 (D. Minn. Sept. 16, 2024) (noting the federal "discovery rule" applies to 49 U.S.C. § 32701(b)(2)).

Here, Plaintiff argues he only discovered inaccurate mileage disclosures when he tried to sell the Ford in May of 2022. Dkt. 73 at 20. However, Defendant correctly points out this contradicts Plaintiff's deposition testimony stating he could not remember the date when he was asked to get a CarFax report. Dkt. 78 at 20 (citing Dkt. 78-3 at 11:21–24). Thus, there is still a genuine factual dispute about when Plaintiff discovered the mileage discrepancy. Summary judgment on affirmative dense no. 2 is denied.

In sum, the Court grants summary judgment for Plaintiff on affirmative defenses nos. 3 (laches), 4 (no actual damages), 7 (waiver), 9 (good faith), 10 (no intent to defraud), 12 (no causation), 13 (comparative negligence), 14 (unclean hands), 15 (arbitration), and 18 (failure to state a cause of action).

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant FS Investment's Motion for Summary Judgment, Dkt. 72, is **DENIED in part and GRANTED in part**. Specifically, the Court **grants** Defendant

partial summary judgment on any diminution in value damages on Counts II, III, IV in the Complaint.

2. Plaintiff Haddon's Motion for Partial Summary Judgment, Dkt. 73, is **DENIED in part** and **GRANTED in part**. Specifically, the Court **denies** Plaintiff's request for summary judgment on Count One. The Court's ruling on affirmative defenses is stated above.

**DONE AND ORDERED** in Tampa, Florida, on January 6, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record