UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

GABRIEL LUC HADDON, an individual,

        Plaintiff,

vs.

FS INVESTMENTS OF AMERICA, INC., d/b/a POWERHOUSE AUTOMOTIVE, a Florida corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a foreign corporation,

        Defendants.
_____/

**FS INVESTMENTS OF AMERICA, INC.**, a Florida corporation,

        Third-Party Plaintiff,

vs.

**MCCOMBS WEST FORD, LLC**, d/b/a MCCOMBS FORD WEST, a foreign corporation,

        Third-Party Defendant.
_____/

Case No. 8:23-cv-00709

**FS INVESTMENTS OF AMERICA, INC.'S SUPPLEMENTAL RESPONSE TO MCCOMBS WEST FORD, LLC'S MOTION FOR SANCTIONS PURSUANT TO ORDER [D.E. 128]**

Third-party plaintiff, FS Investments of America, Inc. ("FS Investments"), by and through the undersigned counsel, pursuant to this Court's Endorsed Order [D.E. 128], hereby files this Supplemental Response to the Motion for Sanctions [D.E. 109,

112] filed by third-party defendant, McCombs West Ford, LLC ("McCombs"), and in support thereof states as follows:

## A. **INTRODUCTION**

On April 11, 2025, this Court entered an Endorsed Order posing the following questions: (i) Did counsel for F.S. Investments act in "good faith, based on the representations of his or her client" regarding the alleged buy/sell relationship between McCombs and F.S. Investments, and (ii) regarding the assignment to F.S. Investments that occurred after the law suit? Why or why not? Assuming the Court grants sanctions against F.S. Investments, why should they no also lodge against FS' attorney(s)?

As a preliminary matter, this Court cannot award sanctions pursuant to Fla. Stat. §57.105 against either F.S. Investment, or its counsel. The dismissal of the third party complaint (without prejudice) for "lack of standing" was not the basis upon which McCombs argued for sanctions within its original Motion for Sanctions pursuant to Fla. Stat. §57.105. Therefore, neither F.S. Investments nor its counsel were given the requisite 21-day safe harbor as required by Fla. Stat. §57.105(4) that McCombs intended to claim lack of standing as a basis for sanctions.

Notwithstanding, for the reasons set forth below, counsel for F.S. Investments did act in good faith, based on the objective evidence, the relationship between F.S. Investment and Auto Deal and the representations of F.S. Investments regarding the alleged buy/sell relationship among McCombs/Auto Deal/F.S. Investments.

Lastly, in the event the Court does enter sanctions against F.S. Investments, it should not also be lodged against F.S. Investments' counsel.

B. **BACKGROUND**

On April 2, 2024, McCombs filed its Answer and Affirmative Defenses to the Third party Complaint, denying F.S. Investments' claims for common law indemnity and negligent representation. [D.E. 48]. McCombs did not assert "lack of standing" as an affirmative defense, only claiming, *inter alia*, that there did not exist a "special relationship" between F.S. Investments and McCombs.

On April 23, 2024, the parties took the deposition of Franklyn Strusberg ("Strusberg"), corporate representative of F.S. Investments. Strusberg gave extensive testimony about the nature of the relationship between F.S. Investments and Auto Deal, articulating the close inter-relationship between these two businesses. As detailed below, Strusberg was given broad authority to act simultaneously as an agent for F.S. Investments and Auto Deal:

> Q. *Did you have authority to bind Auto Deal Corp. to purchase the vehicle from McCombs Ford?*
>
> A. *Yes. I was a buyer for Auto Deal Corp.*

(Tr. 31:15-17)

> Q. *And did Powerhouse tender this money or did Auto Deal Corp. tender the money?*
>
> A. *No. Auto Deal paid Manheim.*
>
> Q. *And where did Auto Deal get the funds for the payment?*
>
> A. *From his bank account.*
>
> Q. *How much did you pay Auto Deal Corp. for the vehicle?*
>
> A. *The price of the car, plus the transport, plus . . . 25 percent of the profits.*

Page **3**

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  **ArmstrongTeasdale.com**
#116184929.1

(Tr. 41:7-16)

