# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CASE NO.: 8:23-cv-00709

GABRIEL LUC HADDON,

      Plaintiff,

vs.

FS INVESTMENTS OF AMERICA, INC., d/b/a
POWERHOUSE AUTOMOTIVE, a Florida
Corporation, and WESTLAKE SERVICES, LLC.
d/b/a WESTLAKE FINANCIAL SERVICES,
a Foreign Corporation,

      Defendants.

_____/

FS INVESTMENTS OF AMERICA, INC.,

      Third-Party Plaintiff,

vs.

MCCOMBS WEST FORD, LLC., d/b/a
MCCOMBS FORD WEST, a Foreign
Corporation,

      Third-Party Defendant.

_____/

## MCCOMBS WEST FORD, LLC.'S, REPLY TO THIRD-PARTY PLAINTIFF'S SUPPLEMENTAL RESPONSE TO MCCOMBS WEST FORD, LLC'S MOTION FOR SANCTIONS

      Third-Party Defendant, McCombs West Ford, LLC ("McCombs"), submits this response

to Third-Party Plaintiff FS Investments of America, Inc.'s ("FS Investments" or its d/b/a

"Powerhouse") Supplemental Response [D.E. 132] to McCombs' Motion for Sanctions. FS's

supplemental brief continues to obscure the record, misstates the legal standards governing third-party practice, and fails to address the central issue: FS Investments never had standing to file the third-party complaint and proceeded with litigation in the absence of a legal basis to do so.

**I. Synopsis**

This case arises out of an automobile purchase dispute originally brought by Plaintiff Gabriel Luc Haddon against FS Investments of America, Inc. and Westlake Services, LLC. The Plaintiff alleged that the vehicle he purchased from FS Investments had a materially inaccurate odometer reading. In response to that claim, FS Investments filed a third-party complaint against McCombs West Ford, LLC, asserting causes of action for common law indemnity and negligent misrepresentation. FS Investments' theory was that McCombs had supplied the vehicle to Plaintiff's detriment and was therefore derivatively liable.

From the outset, however, FS Investments' allegations rested on a mischaracterization of its relationship with McCombs. The vehicle in question was not purchased by FS Investments, but rather by a separate entity, Auto Deal Corp. FS Investments had no title, ownership, or transactional involvement with McCombs concerning this vehicle. These facts were confirmed during discovery, including in the deposition of FS Investments' corporate representative, Franklyn Strusberg, who admitted FS Investments did not acquire the vehicle, was not the Manheim account holder, and held no direct relationship with McCombs. The following excerpts from FS's corporate representative deposition confirm these points:

> *Q: So, what is Powerhouse's relation to Auto Deal Corp.?*
>
> *A: The owner of Auto Deal is my friend. When I first open, he put me cars on consignment. I buy cars with his – with his money pretty much. He support me, so I buy cars with his license. And I bring it to my dealer, and pretty much he's wholesaling the car to me.*

*Q: Did you have authority to bind Auto Deal Corp. to purchase the vehicle from McCombs Ford?*

*A: Yes. I was a buyer for Auto Deal Corp.*

(Tr. 31: 7 – 11; 15 – 17)

*Q: And when did the dealership, meaning Auto Deal, purchase the vehicle from McCombs Ford?*

*A: April 11th. It says there April 11th.*

(Tr. 35: 13 – 15)

*Q: How much did you pay for the vehicle?*

*A: 9,000 and change.*

*Q: And what is reflected in this invoice? Is that a truthful and accurate –*

*A: Correct.*

*Q: -- representation of --*

*A: Correct.*

*Q: -- how much you paid?*

*A: Yes. Correct.*

*Q: And did Powerhouse tender this money or did Auto Deal Corp. tender the money?*

*A: No. Auto Deal paid Manheim.*

*Q: And where did Auto Deal get the funds for the payment?*

*A: From his bank account.*

*Q: How much did you pay Auto Deal Corp. for the vehicle?*

*A. The price of the car, plus the transport, plus I – I was giving him a 25 percent of the profits.*