> *Q: At the time when you were going through the Manheim website and you were searching for vehicles, you were making deals at that time, were you doing so under an account that was named for Auto Deal Corp. or was it one that was under your dealership's name?*
>
> *A.   Auto Deal Corp.*
>
> *Q.   So, the Manheim account itself was under Auto Deal Corp.'s name?*
>
> *A.   No.  No.  It's my Manheim account.  I'm just added as a buyer on Auto Deal Corp.*
>
> *Q.   Got it, but the Manheim account is you personally?*
>
> *A.   Is mine, . . . FS Investments.  Yes, it's my account.*

(Tr. 104:19-105:7)

> *Q.   The nature of your authority to buy cars on behalf of them or using their account, that is strictly a conversation between you and your friend --*
>
> \* \* \*
>
> *Q.   But the authority to add you as a buyer under Manheim, that was given to you by your friend from Auto Deal Corp., right?*
>
> *A.   Correct.*

(Tr: 108:22-109:8)

> *Q.   Okay.  Now, when you purchased the vehicle through Auto Deal Corp., as their agent, was your intention all along to sell this vehicle through Powerhouse?*
>
> *A.   Yes.*
>
> *Q.   So, Powerhouse bought the vehicle as an agent of Auto Deal Corp., but it was understood between Auto Deal Corp. and Powerhouse that Powerhouse was going to try to sell this vehicle on its lot?*

\* \* \*

> A. Correct.
>
> Q. Okay. Now, when you purchase -- you said that the account of Manheim is in the name of Powerhouse?
>
> A. Yes.
>
> Q. But that -- but that you also bought it -- sorry. But that you also use this account as an agent of Auto Deal Corp.?
>
> A. Correct.
>
> Q. Okay. Would you say then that you were using the account for the benefit of Powerhouse?
>
> A. Yes.
>
> Q. Would you say that you were using the account as a representative of Powerhouse . . . as well?
>
> A. Yes.

(Tr. 140:14-141:17)

> Q. Mr. Strusberg, you have an agreement with Auto Deal Corp. where one way or the other you acquire vehicles from Auto Deal Corp.; is that correct?
>
> A. Correct.
>
> Q. How many vehicles have you acquired from Auto Deal Corp. based upon this agreement?
>
> * * *
>
> Q. So, between twenty to fifty cars?
>
> A. Correct.

(Tr. 144:23-145:12)

Although Strusberg was willing and available to answer any questions about possible defenses that McCombs thought they may have in light of the detailed explanation of the inter-relationship between Auto Deal and F.S. Investments,

McCombs never inquired from Strusberg about whether Auto Deal ever assigned any rights it may have to a claim against McCombs – either orally or in writing - in connection with the purchase of the subject vehicle.

Then, on September 11, 2024, McCombs filed a Motion for Sanctions [D.E. 68], seeking to invoke Fla. Stat. 57.105(1)(a) and (b). The ***sole basis*** upon which McCombs claimed entitlement to sanctions was that:

> *FS Investments brought claims for common law indemnity and negligent misrepresentation against McCombs in spite of the fact that there was never any transactions or business dealings of any sort between [them]. Without there having been any transaction or business dealings of any sort between [them] there cannot have been any "**special relationship**" between them supporting a claim for common law indemnity . . . [or] for negligent misrepresentation."*

[D.E. 68](emphasis added). The motion for sanctions was predicated ***solely*** upon McCombs' dispute regarding the existence of a "***special relationship***" between F.S. Investments and McCombs that would entitle F.S. Investments to common law indemnity in connection with the claims brought by plaintiff, Haddon. The Motion for Sanctions did not argue lack of standing and made no mention whatsoever as to the existence of an assignment of claims.