(Tr. 40 – 41: 23-25; 1 – 16)

*Q: How did you get this particular title in this particular format? Where did this come from?*

*A: Auto Deal Corp.*

(Tr. 43: 13 – 15)

> *Q: What are you looking at?*
>
> *A: When the auction send the title to Auto Deal.*
>
> *Q: And where are you finding that information?*
>
> *A: In Manheim. My account with Manheim. What is the last six of the VIN?*
>
> *Q: I'm sorry?*
>
> *A: What is the last six of the VIN?*
>
> *Q: A12718.*
>
> *A: So, it says there they shipped the title to – to Auto Deal Corp. on April 28, 2020 by USPS. So, I bought it April 11th, and they sent the title April 28.*

(Tr. 44: 3 – 14)

> *Q: At the time when you were going through the Manheim website and you were searching for vehicles, you were making deals at that time, were you doing so under an account that was named for Auto Deal Corp. or was it one that was under your dealership's name?*
>
> *A: Auto Deal Corp.*

(Tr. 104: 19 – 24)

Despite this, FS Investments initiated and prosecuted a third-party complaint based on a claim it did not own and a relationship that never existed. FS Investments failed to disclose the absence of any assignment from Auto Deal Corp. during discovery, only producing a retroactive Assignment of Claim over six months after filing the third-party complaint—and only after McCombs challenged FS Investments' standing. These developments prompted McCombs to file a Motion for Sanctions [D.E. 68] and a Motion for Attorneys' Fees and Costs [D.E. 109], arguing that FS Investments' third-party complaint was legally baseless and pursued in bad faith.

[This area is intentionally left blank]

## II. Strict Compliance with Sec. 57.105

FS contends that an award under Section 57.105 requires strict compliance with the statute's procedural requirements, including service of the motion at least 21 days before filing and specific findings by the Court. McCombs does not dispute this standard. However, McCombs has complied in full with both the letter and spirit of Section 57.105. The safe harbor motion was served on FS's counsel on August 9, 2024, and placed FS on clear notice of the legal and factual deficiencies in its third-party complaint. FS elected to stand by its claims, despite that opportunity to withdraw them.

McCombs's position has remained consistent from the outset: FS had no basis to sue McCombs for common law indemnity because FS had no relationship—contractual, transactional, or otherwise—with McCombs. Florida courts have repeatedly held that a "special relationship" is a prerequisite to any claim for common law indemnity. *Lessard-Lanctot v. Moore* Without it, the claim fails as a matter of law. This was not a subtle or technical defect—it was a threshold deficiency that rendered the entire third-party complaint legally untenable. *Kesslack v. Tower Hill Preferred Ins. Co.*, 2009 WL 3161808 (N.D. Fla. Sept. 28, 2009) (absent a contract, duty to pay, or other 'special relationship' between the parties, an indemnity claim should be dismissed); *see also Lessard-Lanctot v. Moore*, 2020 WL 6748497 (S.D. Fla. Nov. 17, 2020).

FS now seeks to cabin this fundamental issue as something separate from "standing" or to suggest it was not fairly presented in the 57.105 notice. But the absence of a special relationship is precisely what deprives FS of the ability to maintain its third-party complaint. By highlighting that deficiency, McCombs put FS on notice that the claims lacked legal merit under established Florida law. *See Houdaille Indus., Inc. v. Edwards*, 374 So.2d 490, 493. FS chose not to withdraw the complaint. As such, the requirements of Section 57.105 have been met, and McCombs is

entitled to an award of reasonable attorneys' fees and costs incurred in having to defend against this improper pleading.