On October 4, 2024, McCombs filed a motion for summary judgment [D.E. 71], in which it made introduced, ***for the first time***, the idea that "on a fundamental level, because FS Investments had not purchased the Ford from McCombs, F.S. Investments ***lacks standing*** even to sue McCombs."[1] However, despite the flippant one

---

[1] Similarly, in its Answer and Affirmative Defenses to the Third party Complaint, McCombs does not assert lack of standing, only claiming "no special relationship'' as an affirmative defense.

liner tacked into the introduction to the motion for summary judgment, ***McCombs did not direct any of its argument to address a purported lack of standing***. Rather, McCombs dedicated its entire argument on the ***lack of a special relationship*** in opposition to a claim for common law indemnity. [D.E. 71]

On October 25, 2024, F.S. Investments filed is Response in Opposition to the Motion for Summary Judgment filed by McCombs [D.E. 77] and attempted to dispel the notion of "lack of standing" by providing a written Assignment of Claim. From the inception of the litigation, there was never any doubt that F.S. Investments possessed the authority to proceed on behalf of Auto Deal and had obtained an oral assignment of Auto Deal's claims against McCombs. From the inception of the claim filed by plaintiff Haddon and prior to the filing of the third-party complaint, Strusberg was in regular contact with Auto Deal in an effort to obtain documents that were responsive to Haddon's requests for documents. As Strusberg testified at his deposition, at all times throughout this transaction, he had authority to act on behalf of Auto Deal. The fact that the oral assignment was reduced to writing (however inartful) in response to the motion for summary judgment does not negate the fact that F.S Investments was acting at all times having received an oral assignment from Auto Deal, a fact that was never inquired about at his deposition. At a minimum, McCombs could have requested to depose Strusberg in the issue of the Assignment of Claim but failed to do so.[2]

---

[2] In response to the Court's inquiry whether counsel's actions were taken in "good faith, based on the representations of his or her client," it cannot escape the attention of the Court that the

On January 10, 2025, McCombs filed its Motion for Attorney's Fees, purporting to claim entitlement "pursuant to its Amended Motion for Sanctions under Fla. Stat. 57.105(1) [D.E. 107]"[3] There, for the first time, McCombs opens the flood-gates as to the purported "lack of standing," having never previously articulated the lack of standing as a basis for an award of sanctions pursuant to Fla. Stat. §57.105.

## MEMORANDUM OF LAW

### I. Any Award Pursuant to Fla. Stat. §57.105 Requires Strict Compliance and Specific Findings by The Court

Any attempt to secure an award of attorneys' fees under §57.105 requires specificity and strict compliance with procedure. While the purpose of §57.105 is to "discourage baseless claims, stonewall defenses and sham appeals in civil litigation," *Demby v. English*, 667 So.2d 350, 353 (Fla. 1st DCA 1995) (internal quotation omitted) Section 57.105 operates strictly on notice. Under the statute, express notice of the grounds for an award of fees under §57.105 must have been provided in the motion. In plain language, the moving party must explain directly why a claim is allegedly frivolous. Where a party fails to specify a ground for attorney's fees in its motion for fees - that is, where it fails to provide notice that a particular theory of law serves as the basis for its fees motion - that party cannot then recover fees on that basis. *Phillips v. Garcia*, 147 So.3d 569, 572 (Fla. 3d DCA 2014) (denying motion for fees under

---

Assignment of Claim [D.E 77-4] was dated September 26, 2024, the date it was executed. There was never any effort by F.S. Investments or its counsel to "back date" the Assignment of Claim or otherwise claim that it was executed at any time other than the date on which it was executed.

[3] As explained by McCombs, an "Amended" Motion for Sanctions was filed solely to reflect that the parties conferred prior to McCombs filing the motion.

§57.105 where, among other things, the motion failed to allege the ground upon which the party won as a basis for fees). In *Lago v. Kame*, 120 So.3d 73 (Fla. 4th DCA 2013), the Fourth DCA held:

> We hold that ***if a party files a subsequent or amended motion for sanctions under section 57.105 and raises an argument that was not raised in the original motion for section 57.105 sanctions, the subsequent motion must independently comply with the twenty-one-day "safe harbor" provision of section 57.105(4).*** To hold otherwise would allow a party to raise a new ground for sanctions in a subsequent motion under section 57.105 without giving the other side the opportunity to withdraw the offending claim or defense within twenty-one days after receiving notice of the new ground for sanctions.