The bad faith underlying FS's third-party complaint is rooted in its and its counsel's decision to file and pursue claims for common law indemnity against McCombs despite the complete absence of a required special relationship. Florida law is unequivocal that a "special relationship" between the indemnitee and indemnitor is a prerequisite to maintaining a common law indemnity action. *See Kesslack*, at (citing *Brickell Biscayne Corp v. wpl Assoc. Inc*., 671 So. 2d 247, 248-49) (Fla. 3d. DCA 1996)). FS and its counsel should have known—before filing— that no such relationship existed. FS admitted in discovery that it had no contract, no communications, and no dealings of any kind with McCombs. Rather than acknowledge and correct this fundamental defect, FS and its counsel elected to litigate aggressively for months, forcing McCombs to expend time and resources defending against a legally baseless claim.

The bad faith continues in FS's supplemental response [D.E. 132], where FS attempts to shift the burden onto McCombs by arguing that McCombs failed to inquire about a potential special relationship. This argument is both legally and logically flawed. The burden to plead and prove the existence of a special relationship falls squarely on the party asserting a claim for common law indemnity—not the defendant resisting it. *See Dade Cnty. Sch. Bd. V. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999); *see also Welch v. Complete Care Corp*., 818 So. 2d, 645, 649 (Fla. 2d DCA 2002). FS's continued effort to justify a meritless pleading by distorting the burden of proof only compounds the original bad faith. The record reflects a deliberate refusal to withdraw a claim that was defective from inception, underscoring the propriety of sanctions under Section 57.105.

## III. FS Lacks Standing

FS's assertion that it had standing to file the third-party complaint is legally and factually unsupported. Under Florida Rule of Civil Procedure 1.180 and the substantive law governing common law indemnification, the party filing a third-party complaint must demonstrate the existence of a "special relationship" with the proposed third-party defendant. This relationship is not presumed, and it is not established by implication. Rather, it is a threshold requirement that must exist at the time of filing. FS's failure to allege or support such a relationship at the outset renders the third-party complaint procedurally and substantively improper.

Throughout this litigation, FS has attempted to justify its third-party complaint by referencing an alleged relationship between FS Investments and Auto Deal Corp, suggesting that an agreement between their owners somehow conferred indemnity rights or claims upon FS. But a close business relationship between two entities—even one involving shared principals or overlapping roles—does not create an automatic assignment of legal rights or indemnification claims. FS's own corporate representative, Frank Strusberg, testified in deposition that the only known arrangement was that he would act as an agent for Auto Deal Corp to access Manheim and purchase vehicles on its behalf. Nowhere in that testimony—or in FS's pleadings or discovery responses—did FS establish that Auto Deal had formally assigned any rights or indemnification claims to FS.

Instead, FS and its counsel rely on inference and post hoc rationalization, implying that a special relationship existed without providing any supporting documentation or testimony to that effect. Critically, no such evidence surfaced until after McCombs filed its motion for summary judgment—further underscoring that FS did not possess the requisite standing when it filed its third-party complaint. If FS truly believed that Auto Deal had assigned it the rights necessary to

pursue indemnification against McCombs, it was incumbent upon FS to allege and substantiate that assignment from the beginning. Its failure to do so reflects not only a lack of standing but also a disregard for the pleading standards governing third-party claims under Florida law.

## IV. Fs Lacked Standing at The Time of Filing, And That Defect Cannot Be Cured

Under both **Florida Rule of Civil Procedure 1.180** and **Federal Rule of Civil Procedure 14**, a third-party plaintiff pursuing a common law indemnity claim must demonstrate the existence of a **"special relationship"** with the third-party defendant. This relationship is not merely helpful—it is a **threshold requirement** for bringing a third-party complaint. The third-party plaintiff must show that the third-party defendant **may be liable to it for all or part of the claims asserted against it**—a standard that necessarily demands a basis in **derivative liability**, such as indemnity, contribution, or subrogation. Without such a relationship, the third-party plaintiff has no legal standing to bring the claim.

FS's third-party complaint alleged common law indemnity and negligent misrepresentation against McCombs, yet FS has never identified or established any direct business dealings, contractual obligations, or communications with McCombs.