*Id*. at 75. Therefore, none of the arguments and information contained in either (i) the Motion for Summary judgment [D.E 71] and Reply to [F.S. Investments] Response to its Motion for Summary Judgment [D.E. 89] or (ii) the Motion for Attorney's Fees with respect to standing may be considered by the Court because no such argument was made in the Motion for Sanctions under Fla. Stat. §57.105(1) [D.E. 68] and McCombs never served a second motion for sanctions with a 21-day safe harbor period as is a condition precedent to any award pursuant to Fla. Stat. §57.105(1).[4]

To award attorney's fees under this statute, the court must make specific findings of bad faith, and should recite the facts on which it bases its conclusions in the order awarding such fees. *Gonzalez v. Int'l Park Condo. I Ass'n, Inc.*, 217 So.3d 1128,

---

[4] As it is evident from the law noted herein, prevailing in an action without more is insufficient for recovering attorney's fees under Fla. Stat. § 57.105(1).  *See, e.g.*, *In re Mills*, 829 Fed. Appx. 938, 941 (11th Cir. 2020) ("That a party was successful in obtaining the dismissal of the action or summary judgment in an action is not enough by itself to warrant relief under section 57.105.").

1133 (Fla. 3d DCA 2017). *Montgomery v. Larmoyeux*, 14 So. 3d 1067, 1073 (Fla. 4th DCA 2009) (holding a trial court's findings must also "'be based upon substantial competent evidence presented to the court at the hearing on attorney's fees or otherwise before the court and in the trial record.'" *quoting Weatherby Assocs., Inc. v. Ballack*, 783 So.2d 1138, 1141 (Fla. 4th DCA 2001)) (emphasis added).

> II. **The Absence of a "Lack of Standing" Argument in the Motion for Sanctions under Fla. Stat. §57.105(1) [D.E. 68] Precludes This Court from Considering Lack of Standing as a Basis to Award Sanctions Pursuant to Fla. Stat. §57.105**

In Florida, a party has standing when it has "a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation." *Jamlynn Invs. Corp. v. San Marco Residences of Marco Condo. Ass'n*, 544 So. 2d 1080, 1082 (Fla.2d DCA 1989); see also *Gen. Dev. Corp. v. Kirk*, 251 So.2d 284, 286 (Fla. 2d DCA 1971) ("Standing is, in the final analysis, that sufficient interest in the outcome of litigation which will warrant the court's entertaining it."). Although this conception of standing in Florida state court is less demanding than the conception of standing that prevails in the federal courts,[5] see *Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717, 720 (Fla. 1994), it has been understood to mean that a party must "demonstrate a direct and articulable stake in

---

[5] The Florida Supreme Court has rejected the contention that standing is an argument for lack of subject matter jurisdiction, and instead clarified that "lack of standing" is a defense that must be pleaded or waived. *Page v. Deutsche Bank Tr. Co. Ams.*, 308 So. 3d 953, 960-61 (Fla. 2020); *Krivanek v. Take Back Tampa Pot Comm.*, 625 So. 2d 840, 842 (Fla. 1993) ("The issue of standing should have been raised as an affirmative defense before the trial court, and [defendant's] failure to do so constitutes a waiver of that defense, precluding her from raising that issue now."), citing *Cowart v. City of W Palm Beach*, 255 So. 2d 673 (Fla. 1971); see also *Jaffer v. Chase Home Fin., LLC*, 155 So. 3d 1199, 1202 (Fla. 4th DCA 2015) ("We have repeatedly held that standing is an affirmative defense and failure to raise it in a responsive pleading generally results in a waiver.")

the outcome of a controversy" to open the courthouse doors, *Brown v. Firestone*, 382 So. 2d 654, 662 (Fla. 1980). See also *Whitburn, LLC v. Wells Fargo Bank, N.A.*, 190 So.3d 1087, 1091 (Fla. 2d DCA 2015) ("[T]o have standing, a party must demonstrate a direct and articulable interest in the controversy, which will be affected by the outcome of the litigation." (quoting *Centerstate Bank Cent. Fla., N.A. v. Krause*, 87 So. 3d 25, 28 (Fla. 5th DCA 2012))). In determining whether a party has such an interest in the judicial resolution of a dispute, it is helpful to ask whether a decision in the case will actually resolve the rights and obligations of the parties, in which case standing likely exists, or simply will produce an advisory opinion, in which case it does not. See *Kuhnlein*, 646 So.2d at 721; *Warren Tech., Inc. v. Carrier Corp.*, 937 So. 2d 1141, 1142 (Fla. 3d DCA 2006).