The core basis for McCombs' motion for sanctions and fees is straightforward: FS initiated its third-party complaint in March 2024 despite having no ownership interest in the claim and no assignment from Auto Deal Corp., the entity that actually purchased the vehicle. FS admitted this fact during discovery and only produced a written assignment **six months later**—in September 2024—well after the pleading, discovery, and deposition stages had passed.

FS's after-the-fact assignment cannot retroactively establish standing. As the Court is well aware, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct.

2218, 2222 (1989). Post-filing assignments cannot cure a standing defect to file a third-party complaint. FS's failure to obtain a valid assignment prior to filing—and its refusal to disclose the lack of assignment during discovery—exemplifies litigation misconduct warranting sanctions.

## IV. Conclusion

FS Investments of America, Inc. initiated its third-party complaint by deliberately framing the allegations to suggest a direct, transactional relationship with McCombs West Ford, LLC. The record is undisputed, however, that McCombs sold the Ford vehicle at issue through the Manheim auction platform to Auto Deal Corp. At that time, FS's owner, Frank Strusberg, acted solely as an agent of Auto Deal in facilitating that purchase. Auto Deal, not FS, acquired the vehicle directly from McCombs, and any connection between FS and McCombs was, at most, indirect. It was only after this transaction that Auto Deal transferred the vehicle to FS through a separate sale, solidifying that the parties operated through distinct, non-overlapping contractual relationships.

Despite these facts, FS's third-party complaint was framed as though FS had acquired the vehicle directly from McCombs and was misled by McCombs during that process. This pleading tactic obscured the true nature of the transaction history and falsely implied a special relationship necessary to assert a claim for common law indemnity. Florida Rule of Civil Procedure 1.180 and Federal Rule of Civil Procedure 14 both require, as a threshold matter, the existence of such a "special relationship" to shift liability through indemnification. Because no such relationship existed, FS had no legal right to file a third-party complaint against McCombs from the outset.

FS now contends that sanctions are unwarranted because McCombs did not allege a traditional "lack of standing" in its motion for sanctions [D.E. 68]. This argument misses the mark. McCombs has consistently maintained that FS's third-party complaint was legally deficient due to the absence of the special relationship required for common law indemnity. That deficiency is not

merely a pleading technicality—it is a functional bar to FS's legal entitlement to proceed. Although this may not constitute a jurisdictional defect in the Article III constitutional sense, it nevertheless amounts to a substantive lack of standing to invoke indemnity at all.

Thus, FS's third-party complaint is not only misleading, it is also devoid of any legal foundation. The absence of a qualifying relationship rendered the pleading fatally defective, and no subsequent discovery or post hoc theorizing through attorney creative playwright can cure the lack of an initial legal right to bring the claim. The improper nature of the complaint, coupled with FS's strategic mischaracterization of the transactional chain, underscores the basis for sanctions under Rule 11 and applicable state law analogs.

Dated: May 27, 2025

By: /s/ Edward R. Nicklaus, Esq.
**EDWARD R. NICKLAUS, ESQ.**
Florida Bar No.: 138399
**ROGER A.G. ROCHE, ESQ.**
Florida Bar No.: 1007717
**NICKLAUS & ASSOCIATES, P.A.**
*Attorneys for Third-Party Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served

electronically with the Clerk of Court using CM/ECF this 27th day of May, 2025.

**NICKLAUS & ASSOCIATES, P.A.**
*Attorneys for McCombs West Ford, LLC*
4651 Ponce de Leon Blvd., Suite 200
Coral Gables, Florida 33146
Telephone: 305-460-9888
Facsimile: 305-460-9889


By: */s/ Edward R. Nicklaus, Esq.*
**EDWARD R. NICKLAUS, ESQ.**
Florida Bar No.: 138399
edwardn@nicklauslaw.com
**ROGER A.G. ROCHE, ESQ.**
Florida Bar No.: 1007717
rogerr@nicklauslaw.com