In this case, from its inception there was never any doubt that F.S. Investments and McCombs shared a direct and articulable interest in the outcome of the case that would actually resolve the rights and obligations of the parties. In addition, as was repeatedly testified by Strusberg at his deposition, he was acting jointly on behalf of Auto Deal and F.S. Investments in connection with the purchase of the vehicle, as he had done between twenty and fifty times on prior occasions.

In addition, prior to the commencement of the third-party action, there was no reason to believe that Strusberg had not already secured the rights from Auto Deal to proceed against McCombs. Due to the close working relationship between Auto Deal and F.S. Investments, following the deposition of Strusberg there did not appear any doubt that F.S. Investments received an oral assignment from Auto Deal any claim it

possessed against McCombs. Then, having spoken multiple times during the course of the litigation with the principal owner of Auto Deal, it was undersigned counsel's specific recollection that Auto Deal had assigned to F.S. Investments any claim it had against McCombs.

Florida law provides that, except in cases where a statute may require a writing, an assignment may be oral and is provable by parol evidence or other writing. *Seaside Town Council, Inc. v. Seaside Community Development Corp.*, 347 So3d 89, 97 (Fla. 1st DCA 2021). The Eleventh Circuit has also recognized that an assignment of a claim to establish standing can be satisfied "by an oral assignment later ratified or confirmed by a written memorandum of the transfer." *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir.1995)(execution of a writing which confirms an earlier oral agreement validates the transfer *ab initio*), citing *Arthur Ratenburg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532–33 (11th Cir.1994).

Although McCombs could have inquired at the deposition of Strusberg about whether there had been an assignment, either oral or written, they did not. Nor did McCombs ever assert the lack of standing as an affirmative defense. The first time that "lack of standing" was ever raised as a substantive argument was in the reply to the motion for summary judgment, months *after* the Motion for Sanctions under Fla. Stat. §57.105(1) [D.E. 68] had been served and never made any attempt

### III. Conclusion

For the reasons set forth above, the Court cannot award sanctions based upon the "lack of standing" arising from the Assignment of Claim because it was not the

basis upon which McCombs sought sanctions in its Motion for Sanctions [D.E 68] and McCombs never amended its motion or provide F.S Investments the requisite 21 day safe harbor period. Notwithstanding, based upon the testimony of Strusberg, the objective evidence obtained throughout the litigation, the inter-relationship between F.S. Investment and Auto Deal and the representations of F.S. Investments regarding the alleged buy/sell relationship among McCombs/Auto Deal/F.S. Investments, both F.S. Investments and counsel acted in good faith in pursuing the claim against McCombs and made no effort to hide or conceal the date on which the Assignment of Claim was executed.

Wherefore, third-party plaintiff, FS Investments of America, Inc., respectfully requests that the Court deny with prejudice the Motion for Sanctions filed by third-party defendant, McCombs West Ford, LLC, in addition to any other relief as this Court deems just and proper.

Dated <u>May 9, 2025</u>.

*Respectfully submitted*,

**ARMSTRONG TEASDALE LLP**
*Counsel for FS Investments of America, Inc.*
355 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Telephone: (786) 822-3700
Telecopier: (305) 675-3605

By: <u>/s/ *Keith D. Silverstein*</u>
Keith D. Silverstein, Esq.
Fla. Bar No. 086820
ksilverstein@atllp.com
**FOR SERVICE:**
miamiefiling@atllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2025, a true and correct copy of the foregoing was served to every counsel of record via transmission of notices of electronic filing generated by CM/ECF.

/s/ *Keith D. Silverstein*
Keith D. Silverstein, Esq.

Armstrong Teasdale LLP | 355 Alhambra Circle, Suite 1200, Coral Gables, FL 33134  T. 786.822.3700 F. 305.675.3605  ArmstrongTeasdale.com
#116184929.1